**No. 25-10958**

# IN THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

**INTERSTATE FIRE & CASUALTY COMPANY; CANAL INSURANCE COMPANY,**

*Defendants - Appellees/Cross-Appellants,*

**v.**

**MURCO WALL PRODUCTS, INCORPORATED,**

*Intervenor - Appellant/Cross-Appellee.*

**On Appeal from the United States District Court for the Northern District of Texas, Fort Worth Division Case No. 4:22-cv-01137-P, Judge Mark T. Pittman, presiding.**

## BRIEF OF APPELLANT MURCO WALL PRODUCTS, INC.

Andrew P. Van Osselaer
HAYNES AND BOONE, LLP
98 San Jacinto Boulevard, Suite 1500
Austin, Texas 78701
Phone: (512) 867-8400

Ernest Martin, Jr.
Andrew W. Guthrie
Reese Letourneau
HAYNES AND BOONE, LLP
2801 N. Harwood Street, Suite 2300
Dallas, Texas 75201
Phone: (214) 651-5000

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

**Case Number and Style**: 25-10958; *Interstate Fire & Casualty Company; Canal Insurance Company v. Murco Wall Products, Incorporated*

### I. Appellant/Cross-Appellee

- **Murco Wall Products, Inc.**

Appellate Counsel

Ernest Martin, Jr.
*Ernest.Martin@haynesboone.com*
Andrew W. Guthrie
*Andrew.Guthrie@haynesboone.com*
Reese Letourneau
*Reese.Letourneau@haynesboone.com*
HAYNES AND BOONE LLP
2801 N Harwood Street, Suite 2300
Dallas, TX 75201
Telephone: (214) 651-5000

Andrew Paul Van Osselaer
*Andrew.Vanosselaer@haynesboone.com*
HAYNES AND BOONE, LLP
98 San Jacinto Boulevard, Suite 1500
Austin, Texas 78701
Telephone: (512) 867-8400

Additional Trial Counsel

Leslie C. Thorne
*Leslie.Thorne@haynesboone.com*

HAYNES AND BOONE LLP
98 San Jacinto Boulevard, Suite 1500
Austin, Texas 78701
Telephone: (512) 867-8400

Other Interested Persons

Murco has no parent corporation and no publicly held corporation owns 10% or more of its stock.

## II. Appellees/Cross-Appellants

- **Interstate Fire & Casualty Company**

Appellate Counsel

Johan G. Joakim Soederbaum
*jsoederbaum@duanemorris.com*
Roger C. Diseker
*rdiseker@duanemorris.com*
DUANE MORRIS LLP
300 Throckmorton Street, Suite 1650
Fort Worth, Texas 76102
Telephone: (817) 704-1000

William J. Baron
*wjbaron@duanemorris.com*
DUANE MORRIS LLP
One Market Street, Spear Tower, Suite 2200
San Francisco, California 94105
Telephone: (415) 957-3000

Additional Trial Counsel

Gina M. Foran
*gmforan@duanemorris.com*
DUANE MORRIS LLP

865 South Figueroa Street, Suite 3100
Los Angeles, California 90017
Telephone: (213) 689-7400

Former trial counsel

Christopher W. Martin
*martin@mdjwlaw.com*
MARTIN DISIERE JEFFERSON & WISDOM LLP
808 Travis 11th Floor
Houston, Texas 77002
Telephone: (713) 632-1700

Sheryl Kao
*skao@chartwelllaw.com*
THE CHARTWELL LAW OFFICES LLP
550 Reserve Street, Suite 190
Southlake, Texas 76092
Telephone: (512) 856-6348

Other Interested Persons

According to Interstate's disclosure statement in a related case, Interstate is a wholly owned subsidiary of Fireman's Fund Insurance Company, an Illinois corporation, which in turn is a wholly owned subsidiary of Allianz Global Risks US Insurance Company, an Illinois corporation ("AGR US"). Eighty percent (80%) of the voting common stock of AGR US is held by Allianz of America, Inc., which is a wholly owned subsidiary of Allianz Europe B.V., a wholly owned subsidiary of Allianz SE. Twenty percent (20%) of the voting common stock and one hundred percent (100%) of the non-voting preferred stock of AGR US is held by AGCS International Holding B.V., which is a wholly owned subsidiary of Allianz Global Corporate & Specialty SE, a wholly owned subsidiary of Allianz SE. Allianz SE is a publicly held company that indirectly holds 10% or more of Fireman's Fund Insurance Company (and its subsidiaries, including Interstate).

- **Canal Insurance Company**

  Appellate Counsel

  Stephen A. Melendi
  *stephenm@tbmmlaw.com*
  Matthew Patrick Rigney
  *mattr@tbmmlaw.com*
  TOLLEFSON BRADLEY MITCHELL & MELENDI LLP
  2811 McKinney Avenue, Suite 250
  Dallas, Texas 75204
  Telephone: (214) 665-0100

  Other former trial counsel

  Franklin M Kennedy
  *frankk@tbmmlaw.com*
  TOLLEFSON BRADLEY MITCHELL & MELENDI LLP

## III. Prior Parties Not Participating in Appeal

- Berkshire Hathaway Specialty Insurance Company, f/k/a Stonewall Insurance Company

  Trial Counsel

  Mark Thomas Beaman
  *mbeaman@germer-austin.com*
  Kelli B. Smith
  *ksmith@germer.com*
  Ryan Christopher Bueche
  *rbueche@germer-austin.com*
  GERMER BEAMAN & BROWN PLLC
  1501 S. Mopac Expwy. Suite A400
  Austin, Texas 78746
  Telephone: (409) 654-6700

Other Interested Persons

According to Berkshire's disclosure statement (ROA.470), Berkshire is a wholly-owned subsidiary of National Indemnity Company, which is a wholly-owned subsidiary of Berkshire Hathaway Inc., a Delaware corporation that is publicly traded, with an office in Omaha, Nebraska.

- ACE American Insurance Company and ACE Property and Casualty Insurance Company

Trial Counsel

Brian K. Garrett
*bgarrett@bhilaw.com*
BLAIES & HIGHTOWER, L.L.P.
420 Throckmorton Street, Suite 1200
Fort Worth, Texas 76102
Telephone: (817) 334-0800

Christopher Hemphill
*christopher.hemphill@mclolaw.com*
COHN BAUGHMAN
333 West Wacker Drive, Suite 900
Chicago, Illinois 60606
Telephone: (312) 753-6616

- Fairmont Specialty Insurance Company, f/k/a Ranger Insurance Company

Trial Counsel

Daisy Khambatta
*Daisy.Khambatta@kennedyslaw.com*
Bevin Carroll
*Bevin.Carroll@kennedyslaw.com*
KENNEDYS CMK LLP
3821 Juniper Trace, Suite 101
Austin, Texas 78738

Telephone: (512) 359-8833

Other Interested Persons

According to Fairmont's disclosure statement (ROA.467), Fairmont Specialty Insurance Company merged into TIG Insurance Company, a California domiciled stock insurer. 100% of the common shares of TIG Insurance Company are owned by Fairfax (US) Inc., a Delaware corporation. The preferred shares of TIG Insurance Company are owned by The Resolution Group, Inc. Fairfax (US) Inc. is 94.44% owned by FFHL Group Ltd. and is 5.56% owned by Fairfax Financial Holdings Limited. FFHL Group Ltd. is a Canadian holding company, whose ultimate controlling parent is Fairfax Financial Holdings, Limited, a Canadian Public Holding Company. Fairfax Financial Holdings Limited is publicly traded on the Toronto Stock Exchange.

