**No. 25-10958**

---

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

---

**INTERSTATE FIRE & CASUALTY COMPANY; CANAL INSURANCE COMPANY,**
***Defendant – Appellees/Cross Appellants***

***v.***

**Murco Wall Products, Inc.,**
***Intervenor – Appellant/ Cross Appellee***

---

On Appeal from the United States District Court
for the Northern District of Texas, Fort Worth Division
Case No. 4:22-cv-01137-P

---

# CANAL'S RESPONSE TO MURCO'S OPENING BRIEF AND OPENING BRIEF ON CROSS-APPEAL

---

Stephen A. Melendi
Texas Bar No. 24041468
stephenm@tbmmlaw.com
Matthew Rigney
Texas Bar No. 24068636
mattr@tbmmlaw.com
Tollefson Bradley Mitchell & Melendi, LLP
2811 McKinney Avenue, Suite 250
Dallas, Texas 75204
Telephone: (214) 665-0100
Telecopier: (214) 665-0199
**ATTORNEYS FOR DEFENDANT-APPELLEE/CROSS APPELLANT**
**CANAL INSURANCE COMPANY**

## CERTIFICATE OF INTERESTED PARTIES

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of 5th Cir. Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

| **Appellees:** | **Counsel for Appellees:** |
| --- | --- |
| Canal Insurance Company | Stephen Melendi of Tollefson, Bradley, Mitchell & Melendi, L.L.P. Dallas, TX |
| Canal Insurance Company | Matthew Rigney of Tollefson, Bradley, Mitchell & Melendi, L.L.P. Dallas, TX |
| Interstate Fire & Casualty Company | William Baron of Duane Morris, L.L.P. San Francisco, CA |
| Interstate Fire & Casualty Company | Joakim Soederbaum of Duane Morris, L.L.P. Fort Worth, TX |

| **Appellants:** | **Counsel for Appellants:** |
| --- | --- |
| Murco Wall Products, Incorporated | Andrew Van Osselaer of Haynes & Boone, L.L.P. Austin, TX |
| Murco Wall Products, Incorporated | Ernest Martin of Haynes & Boone, L.L.P. Dallas, TX |
| Murco Wall Products, Incorporated | Andrew Guthrie of Haynes & Boone, L.L.P. Dallas, TX |
| Murco Wall Products, Incorporated | Reese Letourneau of Haynes & Boone, L.L.P. Dallas, TX |

/s/ *Matthew Rigney*
Matthew Rigney

## STATEMENT REGARDING ORAL ARGUMENT

Canal believes oral argument would assist the Court and requests that oral argument be scheduled.

# CONTENTS


Certificate Of Interested Parties ........ ii

Statement Regarding Oral Argument ........ iii

Contents ........ iv

Authorities ........ vi

Jurisdictional Statement ........ 1

Statement of the Issues ........ 2

Statement of the Case ........ 3

Summary of the Argument ........ 6

Argument ........ 9

I. The District court Correctly Held that *Don's Building* Did Not Overrule *Azrock* on Trigger for Bodily Injury ........ 9

A. The Canal policy is triggered by an "occurrence" during the policy period, and no "occurrence" happened during the Canal policy ........ 10

B. Texas law follows the exposure trigger theory ........ 12

1. This Court adopted the exposure trigger theory and rejected the continuous trigger theory ........ 12

2. The Texas Supreme Court held that, when analyzing trigger theory, the policy language controls ........ 14

3. The Texas Supreme Court did not overrule Azrock ........ 16

4. Numerous federal courts after Don's Building apply exposure theory to asbestos bodily injury claims ........ 17

II. Murco's Interpretation of the Canal Policy is Unreasonable ........ 21

A. Murco's interpretation renders half of the insuring agreement superfluous ........ 21

B. Murco's proposed interpretation is a back door to the rejected continuous trigger theory ........ 25

III. Canal's Appeal — The District court Erred by Applying an Eight-Corners Analysis to Canal's Duty to Indemnify Murco ........ 27

A. An insurer's duty to defend and indemnify are separate and distinct ........ 27

B. The Canal policy has no duty to defend, only a duty to indemnify ........ 29

C. The district court erred by applying duty to defend concepts to Canal's duty to indemnify Murco for "ultimate net loss" ....................................31

1. The court's ruling contradicts the policy language as a whole.........31

2. The district court misread the evidence considered in the *LGS* case ..........................................................................................34

D. Canal has the right to appeal the district court's judgment ......................35

IV. Conclusion & Prayer ...................................................................................36

Certificate of Service .........................................................................................38

Certificate of Compliance ..................................................................................39

# AUTHORITIES

**Cases**

*Allstate Ins. Co. v. Disability Servs. of the Sw. Inc.*,
400 F.3d 260 (5th Cir. 2005) .......... 28

*Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154 (Tex. 2003) .......... 24

*Anadarko Petroleum Corp. v, Houston Cas. Co.*,
573 S.W.3d 187 (Tex. 2019) .......... 30, 32

*BNSF Ry. Co. v. United States*, 775 F.3d 743 (5th Cir. 2015) .......... 33

*Certain Underwriters at Lloyds, London v. Law*, 570 F.3d 574 (5th Cir. 2009) .......... 22

*City of Coll. Station v. Star Ins. Co.*, 735 F.3d 332 (5th Cir. 2013) .......... 28

*Colony Ins. Co. v. Peachtree Constr., Ltd.*, 647 F.3d 248 (5th Cir. 2011) .. 28, 30, 32

*D.R. Horton-Tex., Ltd. v. Markel Int'l Ins. Co., Ltd.*,
300 S.W.3d 740 (Tex. 2009) .......... 28

*Domain Prot., L.L.C. v. Sea Wasp, L.L.C.*, 23 F.4th 529 (5th Cir. 2022) .......... 35, 36

*Don's Bldg. Supply, Inc. v. OneBeacon Ins. Co.,*
267 S.W.3d 20 (Tex. 2008) .......... passim

*Great Am. Ins. Co. v. Primo*, 512 S.W.3d 890 (Tex. 2017) .......... 25

*Grogan v. Kumar*, 873 F.3d 273(5th Cir. 2017) .......... 2

*Guar. Nat'l Ins. Co. v. Azrock Indus., Inc.* 211 F.3d 239 (5th Cir. 2000) .......... passim

*Kinsale Ins. Co. v. Flyin' Diesel Performance & Offroad, L.L.C.*,
99 F.4th 821 (5th Cir. 2024) .......... 22, 24

*LGS Techs., Inc. v. U.S. Fire Ins. Co.*, No. 2:07-CV-399-DF, 2010 WL 5646054
(E.D. Tex, Sept. 2, 2010), *vacated and remanded on other grounds*,
*Gasket & Supply Co. v. U.S. Fire Ins. Co.*,
698 F. App'x 774 (5th Cir. 2017) .......... 17, 18, 19

*LGS Techs., LP v. U.S. Fire Ins. Co.*, No, 2:07-CV-399,
2015 WL 5934689 (E.D. Tex. August 14, 2015),
*rpt. & rec. adopted*, 2015 WL 5934690 (October 12, 2015) .......... 19, 34, 35

*Liberty Mut. Fire Ins. Co. v. Copart of Conn., Inc.*,
75 F.4th 522 (5th Cir. 2023) .......... 27, 28