- Tudor Insurance Company

Trial Counsel

Robert G. Hogue
*robhogue@msn.com*
4514 Cole Avenue, Suite 600
Dallas, Texas 75205-4193
Telephone: (214) 559-7107

Other Interested Persons

According to Tudor's disclosure statement (ROA.774), other interested persons are: Western World Insurance Company (parent of Tudor, located in Parsippany, NJ); Western World Insurance Group, Inc. (direct parent of Tudor, incorporated in Delaware); AIG Property Casualty, Inc. (U.S.) (indirect parent company of Tudor); American International Group Inc. (ultimate parent company of Tudor); Stratford Insurance Company (subsidiary of Tudor, located in Parsippany, NJ).

- Travelers Indemnity Company, as successor to Gulf Insurance Co.

  Trial Counsel

  Courtney Ervin
  *cervin@hicks-thomas.com*
  Amanda Goldstein
  *agoldstein@hicks-thomas.com*
  HICKS THOMAS LLP
  700 Louisiana St., Suite 2300
  Houston, Texas 77002
  Telephone: (713) 547-9100

  Other Interested Persons

  According to Travelers' disclosure statement (ROA.326), Travelers Indemnity Company is 100% owned by Travelers Insurance Group Holdings, Inc., which is 100% owned by Travelers Property Casualty Corp., which is 100% owned by The Travelers Companies, Inc. The Travelers Companies, Inc. is the only publicly held company in the corporate family. No individual or corporation owns 10% or more of the stock of The Travelers Companies, Inc.

## IV. Other Financially Interested Persons

American Contractors Indemnity Company, U.S. Specialty Insurance Company, and United States Surety Company

Dated: 11/13/2025

*/s/ Andrew W. Guthrie*
Andrew W. Guthrie
Attorney of Record for Murco

## STATEMENT REGARDING ORAL ARGUMENT

Murco respectfully requests oral argument. While reversal is required based on straightforward issues of insurance-policy interpretation, Murco anticipates that the arguments on appeal will require this Court to reconcile ostensibly conflicting precedents and evaluate detailed textual arguments about multiple insurance policy provisions. Murco respectfully submits that the Court's analysis could benefit from a fulsome discussion of those issues at oral argument.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS .... ii

STATEMENT REGARDING ORAL ARGUMENT .... ix

TABLE OF CONTENTS .... x

TABLE OF AUTHORITIES .... xii

ABBREVIATIONS AND RECORD REFERENCES .... xv

JURISDICTIONAL STATEMENT .... 1

STATEMENT OF ISSUES PRESENTED .... 2

INTRODUCTION .... 3

STATEMENT OF THE CASE .... 5

A. Murco purchased liability insurance policies over many years—from Interstate, Canal, and other insurers—to cover personal-injury claims against it. .... 5

B. Because asbestos injuries happen over time, asbestos suits often prompt questions about which policy years apply. .... 7

C. This insurance-coverage case involved disputes about contribution between Murco's insurers, after one of them (Berkshire) paid to cover three asbestos lawsuits. .... 10

D. The district court held that Interstate and Canal owe no coverage at all for those suits, but only by rewriting the relevant policy language and misreading the caselaw. .... 12

SUMMARY OF THE ARGUMENT .... 13

ARGUMENT .... 16

I. The district court erred in holding that these policies are triggered only when asbestos was inhaled during the policy year. .... 16

A. Texas law says that the trigger analysis must be guided by the policy language, not arbitrary rules of convenience. .................... 16

B. The most "intellectual[ly] honest[]" reading of the trigger language here is that these policies apply when there is an injury during the policy period. ........................................................ 19

C. Alternatively, even if "exposure" is the proper trigger event, the district court erred in concluding that inhalation is the only relevant exposure. ........................................................ 25

II. This Court should reverse the district court's erroneous policy interpretation and remand for further proceedings ..................................... 29

CONCLUSION AND PRAYER ........................................................ 32

CERTIFICATE OF SERVICE ........................................................ 34

ECF CERTIFICATION ........................................................ 34

CERTIFICATE OF COMPLIANCE ........................................................ 34

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Physicians Ins. Exch. v. Garcia*,
876 S.W.2d 842 (Tex. 1994) ....................9

*Domain Protection, L.L.C. v. Sea Wasp, L.L.C.*,
23 F.4th 529 (5th Cir. 2022).................... 13

*Don's Bldg. Supply, Inc. v. OneBeacon Ins. Co.*,
267 S.W.3d 20 (Tex. 2008)....................*passim*

*EnergyNorth Natural Gas v. Underwriters at Lloyd's*,
848 A.2d 715 (N.H. 2004)....................22

*Gelman Scis., Inc. v. Fid. & Cas. Co. of N.Y.*,
456 Mich. 305, 572 N.W.2d 617 (Mich. 1998) .................... 21

*Great Am. Ins. Co. v. Employers Mut. Cas. Co.*,
18 F.4th 486 (5th Cir. 2021)....................24

*Guar. Nat. Ins. Co. v. Azrock Indus. Inc.*,
211 F.3d 239 (5th Cir. 2000) ....................*passim*

*Hoang v. Assurance Co. of Am.*,
149 P.3d 798 (Colo. 2007) .................... 21

*In re Jillian Morrison, L.L.C.*,
482 F. App'x 872 (5th Cir. 2012) (per curiam)....................23

*Joe Harden Builders, Inc. v. Aetna Cas. & Sur. Co.*,
326 S.C. 231, 486 S.E.2d 89 (S.C. 1997) ....................22

*Kief Farmers Coop. Elevator Co. v. Farmland Mut. Ins. Co.*,
534 N.W.2d 28 (N.D. 1995) ....................22

*LaRocca v. Alvin Indep. Sch. Dist.*,
2022 WL 1001442 (5th Cir. Apr. 4, 2022) (per curiam) ....................32

*Mut. Fire, Marine & Inland Ins. Co. v. Safeco Ins. Co.*,
473 So.2d 1012 (Ala. 1985) ........................................ 21

*N. States Power Co. v. Fid. & Cas. Co. of N.Y.*,
523 N.W.2d 657 (Minn. 1994) ........................................ 21

*OneBeacon Ins. Co. v. Don's Bldg. Supply, Inc.*,
553 F.3d 901 (5th Cir. 2008) (per curiam) ........................................ 22-23

*Rodriguez v. Safeco Ins. Co. of Indiana*,
73 F.4th 352 (5th Cir. 2023) ........................................ 23

*RSUI Indem. Co. v. The Lynd Co.*,
466 S.W.3d 113 (Tex. 2015) ........................................ 16, 24

*S&W Enters., L.L.C. v. SouthTrust Bank of Alabama, NA*,
315 F.3d 533 (5th Cir. 2003) ........................................ 30

*Estate of Bradley ex rel. Sample v. Royal Surplus Lines Ins. Co.*,
647 F.3d 524 (5th Cir. 2011) ........................................ 16

*Scott v. Keever*,
212 Kan. 719, 512 P.2d 346 (Kan. 1973) ........................................ 21

*Sentinel Ins. Co. v. First Ins. Co. of Haw.*,
76 Hawai'i 277, 875 P.2d 894 (Haw. 1994) ........................................ 21

*St. Paul Fire & Marine Ins. Co. v. McCormick & Baxter Creosoting Co.*,
324 Or. 184, 923 P.2d 1200 (Or. 1996) ........................................ 22

*Terrebonne Par. Sch. Bd. v. Columbia Gulf Transmission Co.*,
290 F.3d 303 (5th Cir. 2002) ........................................ 23

*Transcon. Ins. Co. v. W.G. Samuels Co.*,
370 F.3d 755 (8th Cir. 2004) ........................................ 21

*Transcon. Ins. Co. v. Wash. Pub. Utils. Dists.' Util. Sys.*,
111 Wash.2d 452, 760 P.2d 337 (Wash. 1988) ........................................ 22

*Travelers Ins. Co. v. Eljer Mfg., Inc.*,
197 Ill.2d 278, 258 Ill.Dec. 792, 757 N.E.2d 481 (Ill. 2001) ........................................ 21

*Trizec Props., Inc. v. Biltmore Constr. Co.*,
767 F.2d 810 (11th Cir. 1985)........................................................................ 21