*Md. Cas. Co. v. W.R. Grace & Co.,* 23 F.3d 617, 627 (2d Cir.1994) .......... 16

*Monroe Guar. Ins. Co. v. BITCO Gen. Ins. Corp.*, 640 S.W.3d 195 (Tex. 2022) .... 28

*Mosaic Baybrook One, L.P. v. Simien*, 674 S.W.3d 234 (Tex. 2023)........................22

*Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Puget Plastics Corp.*,
649 F. Supp. 2d 613 (S.D. Tex. 2009),
*aff'd*, 454 F. App'x. 291 (5th Cir. 2011)..............................................................28

*OneBeacon Am. Ins. Co. v. Huntsman Polymers Corp.*,
276 P.3d 1156, 1173-74 (Utah Ct. App. 2012)............................................. 19, 20

*OneBeacon Ins. Co. v. Don's Bldg. Supply, Inc.*, 553 F.3d 901 (5th Cir. 2008) ......17

*Piranha Partners v. Neuhoff*, 596 S.W.3d 740 (Tex. 2020)....................................22

*U.S. Polyco, Inc. v. Tex. Cent. Bus. Lines Corp.*,
681 S.W.3d 383 (Tex. 2023) (per curiam) .................................................... 21, 22

*United States v. Am. Ry. Express Co.*, 265 U.S. 425 (1924) ...................................36

*URI, Inc. v. Kleberg Cnty.*, 543 S.W.3d 755 (Tex. 2018)........................................22

*Wilshire Ins. Co. v. RJT Const., LLC*, 581 F.3d 222 (5th Cir. 2009).........................16

*Zurich Am. Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487 (Tex. 2008) ............................27

**Statutes**

28 U.S.C. § 1291 ..........................................................................................................1

28 U.S.C. § 1332(a)(1).................................................................................................1

**Rules**

FED. R. APP. P. 28.1(c)(4) ..........................................................................................36

FED. R. CIV. P. 26(a)(1)(A)(iv) ...................................................................................29

FED. R. CIV. P. 56 ..........................................................................................................2

## JURISDICTIONAL STATEMENT

The district court had subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1) because the parties are completely diverse, and the amount in controversy exceeds $75,000. This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291 as an appeal from the final judgment entered by the district court.

## STATEMENT OF THE ISSUES

For Murco's appeal:

1. Whether the district court properly held that, based on the specific language of the Canal policy, Canal must indemnify Murco for judgments and settlements in lawsuits where the actual facts establish that the claimant was exposed to Murco's asbestos-containing products during the Canal policy period.

For Canal's cross-appeal:

2. Whether the district court erred when it held that, based on the specific language of the Canal policy, Canal must indemnify Murco for defense costs incurred in lawsuits merely because the claimant alleged exposure Murco's asbestos-containing products during the Canal policy period.

Each of these issues results from the district court's summary judgment rulings. This Court reviews summary judgment rulings *de novo*, using the summary judgment record that was before the district court. *Grogan v. Kumar*, 873 F.3d 273, 277 (5th Cir. 2017) (citing FED. R. CIV. P. 56(a)).

## STATEMENT OF THE CASE

Murco made and sold asbestos-containing construction products until at least 1978 and has been sued in numerous personal injury lawsuits across the country as a result. *See* ROA.3109, 3725. Canal and Interstate, the only insurers that remain in this case, issued excess liability insurance policies to Murco effective 1984 to 1985 and 1985 to 1986, respectively. ROA.2774, 2895. The Canal policy, number XS 01 31 65, is effective June 15, 1984 to June 15, 1985 and provides $5,000,000 of coverage in excess of a primary insurance policy of $500,000, which is effective the same period. ROA.2774. The primary insurer, Integrity Insurance Company, is insolvent and was liquidated without paying any claims to Murco under its policy. ROA.1362 ¶ 11.

This appeal concerns three of the underlying lawsuits against Murco, referred to as the *Galier*, *Murray*, and *Smith* suits. In each of the underlying lawsuits, the plaintiff alleges that the claimant suffered personal injury as a result of exposure to Murco's asbestos-containing products.[1] In the *Smith* lawsuit, the pleadings alleged that Randal Smith was exposed to asbestos-containing products manufactured or sold by Murco from 1973 to 1983. ROA.2985-86. The facts developed during the litigation indicate his exposure stopped in 1979. ROA.2985-86, 3047 at 102:10-

[1] Claims against Canal arising from the *Galier* lawsuit are not part of this appeal because they were dismissed. ROA.3805.

103:25. The *Murray* lawsuit alleged that William Murray was exposed to Murco asbestos-containing products from 1957 to 1979. ROA.2962-64. The evidence developed in the suit confirms his exposure ended in 1979. ROA.2966, 2976-78.

While this case began as a much more complicated matter among many different insurers, by the time the district court took up the Parties' summary judgment motions, the only claims remaining were Berkshire's cross-claims against Canal, Interstate, and Murco. ROA.887-96. Specifically, Berkshire sought contribution from Canal and Interstate for amounts Berkshire paid in defending and resolving the *Smith* and *Murray* cases, and in satisfying a judgment in *Galier*. ROA.889-92 ¶¶ 13-20, 895 ¶ 41. Berkshire also sought a declaratory judgment on the issue of when the Canal and Interstate policies were triggered (ROA.892-93 ¶¶ 23-25, 33) and a declaration related to when Canal's policy attaches given Integrity's insolvency (ROA.893 ¶ 26).

To facilitate resolution of the claims and issues, the district court realigned the Parties, with Berkshire being the plaintiff, Murco the intervenor, and Canal and Interstate the defendants. ROA.3720-21. The Parties agreed to file cross summary judgment motions only on the trigger issue, reserving the right to litigate other issues later, including the question of when the Canal and Interstate policies attached, given the insolvency of the underlying primary policies. *See* ROA.2743-44. The district court approved this plan, and, although it did not allow Murco to amend its pleadings

because that deadline had long passed, it allowed Murco to brief the trigger issue. ROA.2748.

The Parties filed their motions, and the district court issued a ruling that granted Canal's motion in full and Interstate's in part, leaving only Interstate's obligations as to the *Galier* lawsuit unresolved. ROA.3725-42. Interstate moved for reconsideration. The Court granted the motion, modifying its earlier Memorandum and Opinion and granting summary judgment in full to Interstate. ROA.3785-87. The Court entered a Final Judgment consistent with its rulings. ROA.3804-06. Murco, Interstate, and Canal each filed a notice of appeal. ROA.3807-12.

## SUMMARY OF THE ARGUMENT

Canal asks this Court to affirm (almost all) of the district court's judgment. This is an insurance coverage case involving Canal's and Interstate's duty to indemnify Murco. Under the policy's terms, Canal has a duty to indemnify Murco for settlements, judgments, and defense costs only for lawsuits where the claimant was actually exposed to Murco's asbestos-containing products during the policy period. This is because, unlike the standard commercial general liability policy that is ubiquitous today, the Canal policy is triggered only when an "occurrence" happens during the policy period — the timing of the "personal injury" is irrelevant. So, because the Canal policy incepted on June 15, 1984, and Mr. Smith's and Mr. Murray's exposure ended years before, their claims are not covered.