**Statutes and Rules**

28 U.S.C. § 1291 .......................................................................................... 1

28 U.S.C. § 1332 .......................................................................................... 1

FED. R. APP. P. 4.......................................................................................... 1

FED. R. APP. P. 28 ...................................................................................... 13

FED. R. APP. P. 28.1.................................................................................... 13

**Other Authorities**

7A John Alan Appleman, Insurance Law and Practice
§ 4491.01 (Walter F. Berdal ed., 1979) .............................................................. 19

7 Couch on Insurance § 102:22 ...................................................................... 19

*Condition*, MERRIAM-WEBSTER.COM, *www.merriam-webster.com/dictionary/condition* (last visited Nov. 11, 2025)..............................28

*Exposure,* MERRIAM-WEBSTER.COM, *www.merriam-webster.com/dictionary/exposure* (last visited Nov. 11, 2025)...............................28

*What is the Biological Fate of Asbestos,* CDC Agency for Toxic Substances,
*https://archive.cdc.gov/www_atsdr_cdc_gov/csem/asbestos/biological_fate_of_asbestos.html* (last visited Nov. 12, 2025) ...............................................7

## ABBREVIATIONS AND RECORD REFERENCES

**PARTIES:**

"Murco" means Appellant Murco Wall Products, Inc.

"Canal" means Appellee Canal Insurance Company.

"Interstate" means Appellee Interstate Fire & Casualty Company.

"Berkshire" means Berkshire Hathaway Specialty Insurance Company, which is a party to the litigation below but has elected not to participate in this appeal.

**DOCUMENTS AND KEY TERMS:**

"Canal policy" references insurance policy no. X013165 that Canal issued to Murco for the policy year June 1984 to June 1985. (ROA.2774.)

"Interstate policy" references insurance policy no. 55C-1036461 that Interstate issued to Murco for the policy year June 1985 to June 1986. (ROA.2895.)

## JURISDICTIONAL STATEMENT

The district court had jurisdiction over this insurance coverage case under 28 U.S.C. § 1332(a)(1) because the parties were completely diverse and the amount in controversy exceeded $75,000. (*See* ROA.31-32.)

This Court has appellate jurisdiction from a final judgment under 28 U.S.C. § 1291. The district court granted summary judgment on March 31, 2025 (ROA.3725), as modified on reconsideration (ROA.3785), then after a voluntary dismissal of all remaining claims, the court entered final judgment on July 17, 2025 (ROA.3804). Murco timely filed its notice of appeal on August 15, 2025. (ROA.3807.) *See* FED. R. APP. P. 4(a)(1)(A).

## STATEMENT OF ISSUES PRESENTED

1. Did the district court err by holding that these insurance policies are triggered only when the underlying plaintiff's inhalation of asbestos occurred during the policy period, despite broader language and binding precedent demonstrating that the timing of the plaintiff's injuries is what matters?

2. Alternatively, even if the date of exposure should control, did the district court err by adopting an overly-narrow trigger rule that equates exposure with inhalation alone and does not recognize that exposure to asbestos continues while it is trapped in the lungs?

3. Did the district court abuse its discretion in refusing Murco's request for leave to assert claims for declaratory relief on the interpretation of its own policies?

## INTRODUCTION

This case raises a narrow but important question about the "trigger date" in two liability insurance policies. For decades, Appellant Murco Wall Products bought insurance to help manage the risks of personal-injury lawsuits against it. And wisely so, because like many other manufacturers, Murco has faced a near-constant stream of lawsuits alleging injuries from products containing asbestos. In the face of those suits, Murco turned to its insurers to provide the liability coverage they promised.

Two such policies are at issue in this appeal. There is no dispute here about the substantive applicability of those policies (*i.e.,* whether the underlying lawsuits fit within the scope of coverage); the only question is whether the asserted injuries occurred during the relevant policy years. On that point, Canal and Interstate said they would cover "occurrences" during their policy periods and defined the term to capture exposures to conditions that result in injury. Yet when the time came to pay for alleged injuries during their policy periods, Canal and Interstate said the triggering occurrence is limited to the dates when the person inhaled the asbestos.

That distinction makes a difference for the claims at issue: the plaintiffs say they inhaled asbestos before the policy periods but suffered injuries during those periods. This Court has previously recognized that asbestos claims can present tricky questions about insurance triggers because asbestos injuries occur long after the

asbestos is inhaled, as the fibers remain lodged in the lungs and the resulting diseases progress in severity. *Guar. Nat. Ins. Co. v. Azrock Indus. Inc.*, 211 F.3d 239, 243-44 (5th Cir. 2000). The question there (and here) was when an asbestos occurrence takes place. The Texas Supreme Court later sharpened the analysis by reiterating the ordinary, injury-based meaning of occurrence and re-emphasizing that the plain text of the policy controls, thus overruling key portions of *Azrock* that said otherwise. *Don's Bldg. Supply, Inc. v. OneBeacon Ins. Co.*, 267 S.W.3d 20, 29 (Tex. 2008).

The district court here misread both cases—and the plain language of these policies—to hold that Canal's and Interstate's coverage obligations are triggered *only* by the inhalation of asbestos during their policy periods. In reaching that conclusion, the district court followed part of *Azrock* that was directly repudiated in *Don's Building.* It further ignored (and effectively rewrote) key parts of the policies that plainly demonstrate their coverage is triggered whenever injuries occur during the policy period. If nothing else, the policy language is ambiguous and must be construed in Murco's favor under black-letter Texas insurance law. And that would be true, by the way, even if some kind of "exposure" rule were the appropriate test (and it's not). Either way, the result below should be reversed and replaced with a proper interpretation of the trigger language in Murco's policies.

## STATEMENT OF THE CASE

The case below was, at times, a "tangled" "morass" that appeared to test the district court's patience (ROA.2732, 3725)—but the good news is that much of the record is now irrelevant. The case has been substantially narrowed by settlements and other rulings that are not at issue in this appeal. So, in the background summary below, Murco will focus on the necessary context for the legal issue raised here.

### A. Murco purchased liability insurance policies over many years—from Interstate, Canal, and other insurers—to cover personal-injury claims against it.

Murco is a family-owned manufacturer of construction products, including wall joint compound used to fill gaps and smooth wall surfaces. (ROA.3725.) For years, Murco purchased general liability insurance policies to protect itself from all manner of risks, including product liabilities. (ROA.3459-60, 3493, 3726.)

This case deals with two such policies: one issued by Canal and one issued by Interstate. (ROA.2774, 2895.) Both are excess policies, meaning that they provided additional insurance on top of certain primary-level policies. Canal's policy ran from June 1984-June 1985, with a $5 million policy limit. (ROA.2774.) Interstate's policy ran from June 1985-June 1986, with a $4 million policy limit. (ROA.2895, 2905.) Those periods are the focus of this appeal because Canal and Interstate are not disputing the substantive applicability of their policies here—just timing questions about whether the disputed asbestos claims triggered their policies. (*See* ROA.3727.)

Both policies speak to these timing issues directly. In its policy, Canal agreed to indemnify Murco for losses it has to pay because of "personal injury caused by . . . an occurrence which takes place during the policy period." (ROA.2775.) Interstate likewise agreed to cover losses Murco has to pay "because of personal injury . . . caused by or arising out of an occurrence which takes place during the policy period." (ROA.2897.) So, the key question is *when* the occurrence is deemed to have taken place. (ROA.3727.)

Both policies define "occurrence" similarly. (ROA.2775, 2899.) This chart from the district court's decision helpfully puts the definitions side-by-side, though the district court's emphasis isn't quite in the right place:

| Canal's definition of "occurrence" | Interstate's definition of "occurrence" |
|---|---|
| [A]n accident which takes place during the policy period, or that portion within the policy period of a continuous or repeated exposure to conditions, which causes personal injury, property damage or advertising liability neither expected nor intended by the insured. | [I]njurious exposure to conditions, which results in personal injury, property damage or advertising injury or damage neither expected nor intended from the standpoint of the insured, except that assault and battery committed by the insured for the purpose of protecting persons or property shall be deemed an occurrence. |

(ROA.3733, emphasis in original.) Both policies further define "personal injury" to include "bodily injury," "sickness," "disease," or "death." (ROA.2775-76, 2899.)