The district court correctly reached this conclusion for two reasons. First, the judgment is correct based on the policy language and this Court's ruling in *Guarantee National Ins. Co. v. Azrock Indus., Inc.* 211 F.3d 239 (5th Cir. 2000). In that case, decided in the context of a policy with similar provisions, this Court (1) held that the "occurrence" in question was the claimant's exposure to asbestos; and (2) rejected the "continuous trigger" theory proffered by Murco. The Supreme Court of Texas case on which Murco relies plainly does not apply. In *Don's Bldg. Supply, Inc. v. OneBeacon Ins. Co.*, the Supreme Court of Texas answered a similar question, but for "property damage," rather than "bodily injury," and in the context of an

insurance policy that is, in effect, the inverse of the Canal policy. 267 S.W.3d 20, 29 (Tex. 2008). For that policy, the timing of the "property damage" matters, and when the "occurrence" happened is irrelevant. For that reason, the Supreme Court of Texas specifically disclaimed that it was considering the trigger for "bodily injury" while specifically citing *Azrock.*

Second, the district court's ruling is correct because Murco's interpretation of the Canal policy is unreasonable. Murco's interpretation of the policy would render almost half of the insuring agreement superfluous and add a requirement that the "personal injury" occur during the policy period, despite the fact that the intent of the policy is the opposite. Further, applying Murco's interpretation to the policy would result in nothing more than adopting the continuous trigger theory this Court rejected in *Azrock*.

There is one part of the district court's judgment this Court should reverse. The district court held that, unlike for settlements and judgments, Canal must indemnify Murco for defense costs for suits in which the claimant *merely alleges* exposure during the Canal policy year. This is a misreading of the Canal policy, which has no duty to defend. Specifically, the Canal policy obligates Canal only to indemnify Murco for "ultimate net loss," which is defined to include "expenses incurred by [Murco] in the investigation, negotiation, settlement and defense" of suits seeking damages because of "personal injury." The district court's holding

applies duty-to-defend standards to a policy with no duty to defend. It also contradicts the policy's terms as a whole.

For these reasons, Canal asks this Court to (1) affirm the portion of the judgment with regard to Canal's duty to indemnify Murco for settlements and judgments; and (2) reverse and render the portion of the judgment with regard to Canal's duty to indemnify Murco for defense expenses.

## ARGUMENT

### I. THE DISTRICT COURT CORRECTLY HELD THAT *DON'S BUILDING* DID NOT OVERRULE *AZROCK* ON TRIGGER FOR BODILY INJURY

This case primarily involves the interpretation of the Canal and Interstate insurance policies. Under its policy, Canal must indemnify Murco for claims involving "personal injury" caused by an "occurrence," if that "occurrence" happened during the policy period. ROA.2775. It is undisputed that Mr. Smith and Mr. Murray were not exposed to Murco's products during the Canal policy. Therefore, there is no coverage for those claims.

Murco tries to make this case about a broader discussion of the law by ignoring the terms of the Canal policy and rehashing settled law. In 2000, this Court held that exposure to asbestos during the policy year was the trigger for a similarly worded excess policy. *Guar. Nat. Ins. Co. v. Azrock Indus., Inc.*, 211 F.3d 239 (5th Cir. 2000). But Murco relies on a 2008 Supreme Court of Texas case that addressed trigger for "property damage" under a standard commercial general liability policy. *See Don's Bldg. Supply, Inc. v. OneBeacon Ins. Co.*, 267 S.W.3d 20, 29 (Tex. 2008). Murco's reliance is misplaced because the Canal and Interstate polices are not triggered by "property damage" or "bodily injury," like the policy in *Don's Building*. The policies in this case are triggered by an "occurrence," like the policy in *Azrock*. This Court should reject Murco's argument and affirm the district court's holding.

### A. The Canal policy is triggered by an "occurrence" during the policy period, and no "occurrence" happened during the Canal policy

An insurance coverage case begins with the policy. The Canal insuring agreement reads, in pertinent part:

> I. Coverage: The company will indemnify the insured for all sums which the "insured" shall become legally obligated to pay as damages and expenses, all as hereinafter defined as included within the term "ultimate net loss," by reason of liability,
>
> (a) imposed upon the "insured" by law, or
>
> (b) assumed by the "named insured", or by any officer, director, stockholder or employee thereof while acting within the scope of his duties as such, under any contract or agreement other than liability assumed with respect to occurrences taking place prior to the time such contract or agreement became effective.
>
> because of
>
> (i) "personal injury" caused by, or
>
> (ii) "property damage" caused by, or
>
> (iii) "advertising liability" arising out of
>
> an occurrence which takes place during the policy period anywhere in the world.

ROA.2775. This insuring agreement has two primary parts, the second of which is the source of the Parties' disagreement. Under the first part, Canal must indemnify Murco for liability either imposed on or assumed by Murco. The second part, beginning with "because of," requires that liability be "because of 'personal injury'

caused by an occurrence which takes place during the policy period." *Id.* The term "occurrence" is defined in relevant part as:

> **"Occurrence"** means an accident which takes place during the policy period, or that portion within the policy period of a continuous or repeated exposure to conditions, which causes "personal injury", "property damage" or "advertising liability" neither expected nor intended by the "insured".
>
> With respect to "personal injury" and "property damage", all such exposure to substantially the same general conditions existing at or emanating from one location or source shall be deemed one "occurrence".

ROA.2775. The Parties agree that liability was imposed on or assumed by Murco, and that the underlying claimants suffered "personal injury," which includes "bodily injury, sickness, [and] disease." ROA.2775. The relevant question for this appeal is: When did the "occurrence," that caused Mr. Smith's and Mr. Murray's "personal injury" take place? If those "occurrences" took place during the Canal policy, the claims are covered. Otherwise, they are not.

The answer is that they are not covered, because the Canal policy incepted on June 15, 1984, and Mr. Smith's and Mr. Murray's exposure to asbestos each ended before that.[2] There was simply no "occurrence" during the policy period that caused their bodily injuries, a necessary component of the policy's insuring agreement. ROA.2775.

[2] Mr. Smith's exposure ended, at the latest, in 1983 (ROA.2985-87) and Mr. Murray's in 1979. (ROA.2962-64).

## B. Texas law follows the exposure trigger theory

The district court reached the only reasonable interpretation of the policy based on its language. But Murco attempts to shoehorn this case into the holding of *Don's Bldg.*, 267 S.W.3d 20. *Don's Building* does not control this case. This Court's holding in *Azrock* does. 211 F.3d 239.

### *1. This Court adopted the exposure trigger theory and rejected the continuous trigger theory*

In *Azrock*, the Fifth Circuit analyzed four trigger theories for asbestos claims under Texas law: (1) the manifestation theory, in which coverage is triggered when the disease "manifests"; (2) the exposure theory, in which coverage is triggered when there is subclinical tissue damage that results upon inhalation of a toxic substance such as asbestos; (3) the continuous or "triple" trigger theory, in which coverage is triggered from initial exposure through, in essence, the lifetime of the claimant as the disease manifests; and (4) the injury-in-fact trigger, in which it must be determined when the injury actually happened. *Azrock*, 211 F.3d at 244-46.