### B. Because asbestos injuries happen over time, asbestos suits often prompt questions about which policy years apply.

Though this is no longer true, there was a time when Murco's products, like so many others, contained asbestos. (ROA.3725.) Because of that fact, Murco and its former products, like so many others, have been the subject of numerous personal injury lawsuits alleging bodily injury from asbestos exposure—just the kind of risk these insurance policies were supposed to cover. (*See* ROA.3725.)

Asbestos claims can raise tricky questions about the timing of the occurrence for purposes of triggering insurance coverage, as this Court has recognized. *Azrock*, 211 F.3d at 245. That's true in part because of the science behind asbestos injuries. Asbestos fibers can cause respiratory injuries through contact with lung tissue. (*See* ROA.3338-39.)[1] Those injuries can and do occur long after the asbestos is inhaled because the fibers often lodge in the lungs. As a result, the exposure to asbestos continues internally after leaving a contaminated area, and it causes ongoing injury, often for years. (*Supra*, n.1; *see also* ROA.3376, 3395, 3411, 3442.) Additionally, mesothelioma and asbestosis are progressive diseases, which develop over years and sometimes result in death. (*See* ROA.3237, 3246, 3306-07, 3338-39.)

---

[1] *See also What is the Biological Fate of Asbestos,* CDC Agency for Toxic Substances, *https://archive.cdc.gov/www_atsdr_cdc_gov/csem/asbestos/biological_fate_of_asbestos.html* (last visited Nov. 12, 2025).

Canal and Interstate do not dispute those facts. Indeed, in a deposition, Canal's corporate representative agreed that asbestos causes progressive injury that "doesn't go away" and also admitted that asbestos "fibers can become lodged in the lungs" and continue to cause injury. (ROA.3376, 3395.) Interstate's representative too testified that asbestos inhalation can result in "injury that progresses" in terms of its "condition," and that while "[s]ome [fibers] may be exhaled [following inhalation] . . . some [are] inhaled and stay[]." (ROA.3411, 3442.)

Yet despite acknowledging the ongoing nature of asbestos injuries, Canal and Interstate say their policies kick in only when asbestos was inhaled during their policy periods. (*See* ROA.891, 3660.) That position led to disputes about coverage for the three personal-injury lawsuits at issue here (*see, e.g.,* ROA.887-95, 1072-73, 1151-55):

1. *Smith, et al. v. Ace Hardware Corporation, et al.*, Cause No. 2016-60174, Asbestos MDL Pre-Trial Judge in the 11th District Court of Harris County, Texas ("*Smith*") – Randall Smith's survivors sued Murco and others alleging he interacted with asbestos containing products from 1958 to 1983, developed lung disease, and died as a result in 2015. (ROA.2831, 2835-37.)

2. *Schlageter, et al. v. Georgia-Pacific, LLC, et al.*, Cause No. CJ-2014-287, District of Canadian County, Oklahoma ("*Murray*") – Plaintiffs sued Murco and others alleging that decedent William H. Murray interacted with asbestos containing products from 1950 to 1979, developed lung disease, and died as a result in 2012. (ROA.2789, 2790-93.)

3. *Galier v. Murco Wall Products, Inc., et al.*, Cause No. CJ-2012-06920, District of Oklahoma County, Oklahoma ("*Galier*") – Michael Galier sued Murco and

others alleging that he interacted with asbestos containing products from 1970 to the late 80s and developed lung disease as a result. (ROA.3299, 3305-07.)[2]

Over the years, Murco sought insurance coverage for those and other lawsuits from insurance carriers who issued policies for the relevant policy years, with some accepting their obligations (to a point) while also pointing the finger at other carriers to bear part of the burden (when, as is often the case, the claims were covered by more than one policy year). (*See* ROA.29, 47-57, 887-95.) Rather than forcing the insured to referee such insurer infighting, Texas law permits the insured to shift the burden by designating one carrier to cover certain claims on a joint and several basis, thus forcing it to seek contribution from other carriers that are responsible for part of the loss. *See Am. Physicians Ins. Exch. v. Garcia*, 876 S.W.2d 842 (Tex. 1994).

With respect to two of the lawsuits referenced above, Murco exercised its "*Garcia* rights" by selecting Berkshire Hathaway Specialty Insurance Company to cover the claims. (ROA.889, 2868, 3460.) So, when Murco's underlying counsel reached settlements in *Smith* and *Murray*, Berkshire funded the settlements along with a few other insurers who are not parties here. (ROA.889-90, 3461-62.) Neither Canal nor Interstate contributed. (ROA.889-90, 2869, 3461-62.) *Galier* resulted in a

[2] These are not the only such cases against Murco. Another set of asbestos suits is the subject of a related insurance-coverage dispute, brought by another of Murco's insurers, pending in the same district court. *See Berkshire Hathaway Specialty Ins. Co. v. Murco Wall Products, Inc.*, No. 4:25-cv-00764-P (N.D.Tex.).

final judgment against Murco, which was affirmed on appeal. (ROA.890-91, 2870, 3462-63.) Berkshire and others (including Canal) paid their respective shares of the *Galier* judgment; Interstate paid some, but not its full share. (ROA.890-91, 3462-63.)

### C. This insurance-coverage case involved disputes about contribution between Murco's insurers, after one of them (Berkshire) paid to cover three asbestos lawsuits.

Those three lawsuits prompted this insurance-coverage case, which began as a much larger (and more "tangled") dispute about various obligations between seven of Murco's insurers. (*See* ROA.29-58, 864, 887-96, 937-48, 3725.) Over time, all of the other insurers—except for Berkshire, Canal, and Interstate—paid the remaining limits of their policies (in this or other cases) and were thus dismissed from this case. (ROA.2610-17, 2696-2701, 2727-31, 3698-3702.)

The focal point of this suit became Berkshire's cross-claims against Canal and Interstate seeking monetary contribution for the payments noted above. (ROA.887-96, 2861, 3164.) Canal and Interstate denied any obligation to pay, raising several affirmative defenses (ROA.1157, 1162-67, 1266-73), but the parties ultimately agreed that there was one legal issue that might resolve the whole dispute: whether the asserted injuries occurred during Canal's and Interstate's respective policy periods, so as to trigger their coverage obligations. (ROA.2743.)

In addition to agreeing that this was a threshold issue of law, the insurers also agreed that Murco had a material interest in its resolution. (*See* ROA.2743-44.) That made sense because the precise amount of Berkshire's reimbursement/contribution rights impacts the balance of Berkshire's remaining policy limits and its obligation to pay later claims against Murco. (*See* ROA.1354, 2743.) By withholding payment to Berkshire, Canal and Interstate were improperly forcing its policies to shoulder too much of the load, leaving them less available to pay future claims and harming Murco. (ROA.1354.) Additionally, and somewhat more fundamentally, the parties' dispute about the trigger language necessarily affects Murco's interests and impacts the coverage it is owed under those policies going forward. (ROA.1354-55.)

For those reasons, and in the aftermath of pleadings raising the trigger issue on the amendment deadline, Murco sought leave to amend its pleadings to seek declaratory relief on the trigger issue. (ROA.1351-58.) That request was inexplicably denied. (ROA.1382-83.) But everyone recognized Murco's interest in these policy-interpretation questions, so the insurers asked the district court to still let Murco participate in the briefing process. (ROA.2741-48.)[3] And the district court ultimately granted Murco the right to intervene as a party. (ROA.3723-24, 3727 n.6.)

---

[3] In the time between these orders, the case was reassigned to District Judge Mark T. Pittman. (ROA.2637.)