The *Azrock* court analyzed the insuring agreement of an umbrella policy issued for the period 1985 to 1986, which required the insurance company to "pay on behalf of the insured all sums which the insured shall be legally obligated to pay as ultimate net loss because of (A) Personal Injury. . .caused by an occurrence during the policy period." *Id*. at 244 (emphasis added). The policy defined "occurrence" as:

> an accident, or a happening or event, or a continuous or repeated exposure to conditions which unexpectedly or unintentionally results in personal injury, property damage or advertising liability. All such exposure to substantially the same general conditions existing at or emanating from one premises location shall be deemed one occurrence.

*Id*. The insuring agreement required that the "occurrence," not the damage or injury, happen during the policy period. Based on this policy language, this Court specifically rejected the continuous trigger theory advocated by the insured, Azrock, and by Murco in this case:

> To adopt the continuous trigger approach, we would have to interpret the term "bodily injury" in the policy as encompassing three distinct events: (1) inhalation exposure, (2) exposure in residence, and (3) manifestation or diagnosis.
>
> We decline to adopt the continuous trigger theory as the best *Erie* guess of what the highest Texas court would do if squarely faced with this issue. No Texas court has ever adopted or implicitly endorsed the continuous trigger theory.

*Id.* at 248-49.

Instead, the Fifth Circuit adopted the exposure trigger theory. In order to resolve the defense obligations potentially owed by Guaranty National to Azrock in various lawsuits, the court remanded the case to the district court with the following instructions:

> . . .examine closely the underlying pleadings to determine which complaints allege exposure to Azrock's asbestos products between July 1, 1985 and June 30, 1986. Our cursory review of the pleadings included in the record on appeal suggests that some of the complaints clearly allege relevant employment in asbestos tile

> installation or related work during the policy period as well as causation; those complaints would trigger the duty to defend. Others clearly allege employment (*ergo* exposure) that ended prior to the policy period; Guaranty National would have no duty to defend those complaints.

*Id*. at 251. *Azrock* remains the authority that controls this case.

#### *2. The Texas Supreme Court held that, when analyzing trigger theory, the policy language controls*

In 2008, the Texas Supreme Court addressed a separate issue: the trigger for a standard commercial general liability policy that required "property damage" to happen during the policy period. *Don's Bldg.*, 267 S.W.3d at 28. That case, on certified question from this Court, involved water intrusion damage to material behind the exterior finish applied to various residential homes. *Id*. at 22-23. In *Don's Building*, the policy at issue was a standard commercial general liability policy. *Id.* at 24. It provided that:

> This insurance applies to "bodily injury" and "property damage" only if:
>
> (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory;" and
>
> (2) The "bodily injury" or "property damage" occurs during the policy period.

*Id.* at 24. Based on this specific policy language, the Texas Supreme Court had to determine when "property damage" occurs — when damage manifests or when damage actually occurs. *Id.* The court adopted the injury-in-fact rule, holding that

the "property damage" occurs for purposes of coverage under the policy when "actual physical damage to the property occurred." *Id.*

In rejecting other trigger theories, the Texas Supreme Court's analysis was controlled by the specific policy language:

> As for the manifestation rule. . .the policy before us simply makes no provision for it. The policy in straightforward wording provides coverage if the property damage "occurs during the policy period," and further provides that property damage means "[p]hysical injury to tangible property." Whatever practical advantages a manifestation rule would offer to the insured or the insurer, the controlling policy language does not provide that the insurer's duty is triggered only when the injury manifests itself during the policy term, or that coverage is limited to claims where the damage was discovered or discoverable during the policy period.
>
> Similarly, the policy's language does not support adoption of an exposure rule, at least not where there is "physical injury to tangible property" as alleged in this case. Again, the policy provides coverage if the " 'property damage' occurs during the policy period."

*Id.* at 28-29. The sole focus of the inquiry was when the "property damage" occurred because that is what the policy required. *Id.*

In fact, the Court recognized that under the policy, the date of the "occurrence" simply does not matter. *Id.* at 29. ("Again, the policy provides coverage if the "'property damage' occurs during the policy period. The policy does not state that coverage is available if property is, during the policy period, exposed to a process, event, or substance that later results in bodily injury or physical injury to tangible property."); *see also Wilshire Ins. Co. v. RJT Const., LLC*, 581 F.3d 222, 225 (5th

Cir. 2009) (recognizing that in a case involving cracks in a home's walls and ceiling, "[i]t is of no moment that the faulty foundation work occurred in 1999"). Thus, the entire basis for the ruling in *Don's Building* was predicated on a policy focused on when the "property damage" happened, not when the "accident," or "occurrence," that caused it happened.

### *3. The Texas Supreme Court did not overrule Azrock*

Further, *Don's Building* explicitly did not overrule *Azrock* as to the trigger on claims for bodily injury. *Don's Bldg.*, 267 S.W.3d at 29. ("A related if not overlapping body of law, which we do not explore today, addresses when coverage is triggered on bodily injury claims under CGL and other policies."). A footnote references *Azrock*, and re-emphasizes that the Texas Supreme Court did not adopt an injury in fact trigger for progressive bodily disease claims or any "bodily injury" claim:

> *See, e.g., Guar. Nat'l Ins. Co. v. Azrock Indus., Inc.,* 211 F.3d 239, 243–48 (5th Cir.2000) (discussing various theories of coverage in progressive disease context, and concluding that rules for coverage of personal injury and property damage claims are different); *Md. Cas. Co. v. W.R. Grace & Co.,* 23 F.3d 617, 627 (2d Cir.1994) (agreeing that "concepts of bodily injury may not be imported wholesale into the property damage context" when determining when damage occurs under CGL policy); *but see Montrose Chemical,* 42 Cal.Rptr.2d 324, 913 P.2d at 888 (concluding that coverage is the same for bodily injury and property damage claims under CGL policy). **We express no opinion on whether the coverage rule for determining if a claim occurs during the term of the OneBeacon policy is the same for bodily injury and property damage claims.**

*Id.* n. 32 (emphasis added). The Texas Supreme Court could not have been clearer: It simply did not overrule *Azrock*.

This Court recognized that *Don's Building* only overruled *Azrock* on a limited basis. Following the Texas Supreme Court's answer of the certified questions, the Fifth Circuit remanded the case, stating:

> The effect of the answers provided by the Supreme Court of Texas to our certified questions is to overrule *Unitramp* and the **relevant portion of *Azrock***. Because the district court relied on *Azrock* and *Unitramp,* we REVERSE the district court's judgment and REMAND this case for further proceedings consistent with this opinion. Costs shall be borne by OneBeacon.

*OneBeacon Ins. Co. v. Don's Bldg. Supply, Inc.*, 553 F.3d 901, 903 (5th Cir. 2008) (emphasis added). Thus, *Azrock* was overruled only to the extent it held that manifestation trigger applied to claims for property damage.