**D. The district court held that Interstate and Canal owe no coverage at all for those suits, but only by rewriting the relevant policy language and misreading the caselaw.**

In accordance with the parties' agreed procedure, Canal and Interstate moved for a take-nothing summary judgment on Berkshire's contribution claims, arguing in short that they owed no coverage because the underlying lawsuits did not arise from inhalation of asbestos during their respective policy periods. (ROA.2752-72, 2857-82.) Berkshire and Murco opposed the motions, arguing both policies were triggered because the relevant occurrence turns on the injuries from asbestos exposure, which can happen (and did) for years after inhalation. (ROA.3168-91, 3334-61, 3452-76.)

The district court ruled in favor of Canal and Interstate. (ROA.3725-43.) It held, in short, that the "policies are triggered only by exposure to asbestos during the policy periods" and further limited the relevant exposure to just the inhalation of asbestos fibers in the air (rather than the continuous exposure to asbestos lodged in the lungs). (ROA.3734, 3737.) Based on that misinterpretation of the policies, the district court held there was no coverage for *Smith* and *Murray* because they did not allege any inhalation of asbestos during the policy years. (ROA.3741-42.) On reconsideration—about whether to review allegations or evidence as to *Galier*—the district court held the policies don't cover *Galier* either. (ROA.3785-86.) So, it dismissed Berkshire's contribution claims in full. (ROA.3786.)

Following those orders, Berkshire agreed to dismiss its remaining claims for relief, thus prompting final judgment. (ROA.3797-3801, 3804-06.) Murco, Canal, and Interstate all filed notices of appeal; Berkshire did not. (ROA.3807, 3810, 3812.) The parties later realigned themselves on appeal, designating Murco as the principal appellant and Canal/Interstate as appellees/cross-appellants. ECF No. 40, Letter Revising Case Caption (Sept. 22, 2025).[4]

## SUMMARY OF THE ARGUMENT

The district court's judgment must be reversed because it misread the law and misconstrued Murco's policy language in holding that these policies are triggered only when the inhalation of asbestos occurred during their policy periods.

Though the policy language obviously controls, the analysis doesn't start from a blank slate. Both this Court and the Texas Supreme Court have noted that the most natural reading of occurrence-based policies is to say their coverage is triggered when

---

[4] Murco facilitated this process for administrative convenience and clarity—because all three parties were originally given the same briefing deadline—even though it is not clear that Interstate and Canal have valid grounds to cross-appeal. *See Domain Protection, L.L.C. v. Sea Wasp, L.L.C.*, 23 F.4th 529, 539 (5th Cir. 2022) (addressing "recurring misunderstanding about when filing a cross-appeal is appropriate as opposed to asserting" alternative grounds for affirmance and noting cross-appeals should "be confined to their proper place"). Unless Interstate and Canal can present a valid cross-appeal, they should be limited to filing a responsive brief under FED. R. APP. P. 28(b) and should not be permitted to burden the Court with an overlength response and an additional (unnecessary) reply under FED. R. APP. P. 28.1(c).

there is an injury during the policy period. This Court said so explicitly about similar language in *Azrock*, even as it adopted another trigger theory for other (now invalid) reasons. *Guar. Nat. Ins. Co. v. Azrock Indus. Inc.*, 211 F.3d 239, 251 (5th Cir. 2000). The Supreme Court later reiterated the injury-focused understanding of occurrence in *Don's Building*, while rejecting the reasoning that led to the result in *Azrock*. *See Don's Bldg. Supply, Inc. v. OneBeacon Ins. Co.*, 267 S.W.3d 20, 29-30 (Tex. 2008).

The policy language here points the same way: these policies kick in whenever an injury happens during their policy period because they define "occurrence" to mean, not just an exposure to conditions, but an exposure *that causes personal injury*. The district court held otherwise by saying injury isn't part of the occurrence, it's just something the occurrence causes. But that is not right. "Personal injury" is literally in the definition of "occurrence," so it's a necessary component for the occurrence to have occurred. That means the polices are triggered by the injuries that occur as a result of exposure to asbestos in the lungs and the injuries that result in the form of sickness, disease, and/or death. Even if there is some question about whether the policies support that reading, it is at least a reasonable interpretation—meaning the policies must be construed that way under settled Texas law.

In rejecting those arguments, the district court heeded neither the key lessons of *Don's Building* nor those that remain of *Azrock*. Had it done so, the court would

have adopted an injury-based trigger because of the "intellectual honesty" of that approach (as this Court observed in *Azrock*), because of the policies' express terms, or because there's an ambiguity that must be resolved in Murco's favor. The court instead fixated on *Azrock*'s outcome (adopting exposure as the trigger) and ignored as dicta the Supreme Court opinion rejecting the convenience-based reasoning that led to that outcome. The district court's errors must be reversed.

And the result should be the same even if the Court concludes that "exposure" is the only possible triggering event. The question at that point will be: what qualifies as the relevant exposure? The district court held that it only includes the moment the plaintiff inhales the asbestos fibers. But that reading is wrong as a matter of science and policy text. The ordinary meaning of "exposure to conditions" is broad enough to encompass the continuous exposure to asbestos that happens, as a matter of undisputed science, when fibers remain lodged in a person's lungs long after being inhaled. The district court erred in rejecting this alternative reading, even assuming that exposure is the right question to ask.

Either way, the district court misread the relevant policy language. Its decision must be reversed and replaced with a proper interpretation of these policies. And to ensure complete relief on remand, this Court should also reverse the district court's unexplained and inexplicable decision to deny Murco's request for leave to amend.

## ARGUMENT

This Court reviews summary judgments *de novo*. *Estate of Bradley ex rel. Sample v. Royal Surplus Lines Ins. Co.*, 647 F.3d 524, 528 (5th Cir. 2011). Under any fair reading of the controlling law and the relevant policy language, the district court misconstrued the trigger requirements in these policies. Reversal is required.

### I. The district court erred in holding that these policies are triggered only when asbestos was inhaled during the policy year.

#### A. Texas law says that the trigger analysis must be guided by the policy language, not arbitrary rules of convenience.

This analysis turns on questions of insurance-policy interpretation under Texas law. A court's primary concern in such cases must be to effectuate the parties' intent "as expressed in the contract they executed." *Don's Bldg.*, 267 S.W.3d at 30. So, the language of the policy controls: undefined words and phrases are generally given their plain and ordinary meaning, and the text of the policy is applied as written, without inserting additional provisions. *See id.* at 23.

But the text doesn't always speak clearly for itself. When there is an ambiguity in the meaning of an insurance policy—*i.e.*, when the language is susceptible to more than one reasonable interpretation—Texas law says the tie goes to the policyholder, and it requires the court to resolve that ambiguity in favor of coverage. *Id.*; *see also RSUI Indem. Co. v. The Lynd Co.*, 466 S.W.3d 113, 118 (Tex. 2015) (If a policy is ambiguous, "we must resolve the uncertainty by adopting the construction that most

favors the insured . . . even if the construction urged by the insurer appears to be more reasonable or a more accurate reflection of the parties' intent.").

This appeal is not the first time this Court has had to apply those interpretive principles to a dispute about trigger language in a liability insurance policy. In *Azrock*, this Court addressed pretty similar timing issues, under pretty similar policy language, in the context of asbestos claims—and held that the policy's occurrence-based trigger language was ambiguous. 211 F.3d at 243-44.

Like the language at issue here, the policy in *Azrock* addressed occurrences during the policy period and defined "occurrence" to include "continuous or repeated exposure to conditions which unexpectedly or unintentionally results in personal injury." *Azrock*, 211 F.3d at 244. *Azrock* acknowledged that courts across the country had developed four different theories or interpretations for what that language meant—what triggered the policy—in the context of progressive asbestos injury. *Id.* at 244-46. Some courts found similar policy language to say the occurrence took place at the time of exposure to asbestos, others at the time of the injury, others when a disease ultimately manifested, and still others a combination of the three. *See id*. As this Court rightly noted, those differences alone "amply demonstrated" an ambiguity in the policy text. *Id.* at 244.