#### ***4. Numerous federal courts after Don's Building apply exposure theory to asbestos bodily injury claims***

After *Don's Building*, federal courts applying Texas law continued to apply the exposure theory set forth in *Azrock*. A series of related opinions from the Eastern District of Texas and the Fifth Circuit were issued in the Longhorn Gasket litigation. The first of those opinions was *LGS Technologies, Inc. v. U.S. Fire Ins. Co.*, No. 2:07-CV-399-DF, 2010 WL 5646054 (E.D. Tex, Sept. 2, 2010), *vacated and remanded on other grounds*, *Gasket & Supply Co. v. U.S. Fire Ins. Co.*, 698 F. App'x 774 (5th Cir. 2017). In the initial *LGS* opinion, the court sought to determine what

constitutes an "occurrence" in the context of asbestos claims. The primary policies at issue defined "occurrence" as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured." *Id.* at *7. The issue of what constituted the "occurrence" bore on the issue of trigger as well as a determination of the number of "occurrences." The court stated the following with respect to the "occurrence" in the context of asbestos claims:

> No Texas court has squarely addressed the issue of what constitutes an "occurrence" in asbestos-related injury claims. When no state court decisions control, a district court exercising diversity jurisdiction must make a so-called *"Erie* guess" as to how the Texas Supreme Court would apply state law. (citations omitted). While silent as to asbestos-related claims, Texas courts agree that interpreting what constitutes an occurrence requires focusing on the events that *cause* the injuries and give rise to the insured's liability, rather than on the number of injuries.
>
> In this case, there appears to be no dispute that the cause of the injuries was the exposure to the asbestos-containing gaskets.

*Id*. at *7-8.

The court further explained that the determination of what constituted an "occurrence" was necessarily related to trigger theory and harmonized its holding with *Don's Building,* due to the differing policy language:

> This conclusion—that claimants exposed to the gaskets at the same time and location constitute a single occurrence—accords with Texas law on what the proper trigger should be for insurance coverage. In *Don's Building Supply, Inc. v. OneBeacon Ins. Co.,* 267 S.W.3d 20 (2008), the Supreme Court of Texas adopted an "injury-in-fact" trigger for property damage insurance policies. 267 S.W.3d at 30. In finding

> "injury-in-fact" to be the appropriate trigger, the *Don's Building* Court relied on the language of the policy at issue. *Id.* at 29–30. The Court also found an injury-in-fact trigger to be consistent with scholarly authority. *Id.* at 30 (citing 7A APPLEMAN ON INSURANCE § 4491.01 and 7 COUCH ON INSURANCE § 102:22).
>
> Admittedly, the *Don's Building* Court rejected an exposure trigger because it was unsupported by the policy language. *Id.* at 29. In this case, however, the language of primary policies amply supports the conclusion that the injury-in-fact is the exposure to the asbestos.

*Id*. at *8.

Litigation among the parties continued, and in 2015, the magistrate judge assigned to the case issued an opinion. *LGS Tech., LP v. U.S. Fire Ins. Co.*, No, 2:07-CV-399, 2015 WL 5934689 (E.D. Tex. August 14, 2015), *rpt. & rec. adopted*, 2015 WL 5934690 (October 12, 2015). In that opinion, the magistrate judge reiterated the "law of the case," stating, in relevant part:

> First, the cause of the injuries to the claimants in the underlying litigation is their exposure to LGS' asbestos-containing gaskets. As a corollary, asbestos claimants exposed to LGS gaskets at the same time and location are a single "occurrence." **And further, injury-in-fact in these cases is the various claimants' exposure(s) to asbestos.**"

*Id.* at *3 (emphasis added). Ultimately, the magistrate judge recommended that U.S. Fire be ordered to make various payments based on the record, applying "the Court's 'exposure equals injury-in-fact' ruling." *Id.* at *7, *13.

Likewise, in *OneBeacon Am. Ins. Co. v. Huntsman Polymers Corp.*, 276 P.3d 1156, 1173-74 (Utah Ct. App. 2012), the Utah court of appeals, applying Texas law, held that the exposure theory described in *Azrock* remained the appropriate trigger

theory in Texas for progressive disease bodily injury claims in the context of asbestos. In that case, the court examined Texas case law addressing the issues, particularly the *Azrock* and *Don's Building Supply* cases from the Fifth Circuit and Texas Supreme Court, and held:

> Thus, to the extent that the *Azrock* and *Pilgrim* decisions apply the exposure trigger theory to bodily injury cases, those decisions likely remain unaffected by *Don's Building Supply*. Because the *Don's Building Supply* decision rejected the exposure trigger theory only in cases involving property damage claims, it has not overruled precedent applying the exposure trigger theory to progressive disease bodily injury cases under Texas law.
>
> * * *
>
> Although the issue has not been finally resolved by Texas's highest court, we see no reason to apply a different trigger theory than courts applying Texas law have previously applied in circumstances similar to the case before us. Accordingly, we conclude that the district court correctly determined that Texas law requires application of the exposure trigger theory when interpreting a CGL insurance policy to determine when coverage is triggered for bodily injury in the form of a progressive disease.

*Id*. at 1173-1174.

The *Azrock*, *Don's Building Supply*, and subsequent federal court opinions demonstrate that exposure trigger applied to the bodily injury claims in *Azrock* has not been overruled and that *Don's Building* is the law as to claims for property damage made under a commercial general liability policy. Importantly, the Texas Supreme Court, this Court, and other courts analyzing the issue recognize that the most important factor is the specific policy language. In fact, the Texas Supreme Court's closing words for this certified question are:

> Finally, we stress that we do not attempt to fashion a universally applicable 'rule' for determining when an insurer's duty to defend a claim is triggered under an insurance policy, as such determinations should be driven by the contract language-language that obviously may vary from policy to policy.

*Don's Bldg.*, 267 S.W.3d at 30. This Court should heed that warning and analyze the trigger of the Canal and Interstate policies using those policies' language.

## II. MURCO'S INTERPRETATION OF THE CANAL POLICY IS UNREASONABLE

The Texas Supreme Court's direction that the policy language is the determining factor in evaluating trigger puts Murco in a corner. The Canal policy is triggered by an "occurrence" during the policy period, but Mr. Smith and Mr. Murray were not exposed to Murco asbestos after the policy incepted. The only way for an "occurrence" to have happened during the Canal policy is to apply the continuous exposure theory that this Court rejected that theory in *Azrock*. 211 F.3d 248-49. Murco's convoluted solution is to interpret the definition of "occurrence" to necessarily include "personal injury." This is an unreasonable interpretation that the district court rightly rejected, and this Court should reject it as well.

### A. Murco's interpretation renders half of the insuring agreement superfluous

Murco proposes an unreasonable interpretation of the Canal policy. In interpreting a contract, the court's primary objective is to "to ascertain and give effect to the parties' intent as expressed in the instrument." *U.S. Polyco, Inc. v. Tex. Cent. Bus. Lines Corp.*, 681 S.W.3d 383, 387 (Tex. 2023) (per curiam) (quoting *URI,*

*Inc. v. Kleberg Cnty.*, 543 S.W.3d 755, 763 (Tex. 2018)). In so doing, the court's analysis begins with the contract's express language. *Kinsale Ins. Co. v. Flyin' Diesel Performance & Offroad, L.L.C.*, 99 F.4th 821, 826 (5th Cir. 2024). A contract that has "a clear and definite legal meaning" is unambiguous and is construed as a matter of law. *Id.* at 827 (quoting *Mosaic Baybrook One, L.P. v. Simien*, 674 S.W.3d 234, 257 (Tex. 2023)). If a term in an insurance policy has only one reasonable interpretation as applied to the facts of the claim, it is unambiguous. *URI,* 543 S.W.3d at 765.