In making an *Erie* guess to resolve the ambiguity, *Azrock* "concede[d]" that the time-of-injury theory was "arguably the truest to the…policy language" and the most "intellectual[ly] honest[]." *Id.* at 251. Yet it adopted the time-of-exposure theory instead, primarily out of a sense of pragmatism (because that theory is unquestionably easier to administer) and in an effort to adopt a reading favoring coverage under the facts at issue in that case. *See id.* at 245, 250.

Less than a decade later, the Texas Supreme Court stepped in and took some of the (*Erie*) guesswork out of it. *Don's Bldg.*, 267 S.W.3d at 29-30. Though the policy language there was different, *Don's Building* emphasized a few analytical points that undercut *Azrock*'s conclusion. Most notably, the Supreme Court explained that policy interpretation "cannot exalt ease of proof or administrative convenience over faithfulness to the policy language." *Don's Bldg.*, 267 S.W.3d at 29. Instead, a court "must honor the parties' chosen language," even if it demands the "sometimes difficult" task of "[p]inpointing the moment of injury retrospectively." *Id.* at 29-30. The court also noted that the time-of-injury theory, "besides being consistent with the policy terms" at issue, "is also consistent with scholarly authority." *Id.* at 30.

### B. The most "intellectual[ly] honest[]" reading of the trigger language here is that these policies apply when there is an injury during the policy period.

That precedent points to one answer for construing the trigger language in the Canal and Interstate policies: the time-of-injury theory is the right one, meaning these policies kick in when any injury occurred during their policy periods, regardless of when the asbestos was inhaled. That reading is required by the terms of these policies, their ordinary meaning, and the controlling precedent.

Start with the policy language. Both policies promise to pay for liabilities from "an occurrence which takes place during the policy period." (ROA.2775, 2897.) An occurrence is ordinarily understood to happen on "the date of actual injury." *Don's Bldg.*, 267 S.W.3d at 30. Indeed, the Supreme Court made that very point after looking at "leading insurance law treatise[s]," which explain, among other things:

- "[T]he time of the occurrence of the accident within an indemnity policy is generally not considered to be the time the wrongful act was committed but ***the time when the complaining party was actually damaged***," (quoting 7A John Alan Appleman, Insurance Law and Practice § 4491.01 (Walter F. Berdal ed., 1979)) (emphasis added);

- "Focusing on the date injury manifests itself basically operates to provide certainty to insurers, but ***the injury-in-fact approach probably is more technically in tune with the spirit of the parties' actual intentions, and with the insured's expectations***, based on frequently encountered policy language tying bodily 'injury' or property 'damage' to the concept of 'occurrence,'" (quoting 7 Couch on Insurance § 102:22) (emphasis added).

Just as in *Don's Building*, the policy terms here are "consistent with [that] scholarly authority." *Id.* Canal and Interstate both define "occurrence," with some minor differences, to include any "exposure to conditions, which causes" (Canal) or "results in" (Interstate) "personal injury" (both). (ROA.2775, 2899.) Again, the district court's chart (ROA.3733) is a helpful reference:

| Canal's definition of "occurrence" | Interstate's definition of "occurrence" |
|---|---|
| [A]n accident which takes place during the policy period, or <u>that portion within the policy period of a continuous or repeated exposure to conditions, which causes personal injury</u>, property damage or advertising liability <u>neither expected nor intended by the insured.</u> | <u>[I]njurious exposure to conditions, which results in personal injury</u>, property damage or advertising injury or damage <u>neither expected nor intended from the standpoint of the insured</u>, except that assault and battery committed by the insured for the purpose of protecting persons or property shall be deemed an occurrence. |

On their face, these multi-part definitions say that the occurrence is not complete until after there is an "exposure to conditions" *and* a resulting "personal injury." (ROA.2775, 2899.) An exposure without injury has not yet met all the elements of the definition that the parties adopted and wrote down. The defined "occurrence" happens when the exposure causes/results in the requisite "personal injury," which

is broadly defined in the policies to include any of the following: "bodily injury," "sickness," "disease," or "death." (ROA.2775-76, 2899.)

This Court all but agreed with that textual reading of similar policy language in *Azrock*, observing that the injury-focused theory was the most "intellectual[ly] honest[]" of the available options. 211 F.3d at 246, 251; *see also id.* at 251 ("We concede the attraction of the intellectual honesty of the injury-in-fact approach, which is arguably the truest to the CGL policy language of 'bodily injury' . . ."). As the Court explained, the injury-in-fact theory best tracks the policy language because it looks for "real injury" as the triggering event and doesn't rely on proxies like the date of diagnosis or subclinical tissue damage. *See id.* at 251. Given that logic, it should not be surprising that courts across the country have agreed that the injury-in-fact approach best represents this policy language. *Don's Bldg.*, 267 S.W.3d at 25, n.22 (citing the cases reprinted in the footnote below).[5]

[5] *Transcon. Ins. Co. v. W.G. Samuels Co.*, 370 F.3d 755, 758 (8th Cir. 2004) (citing *Scott v. Keever*, 212 Kan. 719, 512 P.2d 346, 351–52 (1973)); *Trizec Props., Inc. v. Biltmore Constr. Co.*, 767 F.2d 810, 813 (11th Cir. 1985); *Mut. Fire, Marine & Inland Ins. Co. v. Safeco Ins. Co.*, 473 So.2d 1012, 1013–14 (Ala. 1985); *Hoang v. Assurance Co. of Am.*, 149 P.3d 798, 800–01 (Colo. 2007); *Sentinel Ins. Co. v. First Ins. Co. of Haw.*, 76 Hawai'i 277, 875 P.2d 894, 915, 917 (1994); *Travelers Ins. Co. v. Eljer Mfg., Inc.*, 197 Ill.2d 278, 258 Ill.Dec. 792, 757 N.E.2d 481, 502–03 (2001); *Gelman Scis., Inc. v. Fid. & Cas. Co. of N.Y.*, 456 Mich. 305, 572 N.W.2d 617, 628 (1998), *reh'g granted on other grounds*, 456 Mich. 1230, 576 N.W.2d 168 (1998), *overruled on other grounds by Wilkie v. Auto–Owners Ins. Co.*, 469 Mich. 41, 664 N.W.2d 776 (2003); *N. States Power Co. v. Fid. & Cas. Co. of N.Y.*, 523 N.W.2d 657, 662 (Minn. 1994);

Yet despite that textual inclination, *Azrock* didn't actually adopt the injury-in-fact theory. 211 F.3d at 251. It rejected that approach in part because it found "a significant problem" with it: by requiring medical testimony about when injury occurred in "each of the thousands of asbestosis cases," the Court found that theory made "the cost of litigation . . . prohibitive." *See id.* In its place, the Court used exposure as the trigger event, "tak[ing] comfort in selecting a trigger of coverage theory that employs a relatively clearly defined, easily ascertainable trigger which will not impose an undue fact-finding burden on busy district courts." *Id.* In other words, *Azrock* rejected the injury-in-fact theory based on "ease of proof or administrative convenience;" while both are laudable goals, neither is a legally permissible basis for rewriting an insurance policy—especially not now, after the Texas Supreme Court said so explicitly in *Don's Building*, 267 S.W.3d at 29.

Despite that direct repudiation of *Azrock*'s reasoning, the district court dismissed *Don's Building* as dicta. (ROA.3736.) That was error. This Court has, more than once, noted that *Don's Building* overruled *Azrock*. *See OneBeacon Ins. Co.*

---

*EnergyNorth Natural Gas*, 848 A.2d at 719–23; *Kief Farmers Coop. Elevator Co. v. Farmland Mut. Ins. Co.*, 534 N.W.2d 28, 35–36 (N.D. 1995); *St. Paul Fire & Marine Ins. Co. v. McCormick & Baxter Creosoting Co.*, 324 Or. 184, 923 P.2d 1200, 1209–11 (1996); *Joe Harden Builders, Inc. v. Aetna Cas. & Sur. Co.*, 326 S.C. 231, 486 S.E.2d 89, 91 (1997); *Transcon. Ins. Co. v. Wash. Pub. Utils. Dists.' Util. Sys.*, 111 Wash.2d 452, 760 P.2d 337, 345 (1988).