The Court can find ambiguity only after exhaustion of "all the traditional tools of interpretation." *Flyin' Diesel*, 99 F.4th at 826 n.7 (citing *U.S. Polyco*, 681 S.W.3d at 389 n.1); *Piranha Partners v. Neuhoff*, 596 S.W.3d 740, 743 (Tex. 2020) ("We must first determine whether the Assignment is ambiguous, considering its language as a whole in light of well-settled construction principles and the relevant surrounding circumstances."). Further, the insured's interpretation of the policy must be reasonable, not merely any alternative interpretation. *Certain Underwriters at Lloyds, London v. Law*, 570 F.3d 574, 577 (5th Cir. 2009) ("Ambiguity will not be found, however, simply because the parties or the lawyers—or even judges—can come up with different interpretations of the words of a contract.").

The relevant part of the insuring agreement obligates Canal to indemnify Murco for certain liability:

> because of
>
> (i) "personal injury" caused by, or
>
> (ii) "property damage" caused by, or
>
> (iii) "advertising liability" arising out of
>
> an occurrence which takes place during the policy period anywhere in the world.

ROA.2775. In short, the liability must be "because of 'personal injury' caused by an occurrence which takes place during the policy period." The insuring agreement unambiguously does **not** require that "personal injury" take place during the policy period. Murco seemingly agrees, because it does not assert that, on the face of the insuring agreement, a "personal injury" must take place during the policy. Rather, it resorts to its convoluted "two-prong" theory, which is that because the term "personal injury" merely appears in the definition of "occurrence," a "personal injury" is therefore a necessary element of an "occurrence." Murco Br. 20, ECF No. 50. This is wrong.

The full definition of "occurrence" is:

> **"Occurrence"** means an accident which takes place during the policy period, or that portion within the policy period of a continuous or repeated exposure to conditions, which causes "personal injury", "property damage" or "advertising liability" neither expected nor intended by the "insured".
>
> With respect to "personal injury" and "property damage", all such exposure to substantially the same general conditions existing at or

> emanating from one location or source shall be deemed one "occurrence".

ROA.2775. Based on the plain language of the entire definition, Murco's interpretation is unreasonable.

Murco's "two prong" occurrence argument falls apart when reading the insuring agreement as a whole, which this Court must do under Texas law. *See Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 159 (Tex. 2003) ("In addition to applying the plain meaning of the policy's language, we must also read the policy as a whole, giving effect to each provision."). Murco contends that because the term "personal injury" merely appears in the definition of "occurrence" no "occurrence" can take place until there is "personal injury." Murco Br. 20-21. The district court rejected this argument based on the plain language of the policy, finding that "[p]ersonal injury is not part of the occurrence; it is something the occurrence causes." ROA.3734. While Murco laments the quickness with which the district court batted away this argument, the court gave it due consideration.

Moreover, this argument does not make sense in the context of the whole insuring agreement. The insuring agreement already requires that a "personal injury" take place. ROA.2775. This interpretation improperly renders the insuring agreement's "personal injury" requirement as superfluous, which violates traditional rules of policy interpretation. *Flyin' Diesel*, 99 F.4th at 829 ("Rendering large swaths of the contractual language meaningless is, of course, an impermissible

interpretation."); *Great Am. Ins. Co. v. Primo*, 512 S.W.3d 890, 892–93 (Tex. 2017). Under Murco's theory, the insuring agreement obligates Canal to indemnify Murco for liability "because of personal injury caused by an accident which causes personal injury." If "personal injury" were baked into the definition of an "occurrence," the insuring agreement could merely have required Canal to indemnify Murco for liability "because of an occurrence" and omitted the separate requirement for "personal injury." The Court should reject this interpretation.

### B. Murco's proposed interpretation is a back door to the rejected continuous trigger theory

Furthermore, even if Murco's interpretation were reasonable, applying it to the definition of "occurrence" as a whole results in there being no coverage for the *Smith* and *Murray* lawsuits. Murco never addresses the second paragraph of the definition of "occurrence." That provision provides that "all such exposure to substantially the same general conditions existing at or emanating from one location or source **shall be deemed one 'occurrence'.**" ROA.2775 (emphasis added). Thus, all of Mr. Smith's and Mr. Murray's exposure to Murco asbestos-containing products is deemed one "occurrence" each. This is fatal to Murco's claims.

Mr. Smith and Mr. Murray were exposed to Murco asbestos-containing products prior to the inception of the Canal policy on June 15, 1984. ROA.2985-87, 2962-64. If, as Murco purports, an "occurrence" requires "(1) an exposure to conditions, which (2) causes/results in personal injury," (Br. 23) and, as Murco also

alleges, "exposure to asbestos continues internally after leaving a contaminated area, and it causes ongoing injury" (Br. 7), then by the terms of the definition, the "occurrence" in question here happened when Mr. Smith and Mr. Murray were first exposed to Murco products, years before the Canal policy incepted. Put another way: Mr. Smith alleges he was exposed to Murco's asbestos-containing products beginning in 1973. ROA.2985-87. Under Murco's interpretation of the policy, Mr. Smith inhaled asbestos from a Murco product in 1973 — this was the first prong, his "exposure to conditions." He also suffered "personal injury" in 1973, as soon as there was asbestos in his lungs. Therefore, the "occurrence" in question happened in 1973. The same is true for Mr. Murray, who alleges he was exposed starting in 1957. ROA.2962-64. His "exposure to conditions" and his "personal injury" occurred in 1957, decades before the Canal policy incepted.

Under this interpretation, the only path to coverage under the Canal policy is for each of those "occurrences" to start in, for example, 1957 and continue for decades until the claimant's death. If this sounds familiar, it is because this is the continuous/triple trigger theory this Court rejected in *Azrock*. 211 F.3d at 248-49. Murco's position is nothing more than a back-door attempt to have this Court adopt the continuous trigger. The Court should reject this effort.

## III. CANAL'S APPEAL — THE DISTRICT COURT ERRED BY APPLYING AN EIGHT-CORNERS ANALYSIS TO CANAL'S DUTY TO INDEMNIFY MURCO

Canal cross appeals the district court's holding, memorialized in the final judgment, that Canal's duty to indemnify Murco for defense costs is triggered by mere allegations of exposure to asbestos during the Canal policy period. ROA.3805 ¶ 1. The district court erred in reaching that legal conclusion because the Canal policy has no duty to defend — it only indemnifies Murco for "ultimate net loss" in excess of the $500,000 underlying insurance policy. Thus, the proper analysis of Canal's duty to indemnify is whether the true facts established in the underlying lawsuit are within the scope of coverage. In other words, the same, well-established standard that Texas courts apply when evaluating an insurer's duty to indemnify under a liability policy.