*v. Don's Bldg. Supply, Inc.*, 553 F.3d 901, 903 (5th Cir. 2008) (per curiam); *In re Jillian Morrison, L.L.C.*, 482 F. App'x 872, 875 (5th Cir. 2012) (per curiam). Plus, whatever the differences with the policy text in *Don's Building* (the distinction the district court relied on), the Texas Supreme Court is still the ultimate arbiter in *how* courts should construe insurance policies under Texas law. *See, e.g.*, *Rodriguez v. Safeco Ins. Co. of Indiana*, 73 F.4th 352, 356 (5th Cir. 2023); *see also Terrebonne Par. Sch. Bd. v. Columbia Gulf Transmission Co.*, 290 F.3d 303, 317 (5th Cir. 2002). The district court had no basis for rejecting the controlling guidance from *Don's Building*.

Nor did it have the freedom to ignore parts of the relevant policy language, as it did in trying to justify its rejection of the injury-in-fact rule. In one quick paragraph, the district court held that injury is irrelevant for triggering these policies because the "[p]ersonal injury is not part of the occurrence; it is something the occurrence causes." (ROA.3734.) The court held instead that the term "personal injury" in the definition serves only as "a relative clause that qualifies 'exposure.'" (ROA.3734.)

But that's just not what the policy language says. The term "occurrence" is specifically defined to span (1) an exposure to conditions, which (2) causes/results in personal injury. (ROA.2775, 2899.) The term must be read to capture *everything* in the definition that follows, meaning the occurrence is not complete until both prongs are met—because both prongs appear in the definition. The district court was

therefore incorrect to say that "[p]ersonal injury is not part of the occurrence" (ROA.3734) when that term is literally included in the definition of occurrence.

By holding otherwise, the district court effectively deleted the term "personal injury" from the definition of occurrence, thus offending the core principle rejecting readings that nullify words in a policy. *See Great Am. Ins. Co. v. Employers Mut. Cas. Co.*, 18 F.4th 486, 490 (5th Cir. 2021) ("a court should interpret an insurance policy in a way which (1) 'confers meaning to all its terms'; (2) 'harmonize[s] and give[s] effect to all of the provisions'; and (3) avoids rendering parts of the policy inoperative or 'meaningless.'"). Its ruling also violated the Supreme Court's explicit instruction that courts must not read requirements into (or out of) polices without clear language to support them. *See Don's Bldg.*, 267 S.W.3d at 23, 29-30.

For all those reasons, this Court should reject the district court's policy interpretation and hold that the policies unambiguously provide for their trigger to occur whenever an exposure causes injury, not just at the time of inhalation. At a minimum, though, this Court should declare that is one reasonable way to construe the policy language and thus adopt it under settled Texas law construing ambiguous provisions in favor of the insured. *Lynd*, 466 S.W.3d at 118; *see also Azrock*, 211 F.3d at 243-44 (finding similar language ambiguous). What could be more reasonable than the meaning this Court found to be most "intellectually honest" and the Supreme

Court found consistent with the common meaning of occurrence? *Azrock*, 211 F.3d at 251; *Don's Bldg.*, 267 S.W.3d at 29-30.

In the end, the district court erred by heeding neither the key lessons of *Don's Building* nor those that remain of *Azrock*, by disregarding all deeper meaning in both cases, and by fixating on *Azrock*'s adoption of the exposure theory. (ROA.3735-37.) When those cases are properly harmonized, they confirm what the policies state on their face: the "occurrence" occurs whenever an injury does.

### C. Alternatively, even if "exposure" is the proper trigger event, the district court erred in concluding that inhalation is the only relevant exposure.

Yet reversal is required for another alternative reason. Even if an exposure theory is the only permissible way to read this policy language (it's not), the district court nevertheless erred in adopting an overly strict and atextual version of the theory. It held, in short, that these policies are triggered only at the moment the asbestos is inhaled—at the jobsite, for example. (ROA.3734.) But that similarly ignores the plain meaning of the policy text, well-settled insurance law, and the undisputed scientific reality that exposure to asbestos continues *well after* inhalation.

Starting again with the relevant policy language: there is nothing in the policies to suggest that a triggering exposure happens only at the moment of inhalation. (*See* ROA.2775, 2899.) At least one says the opposite: Canal's policy expressly extends

to "continuous or repeated exposure." (ROA.2775.) Interstate's broadly covers any "exposure to conditions," without excluding continuous exposure, and the district court noted that its definition isn't meaningfully different. (ROA.2899, 3733.)

Those broad provisions can easily be read to include the continuous exposure to asbestos that happens when the fibers remain lodged in a person's lungs after being inhaled. *Supra*, Statement of Facts § B. There's no dispute about that science. Doctors have long recognized that asbestos fibers can lodge in a person's lungs, causing ongoing injury, for years in some cases. *Id. & supra*, n.1. Canal and Interstate agreed with those principles. (ROA.3376, 3395, 3411, 3442.) The district court also acknowledged the evidence that asbestos fibers can lodge in the lungs and cause ongoing damage long after inhalation. (*See* ROA.3731, 3733.)

Yet the district court rejected the idea that this continuous exposure could be a triggering occurrence under the language of the policies, holding instead that "exposure to conditions" means *only* exposure to external sources of asbestos. (ROA.3734.) In other words, and despite the science referenced above, the district court held that the triggering exposure concludes the moment the fibers are inhaled. But it had no textual basis for imposing that limitation.

The court initially missed the point of this argument by focusing only on "the damage that takes place in the body" or "the post-inhalation development of

disease." (ROA.3734.) Murco's alternative argument is more simple than that. It turns only on the idea that the person is continuously "exposed" to the fibers that remain lodged in their body, regardless of when or how those fibers cause damage or disease. (*See* ROA.3339-41.) If exposure is the relevant trigger, that scientifically undisputed exposure should satisfy the plain language of the policies.

The district court also missed the mark by relying on dictionary definitions that undermine its ultimate ruling. It pointed to a dictionary defining "exposed" to mean "open to view" or "not shielded or protected," and "expose" to mean "subject to risk from a harmful action or condition" or "submit or make accessible to a particular action or influence." (ROA.3734.) Nothing about those definitions says an exposure must be to conditions outside the body. Just as a matter of ordinary parlance, it's hard to see how exposure to asbestos trapped in the lungs is *not* a situation where someone is "subject to a risk from a harmful action or condition" or otherwise "not shielded or protected." *Don's Bldg.*, 267 S.W.3d at 23 ("Policy terms are given their ordinary and commonly understood meaning unless the policy itself shows the parties intended a different, technical meaning.").

Other dictionary definitions drive the point home. Indeed, in another part of the definition the district court relied upon (yet left out of the opinion), Merriam Webster says exposure can include "the condition of being subject to some effect or

influence."[6] And "condition" can refer broadly to any "attendant circumstances" or "state of being."[7] Giving those undefined policy terms their ordinary meaning, then, as required by Texas law, it is fair to say that individuals suffering injury from internalized foreign matter are subject to some harmful "effect or influence," "attendant circumstance," or "state of being."

Conversely, it would be unnatural to say that continuous exposure to harmful materials inside the body is not an injurious exposure. Imagine, for example, that a child ingests a jagged piece of metal in a food product. It would be odd to say that the harmful exposure occurred only while the child sat at the dinner table. In reality, the child was continuously exposed to the harmful condition over a course of days as the metal passed through the body. Asbestos fibers cause similar harm, exposing the person to injurious conditions for prolonged periods of time once they have entered the body. Because the Canal and Interstate policies do not suggest a more limited or technical meaning for the phrase "exposure to conditions," Texas law requires the definition most expansive of coverage be applied. *See Don's Bldg.*, 267 S.W.3d at 23.