### A. An insurer's duty to defend and indemnify are separate and distinct

Under Texas law, a liability insurer usually has two duties in terms of coverage: the duty to defend and the duty to indemnify. *Liberty Mut. Fire Ins. Co. v. Copart of Conn., Inc.*, 75 F.4th 522, 528 (5th Cir. 2023). These duties are separate and distinct and many courts, including this Court, consider the duty to defend "broader" than the duty to indemnify. *Id.* (citing *Zurich Am. Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487, 490 (Tex. 2008)). This is because, under a standard commercial general liability policy, a liability insurer's duty to defend is determined by comparing the facts alleged in the underlying complaint against the policy terms —

i.e., the eight-corners rule. *City of Coll. Station v. Star Ins. Co.*, 735 F.3d 332, 336 (5th Cir. 2013); *see also Monroe Guar. Ins. Co. v. BITCO Gen. Ins. Corp.*, 640 S.W.3d 195, 199 (Tex. 2022). If those facts *potentially* support a covered claim, the carrier has a duty to defend. *Copart*, 75 F.4th at 528. Further, the duty to defend is not divisible; if there is potential for coverage for any part of the lawsuit against the insured, the insurer must defend the entire suit. *Id.* at 529 (citing *Allstate Ins. Co. v. Disability Servs. of the Sw. Inc.*, 400 F.3d 260, 263 (5th Cir. 2005)).

Conversely, an insurer must indemnify its insured if the facts actually established in the underlying litigation are covered by the policy's terms. *Colony Ins. Co. v. Peachtree Constr., Ltd.*, 647 F.3d 248, 253 (5th Cir. 2011); *D.R. Horton-Tex., Ltd. v. Markel Int'l Ins. Co., Ltd.*, 300 S.W.3d 740, 744 (Tex. 2009) ("As with any other contract, breach or compliance with the terms of an insurance policy is determined not by pleadings, but by proof."). And the duty to indemnify is fundamentally divisible. An insurer must indemnify its insured only for that part of a judgment or settlement that is covered. *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Puget Plastics Corp.*, 649 F. Supp. 2d 613, 649 (S.D. Tex. 2009) ("The damages recited in a judgment must be apportioned between claims covered by the policy and those that are not.), *aff'd*, 454 F. App'x. 291 (5th Cir. 2011); *see* FED. R. CIV. P. 26(a)(1)(A)(iv) (requiring initial disclosure of any insurance agreement under which

an insurer "may be liable to satisfy **all or part of a possible judgment** in the action.") (emphasis added).

### B. The Canal policy has no duty to defend, only a duty to indemnify

The distinction between an insurer's duty to defend and its duty to indemnify is important because the duty to defend is not an issue in this case. The Canal policy does not provide one. The Canal policy includes an endorsement concerning defense coverage that states, in relevant part:

> DEFENSE COVERAGE
>
> With respect to such insurance as is afforded by this policy, if there is no underlying insurer obligated to do so, the Company shall:
>
> (a) defend any suit against the insured alleging personal injuries (including death resulting therefrom). . .and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the Company may make such investigation, negotiation and settlement of any such suit as it deems expedient;

ROA.2781. However, the policy is endorsed to make the defense coverage optional at Canal's discretion:

> It is hereby understood and agreed that the word "shall" as it appears in the Defense Coverage Provision of this policy is deleted and the word "may" is substituted in lieu thereof.

ROA.2780. Rather than provide a duty to defend like modern, primary commercial general liability policies, the Canal policy indemnifies Murco for "ultimate net loss:"

> I. Coverage: The company will indemnify the insured for all sums which the "insured" shall become legally obligated to pay as

> damages and expenses, all as hereinafter defined as included within the term "ultimate net loss," by reason of liability

ROA.2775; *see also Anadarko Petroleum Corp. v, Houston Cas. Co.*, 573 S.W.3d 187, 190 (Tex. 2019). The term "ultimate net loss" means:

> "Ultimate Net Loss" means the total of the following sums arising with respect to each "occurrence" to which this policy applies:
>
> (a) all sums which the "insured", or any organization as his insurer, or both, become legally obligated to pay as damages, whether by reason of adjudication or settlement, because of "personal injury", "property damage" or "advertising liability"; and
>
> (b) all expenses incurred by the "insured" in the investigation, negotiation, settlement and defense of any claim or suit seeking such damages, excluding only the salaries of the "insured's" regular employees.

ROA.2776. As discussed in depth above, this differs from standard CGL policies like the Texas Supreme Court analyzed in *Don's Building*, or that the district court analyzed in *Colony v. Peachtree* in two important ways. First, those policies each provide a distinct and independent duty to defend and a duty to indemnify. *Don's Bldg*, 267 S.W.3d at 23; *see Colony*, 647 F.3d at 254. Second, the trigger of each of those policies are tied to when the "property damage" or "bodily injury" happened, not when the "occurrence" happened. *Don's Bldg*, 267 S.W.3d at 23; *see Colony*, 647 F.3d at 254. This distinction is crucial to understanding how the district court erred in its holding.

### C. The district court erred by applying duty to defend concepts to Canal's duty to indemnify Murco for "ultimate net loss"

In light of the policy language, the district court erred in holding that Canal's duty to indemnify Murco for defense costs expended in defending asbestos lawsuits is determined by the allegations in those lawsuits. ROA.3805. In so holding, the court applied duty to defend concepts — allegations of exposure to asbestos during Canal's policy — to Canal's duty to indemnify Murco for "ultimate net loss."

#### *1. The court's ruling contradicts the policy language as a whole*

The district court held that the language used in subparagraph (b) of the definition of "ultimate net loss" — expenses incurred in the "defense of any claim or suit seeking such damages" — required a duty-to-defend type analysis and is triggered by allegations, not actual facts. ROA.3738-39. The district court focused on the word "seeking," equating it to a standard CGL policy's language when describing the duty to defend. ROA.3738-39. The court reasoned that the parties effectively substituted in an eight-corners analysis to that portion of the definition of "ultimate net loss." ROA.3739.

This interpretation of the policy is too granular and does not properly consider the policy's insuring agreement as a whole. Under the policy's insuring agreement, Canal must "indemnify the insured for all sums which the 'insured' shall become legally obligated to pay as damages and expenses, all as hereinafter defined as included within the term 'ultimate net loss.'" ROA.2776. In short, Canal must

indemnify Murco for "ultimate net loss." *Id.* As the district court recognized when it held that the "true facts" control indemnity for settlements and judgments, this is unambiguous indemnity language that carries the "true facts" standard of proof. ROA.3740, 3805. There is no language in the insuring agreement or the definition of "ultimate net loss" that evinces an intent to modify Canal's duty solely for defense costs, as compared to settlements or judgments; *see Anadarko*, 573 S.W.3d at 195 (holding under similar policy that "ultimate net loss" means "an amount of money Anadarko is obligated to pay (1) as damages resulting from a covered occurrence as awarded in a judgment or settlement and (2) as defense expenses **resulting from that covered occurrence**.) (emphasis added).

Take, for example, a policy that imposes both a duty to defend and a duty to indemnify, like the policy in *Colony v. Peachtree* that the district court examined in its order. ROA.3739 (citing *Colony*, 647 F.3d at 253). The insuring agreement in *Colony* has explicit duty to defend language: "We will have the right and duty to defend the insured against any 'suit' seeking those damages." ROA.3740. While it does employ the "seeking" language the district court noted, that language is tied to a phrase setting out a duty: "We will have the right and duty to defend. . ." *Colony,* 2008 WL 5364632. Here, on the other hand, the only duty set forth in the Canal insuring agreement is the duty to indemnify. ROA.2775.