---

[6] *Exposure,* MERRIAM-WEBSTER.COM, *www.merriam-webster.com/dictionary/exposure* (last visited Nov. 11, 2025).

[7] *Condition*, MERRIAM-WEBSTER.COM, *www.merriam-webster.com/dictionary/condition* (last visited Nov. 11, 2025).

Indeed, and as with Murco's primary argument in Section I.B, the policies' silence on the issue of internal exposure creates an ambiguity at a minimum. Again, it is at least reasonable to say that, absent any language to the contrary, the phrase "exposure to conditions" extends to ongoing internal exposures given the broad ordinary meaning of those terms. And because that interpretation is reasonable, it must prevail in the event the Court adopts an exposure theory. *Don's Bldg.*, 267 S.W.3d at 23. The district court was simply wrong to suggest its narrower exposure theory generally "favor[ed] coverage" (ROA.3737) when the ultimate result was to reject all coverage, based on the dates of inhalation, rather than considering whether the underlying plaintiffs may have been continuously exposed to asbestos during the policy periods (as in this alternative argument) or may have suffered some injury during the policy periods (as in Murco's primary argument above).

## II. This Court should reverse the district court's erroneous policy interpretation and remand for further proceedings.

For all those reasons, the district court was wrong in its interpretation of the trigger language in the Canal and Interstate policies. Murco's primary goal in this appeal is to reverse that misinterpretation and replace it with a clear and accurate reading of the trigger language in its policies, to guide this and other cases. Murco respectfully requests that the Court issue an opinion adopting one of the two trigger

theories explained above and remand this case for further proceedings applying the correct theory to the three personal-injury cases at issue here.

Murco also requests one other form of relief that may be necessary to protect its interests on remand. That's where Issue #3 comes in. (*Supra*, pg. 2.) In an ideal world, the focus of the remand would be the same as the prior litigation—Berkshire's contribution claims against Canal and Interstate. (ROA.887, 894.) But Berkshire did not appeal and has declined even to participate here. So, Berkshire may choose not to pursue its contribution claims on remand. Or Canal and Interstate may argue that Berkshire has abandoned them. If that's the case, there may not be much left to do on remand. But to be safe—and to ensure Murco can secure a definitive judgment on the meaning of its policies—Murco asks the Court to reverse the district court's denial of its request for leave to assert declaratory-judgment claims. (ROA.1382.)

That relief is appropriate because Murco had good cause for its requested amendment. Courts are supposed to weigh four factors when considering such a request after the deadline in a scheduling order: (1) the explanation for the failure to timely amend; (2) the importance of the amendment; (3) potential prejudice to the other party; and (4) the availability of a continuance to cure such prejudice. *See S&W Enters., L.L.C. v. SouthTrust Bank of Alabama, NA*, 315 F.3d 533, 536 (5th Cir. 2003).

At the time Murco sought leave to amend, the dynamics of the case had shifted in ways that explained the timing of its request. (ROA.1351, 1353-55.) Whereas the lawsuit was originally brought by a primary insurer to resolve some issues under its policy, Berkshire and another insurer injected a litany of other policy issues through cross-claims filed *on the pleading amendment deadline*. (ROA.1352-53.) Several of these issues, including the trigger issue, were raised in last minute cross-claims against Canal and Interstate. (ROA.1353-54.) This meant Murco was not technically a party to those disputes, even though they involved its policies. (ROA.1356.) It was to correct this very problem that Murco sought leave to assert cross-claims for declaratory relief, to ensure it had live claims addressing these issues—issues it did not know it needed to address prior to the amendment deadline. (ROA.1356.)

The district court did not find that to be sufficient good cause. (ROA.1382-83.) But it didn't really say why. The then-assigned judge essentially just said Murco could have raised these issues sooner. (ROA.1382.) It also noted that Interstate and Canal were (at the time) opposed to the amendment (ROA.1383), but it denied the request without even waiting for responses explaining how they might be prejudiced. In any event, that idea is now arguably moot because Interstate and Canal have since acknowledged that Murco has a right to be heard on these issues. (ROA.2743-45.)

This Court has held that a district court abuses its discretion in denying leave to amend where it fails to properly evaluate the good-cause factors and gives such a limited explanation. *See, e.g., LaRocca v. Alvin Indep. Sch. Dist.*, 2022 WL 1001442, at *2 (5th Cir. Apr. 4, 2022) (per curiam) (reversing denial of leave to amend where court "provided a single reason for its denial" and "did not address the Rule 16 factors"). So too here; the district court's decision should be reversed for this reason alone. Plus, Murco showed good cause because the timing of its request was sensible given the evolution of the case; the amendment was important to help Murco protect its interests; there was little, if any, prejudice to Interstate and Canal then; and there is certainly none now that they've agreed Murco should be heard. (ROA.1355-56.)

So, in an abundance of caution and in addition to its request for reversal of the substantive summary judgment, Murco asks the Court to reverse the denial of its motion for leave to amend, so it can assert claims for declaratory relief on remand.

## CONCLUSION AND PRAYER

Murco respectfully asks this Court to reverse the summary judgment and render judgment correcting the misinterpretation of the trigger language in the Canal and Interstate policies. Murco also asks the Court to remand for further proceedings and to reverse the district court's denial of its request for leave to amend its pleadings. Murco also requests all other relief to which it is justly entitled.

Dated: November 13, 2025

Respectfully submitted,

*/s/ Andrew W. Guthrie*
Ernest Martin, Jr.
*Ernest.Martin@haynesboone.com*
Texas Bar No. 13063300
Andrew W. Guthrie
*Andrew.Guthrie@haynesboone.com*
Texas Bar No. 24078606
Reese Letourneau
*Reese.Letourneau@haynesboone.com*
Texas Bar No. 24137622
HAYNES AND BOONE, LLP
2801 N. Harwood St., Suite 2300
Dallas, Texas 75201
Telephone: (214) 651-5000
Facsimile: (214) 651-5940

Andrew P. Van Osselaer
*Andrew.Vanosselaer@haynesboone.com*
Texas Bar No. 24110471
HAYNES AND BOONE, LLP
98 San Jacinto Boulevard, Suite 1500
Austin, Texas 78701
Telephone: (512) 867-8400
Facsimile: (512) 867-8470

**Attorneys for Murco**

## CERTIFICATE OF SERVICE

I hereby certify that on November 13, 2025, I electronically transmitted this Brief of Appellant to the Clerk of the Court of the Fifth Circuit Court of Appeals using the ECF System of the Court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

*/s/ Andrew W. Guthrie*
Andrew W. Guthrie

## ECF CERTIFICATION

I hereby certify that (i) required privacy redactions have been made pursuant to 5TH CIR. R. 25.2.13; (ii) the electronic submission is an exact copy of the paper document pursuant to 5TH CIR. R. 25.2.1; (iii) the document has been scanned for viruses using the most recent version of Windows Defender and is free of viruses; and (iv) the document will be maintained in paper form for three years after the mandate or order closing the case issues, per 5TH CIR. R. 25.2.9 and 5TH CIR. ECF Filing Standards E(2).

*/s/ Andrew W. Guthrie*
Andrew W. Guthrie

## CERTIFICATE OF COMPLIANCE

I hereby certify that:

1. This brief complies with the word limit of FED. R. APP. P. 32(a)(7)(B) because this document contains 7,303 words on pages 1-32, excluding the parts of the brief exempted by FED. R. APP. P. 32(f), and 5th Cir. R. 32.2.

2. This brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type-style requirements of FED. R. APP. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 in 14-point Equity A font.

Dated: November 13, 2025 *̲/s/ Andrew W. Guthrie*
Andrew W. Guthrie