Further, the court's conclusion that the parties substituted a complaint-allegation standard for defense cost runs counter to the Parties' intent. The policy is specifically endorsed to remove any duty to defend. ROA.2775, 2780. The district court's holding that the policy indeed requires Canal to indemnify Murco for defense costs based merely on allegations directly contradicts the Parties' intent. This effectively turns the duty to indemnify into the duty to defend.

The canon of *noscitur a sociis* also weighs against the district court's interpretation, as it results in an awkward split of Canal's duties down the middle of the definition of "ultimate net loss." *BNSF Ry. Co. v. United States*, 775 F.3d 743, 754 (5th Cir. 2015) ("This canon recognizes that an ambiguous term may be given more precise context by the neighboring words with which it is associated.") (cleaned up). The district court held that Canal has a duty to indemnify Murco for settlements only when the true facts establish exposure during its policy year. ROA.3786. This means that, under the court's ruling, the standard of proof for consecutive items in the definition of "ultimate net loss" varies from one to the next. For "expenses incurred by [Murco] in the investigation, negotiation, settlement and defense of any claim or suit seeking such damages" (ROA.2776), the actual facts control expenses incurred in "settlement," the alleged facts control the expenses incurred in "defense," and it is unclear which facts control expenses incurred in

"investigation" and "negotiation." *See* ROA.3786, 3805. Holding that the true facts control each of these terms harmonizes the terms of the contract.

### *2. The district court misread the evidence considered in the LGS case*

The district court relied significantly on *LGS Techs. v. U.S. Fire Ins. Co.* to reach its conclusion, but the court misread the case. No. 2:07-cv-399, 2015 WL 5934689 (E.D. Tex. Aug. 14, 2015)). Like this case, the *LGS* case involved an excess policy that provided indemnification for covered defense costs. *Id.* at *12. Under similar language to what is in the Canal policy, the *LGS* court used a duty-to-indemnify analysis, applying the actual facts to determine whether the excess carrier owed covered defense costs and how much. *Id.* The court relied on affidavits from the insured's defense counsel and "five spreadsheets summarizing voluminous documents to show settlement payments to claimants and those claimants' work and exposure histories" — i.e., the actual facts of exposure. *Id.* at *5, *12.

In this case, the district court characterized the *LGS'* court's analysis as purporting to consider the actual facts but, in reality, using the facts alleged: "Although the *LGS* court did purport to measure the insurer's duty to indemnify based on the 'facts actually established,' the 'facts' it pointed to were actually allegations in the underlying lawsuits." ROA.3740. This is not a correct reading of *LGS*. The *LGS* court specifically referenced the "record," which included the defense lawyer's affidavit and the excel spreadsheet summarizing the claimants' work and

exposure histories. *LGS*, 2015 WL 5934689 at *4. Thus, the *LGS* case supports Canal's and Interstate's position.

### D. Canal has the right to appeal the district court's judgment

Murco incorrectly suggests in a footnote that Canal does not have valid grounds to cross appeal the district court's judgment and should be precluded from filing a reply brief. Murco Br. 13 n. 4, ECF No. 50. Murco misapplies the authority it cites.[3] *Domain Prot., L.L.C. v. Sea Wasp, L.L.C.*, 23 F.4th 529, 539 (5th Cir. 2022). In that case, this Court held that a party that enjoyed a "full victory" via judgment in the district court is not entitled to a cross-appeal because its only basis was alternative grounds to support the judgment. *Id.* This is plainly not the situation here.

While Canal and Interstate did prevail generally at the district court against Berkshire's claims for contribution, the judgment includes a declaration that their policies cover defense expenses where the underlying claimants merely allege exposure during their policy years. ROA.3805 ¶ 1. Canal and Interstate contend that this is incorrect, and Murco is entitled to indemnification only for defense expenses for claims where the claimant was actually exposed to Murco's dangerous asbestos-containing products. Thus, the appeal of this declaration is not merely seeking an alternative ground to support the judgment. It is an "attack [of the] the decree with a

---

[3] Notably, Murco's counsel filed the Parties' Joint Motion to Realign the Parties and designate Canal and Interstate as Appellees/Cross-Appellants to file briefs in accordance with Federal Rule of Appellate Procedure 28.1(c)(4), which contemplates a cross-appellee's reply brief. ECF No. 38.

view either to enlarging his own rights thereunder or of lessening the rights of his adversary," which is proper for cross-appeal. *Id.* (quoting *United States v. Am. Ry. Express Co.*, 265 U.S. 425, 435, (1924)).

## IV. CONCLUSION & PRAYER

The district court correctly held that the specific language of the Canal policy and this Court's holding in *Azrock* control this case. Under the terms of its policy, Canal has a duty to indemnify Murco for settlements and judgments only for claimants who were actually exposed to Murco's asbestos-containing products during the Canal policy period. But the district court did not go far enough. It should also have held that Canal (and Interstate's) duty to indemnify Murco for defense costs is determined by the same analysis. Therefore, Canal prays that this Court affirm that part of the judgment with regard to settlements and judgments, and reverse and render that part of the judgment with regard to defense costs. Canal further prays for any further relief to which it is entitled.

Respectfully submitted,

*/s/ Matthew Rigney*
Stephen A. Melendi
Texas Bar No. 24041468
stephenm@tbmmlaw.com
Matthew Rigney
Texas Bar No. 24068636
mattr@tbmmlaw.com
Tollefson Bradley Mitchell & Melendi, LLP
2811 McKinney Avenue, Suite 250
Dallas, Texas 75204
Telephone: (214) 665-0100
Telecopier: (214) 665-0199
**ATTORNEYS FOR DEFENDANT-APPELLEE/CROSS APPELLANT CANAL INSURANCE COMPANY**

## CERTIFICATE OF SERVICE

I hereby certify that on January 14, 2026, I used the Court's CM/ECF system to file and serve the foregoing brief on all Parties through their counsel of record, listed below:

Andrew P. Van Osselaer
Haynes And Boone, LLP
98 San Jacinto Boulevard, suite 1500
Austin, Texas 78701

Ernest Martin, Jr.
Andrew W. Guthrie
Reese Letourneau
Haynes And Boone, LLP
2801 N. Harwood Street, Suite 2300
Dallas, Texas 75201

**Counsel for Murco**

Roger C. Diseker
Joakim Soederbaum
Duane Morris LLP
300 Throckmorton Street, suite 1650
Fort Worth, Texas 76102-2935

William J. Baron
Gina M. Foran
Duane Morris LLP
One Market Plaza
Spear Street Tower, Suite 2200
San Francisco, CA 94105-1127

**Counsel for Interstate**

/s/ *Matthew Rigney*
Matthew Rigney

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because, excluding the parts of the document exempted by Rule 32(f) and 5th Circuit Rule 32.1 this document contains 8,251 words.

This document complies with the requirements of Federal Rules of Appellate Procedure 32(a)(5) and 32(a)(6) and 5th Circuit Rule 32.1 because this document has been prepared in 14-point Times New Roman, a proportionally spaced typeface, using Microsoft Word 365 version 2512.

/s/ *Matthew Rigney*
Matthew Rigney