No. 25-10958

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

INTERSTATE FIRE & CASUALTY COMPANY,
CANAL INSURANCE COMPANY,

Defendants – Appellees – Cross-Appellants,

v.

MURCO WALL PRODUCTS, INC.,

Intervenor – Appellant – Cross-Appellee

On Appeal from the United States District Court
for the Northern District of Texas, Fort Worth Division
Case No. 4:22-cv-01137-P, Judge Mark T. Pittman, presiding

# INTERSTATE'S ANSWERING BRIEF AND OPENING BRIEF ON CROSS-APPEAL

Roger C. Diseker
Joakim G. Soederbaum
DUANE MORRIS LLP
300 Throckmorton St., Ste. 1650
Fort Worth, Texas 76102-2935
817-704-1000 Telephone
817-704-1001 Fax

Jason E. Boatright
DUANE MORRIS LLP
200 Crescent Court, Suite 900
Dallas, TX 75201-1514
214-257-7217 Telephone
214-257-7201 Fax

*Attorneys for Defendant, Appellee and Cross-Appellant*
*Interstate Fire & Casualty Company*

## CERTIFICATE OF INTERESTED PERSONS

**Case Number and Style:** 25-10958; *Interstate Fire & Casualty Company*, *Canal Insurance Company v. Murco Wall Products, Incorporated*

Pursuant to 5th Circuit Rule 28.2.1, the undersigned counsel of record certifies that the following listed persons and entities have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

### I. Appellant / Cross-Appellee

- **Murco Wall Products, Inc.**

  Appellate Counsel

  Ernest Martin, Jr.
  *Ernest.Martin@haynesboone.com*
  Andrew W. Guthrie
  *Andrew.Guthrie@haynesboone.com*
  Reese Letourneau
  *Reese.Letourneau@haynesboone.com*
  **HAYNES AND BOONE LLP**
  2801 N. Harwood Street, Suite 2300
  Dallas, TX 75201
  Telephone: (214) 651-5000

  Andrew P. Van Osselaer
  *Andrew.Vanosselaer@haynesboone.com*
  **HAYNES AND BOONE LLP**
  98 San Jacinto Boulevard, Suite 1500
  Austin, Texas 78701
  Telephone: (512) 867-8400

Additional Trial Counsel

Leslie C. Thorne
*Leslie.Thorne@haynesboone.com*
**HAYNES AND BOONE LLP**
98 San Jacinto Boulevard, Suite 1500
Austin, Texas 78701
Telephone: (512) 867-8400

Other Interested Persons

According to Murco's Certificate of Interested Persons (ECF No. 50, p. 3), it has no parent corporation and no publicly held corporation owns 10% or more of its stock.

**II. Appellees / Cross-Appellants**

- **Interstate Fire & Casualty Company**

Appellate Counsel

Jason Boatright
*JEBoatright@duanemorris.com*
**Duane Morris LLP**
200 Crescent Court, Suite 900
Dallas, TX 75201-1514
Telephone: (214) 257-7217

Roger C. Diseker
*RDiseker@duanemorris.com*
Joakim G. Soederbaum
*JSoederbaum@duanemorris.com*
**Duane Morris LLP**
300 Throckmorton Street, Suite 1650
Fort Worth, Texas 76102-2935
Telephone: (817) 704-1000

William J. Baron
*wjbaron@duanemorris.com*
Gina M. Foran
*gmforan@duanemorris.com*
**Duane Morris LLP**
One Market Plaza
Spear Street Tower, Suite 2200
San Francisco, CA 94105-1127
Telephone: (415) 957-3000

Former Trial Counsel

Christopher W. Martin
*martin@mdjwlaw.com*
**Martin Disiere Jefferson & Wisdom LLP**
808 Travis 11th Floor
Houston, Texas 77002
Telephone: (713) 632-1700

Sheryl Kao
*skao@chartwelllaw.com*
**The Chartwell Law Offices LLP**
550 Reserve Street, Suite 190
Southlake, Texas 76092
Telephone: (512) 856-6348

Other Interested Persons

Interstate, an Illinois corporation, is a wholly owned subsidiary of Fireman's Fund Insurance Company, an Illinois corporation, which in turn is a wholly owned subsidiary of Allianz Global Risks US Insurance Company, an Illinois corporation ("AGR US").

Eighty percent (80%) of the voting common stock of AGR US is held by Allianz of America, Inc., which is a wholly owned subsidiary of Allianz Europe B.V., a wholly owned subsidiary of Allianz SE.

Twenty percent (20%) of the voting common stock and one hundred percent (100%) of the non-voting preferred stock of AGR US is held by AGCS International Holding B.V., which is a wholly owned subsidiary of Allianz Global Corporate & Specialty SE, a wholly owned subsidiary of Allianz SE.

Allianz SE is a publicly held company that indirectly holds 10% or more of Fireman's Fund Insurance Company (and its subsidiaries, including Interstate).

- **Canal Insurance Company**

Appellate Counsel

Stephen A. Melendi
*stephenm@tbmmlaw.com*
Matthew Patrick Rigney
*mattr@tbmmlaw.com*
**TOLLEFSON BRADLEY MITCHELL & MELENDI LLP**
2811 McKinney Avenue, Suite 250
Dallas, Texas 75204
Telephone: (214) 665-0100

Other Former Trial Counsel

Franklin M. Kennedy
*frankk@tbmmlaw.com*
**TOLLEFSON BRADLEY MITCHELL & MELENDI LLP**
2811 McKinney Avenue, Suite 250
Dallas, Texas 75204
Telephone: (214) 665-0100

Other Interested Persons

Interstate is unaware of the corporate structure of Canal and, therefore, is not aware of any parent corporation(s) or publicly held corporation owning 10% or more of the stock of Canal.

## III. Prior Parties Not Participating in Appeal

- **Berkshire Hathaway Specialty Insurance Company, f/k/a Stonewall Insurance Company**

  Trial Counsel

  Mark Thomas Beaman
  *mbeaman@germer-austin.com*
  Kelli B. Smith
  *ksmith@germer.com*
  Ryan Christopher Bueche
  *rbueche@germer-austin.com*
  **GERMER BEAMAN & BROWN PLLC**
  1501 S. Mopac Expwy. Suite A400
  Austin, Texas 78746
  Telephone: (409) 654-6700

  Other Interested Persons

  According to Berkshire's disclosure statement (ROA.470), Berkshire is a wholly-owned subsidiary of National Indemnity Company, which is a wholly-owned subsidiary of Berkshire Hathaway Inc., a Delaware corporation that is publicly traded, with an office in Omaha, Nebraska.

- **ACE American Insurance Company and ACE Property and Casualty Insurance Company**

  Trial Counsel

  Brian K. Garrett
  *bgarrett@bhilaw.com*
  **BLAIES & HIGHTOWER, L.L.P.**
  420 Throckmorton Street, Suite 1200
  Fort Worth, Texas 76102
  Telephone: (817) 334-0800

Christopher Hemphill
*christopher.hemphill@mclolaw.com*
**COHN BAUGHMAN**
333 West Wacker Drive, Suite 900
Chicago, Illinois 60606
Telephone: (312) 753-6616

Other Interested Persons

Interstate is unaware of the corporate structure of ACE American Insurance Company and ACE Property and Casualty Insurance Company and, therefore, is not aware of any parent corporation(s) or publicly held corporation owning 10% or more of the stock of either corporation.

- **Fairmont Specialty Insurance Company, f/k/a Ranger Insurance Company**

Trial Counsel

Daisy Khambatta
*Daisy.Khambatta@kennedyslaw.com*
Bevin Carroll
*Bevin.Carroll@kennedyslaw.com*
**KENNEDYS CMK LLP**
3821 Juniper Trace, Suite 101
Austin, Texas 78738
Telephone: (512) 359-8833

Other Interested Persons

According to Fairmont's disclosure statement (ROA.467), Fairmont Specialty Insurance Company merged into TIG Insurance Company, a California domiciled stock insurer. 100% of the common shares of TIG Insurance Company are owned by Fairfax (US) Inc., a Delaware corporation. The preferred shares of TIG Insurance Company are owned by The Resolution Group, Inc. Fairfax (US) Inc. is 94.44%

owned by FFHL Group Ltd. and is 5.56% owned by Fairfax Financial Holdings Limited. FFHL Group Ltd. is a Canadian holding company, whose ultimate controlling parent is Fairfax Financial Holdings, Limited, a Canadian Public Holding Company. Fairfax Financial Holdings Limited is publicly traded on the Toronto Stock Exchange.

- **Tudor Insurance Company**

Trial Counsel

Robert G. Hogue
*robhogue@msn.com*
4514 Cole Avenue, Suite 600
Dallas, Texas 75205-4193
Telephone: (214) 559-7107

Other Interested Persons

According to Tudor's disclosure statement (ROA.774), other interested persons are: Western World Insurance Company (parent of Tudor, located in Parsippany, NJ); Western World Insurance Group, Inc. (direct parent of Tudor, incorporated in Delaware); AIG Property Casualty, Inc. (U.S.) (indirect parent company of Tudor); American International Group Inc. (ultimate parent company of Tudor); Stratford Insurance Company (subsidiary of Tudor, located in Parsippany, NJ).

- **Travelers Indemnity Company, as successor to Gulf Insurance Co.**

Trial Counsel

Courtney Ervin
*cervin@hicks-thomas.com*
Amanda Goldstein
*agoldstein@hicks-thomas.com*
**HICKS THOMAS LLP**
700 Louisiana St., Suite 2300
Houston, Texas 77002
Telephone: (713) 547-9100

Other Interested Persons

According to Travelers' disclosure statement (ROA.326), Travelers Indemnity Company is 100% owned by Travelers Insurance Group Holdings, Inc., which is 100% owned by Travelers Property Casualty Corp., which is 100% owned by The Travelers Companies, Inc. The Travelers Companies, Inc. is the only publicly held company in the corporate family. No individual or corporation owns 10% or more of the stock of The Travelers Companies, Inc.

## IV. Other Financially Interested Persons

American Contractors Indemnity Company, U.S. Specialty Insurance Company, and United States Surety Company

Dated: January 14, 2026

*/s/ Joakim G. Soederbaum*
Joakim G. Soederbaum
Attorney of Record for Interstate
Fire & Casualty Company

## STATEMENT REGARDING ORAL ARGUMENT

Defendant, Appellee, and Cross-Appellant Interstate Fire & Casualty Company ("Interstate") disagrees with Intervenor, Appellant, and Cross-Appellee Murco Wall Products, Inc. ("Murco") that this appeal and cross-appeal involve "conflicting precedents." Rather, this appeal and cross-appeal involve straightforward insurance policy language, established precedent, and no conflicting evidence. Nevertheless, Interstate believes that oral argument could be of assistance and asks the Court to schedule oral argument.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ........ i
STATEMENT REGARDING ORAL ARGUMENT ........ ix
TABLE OF CONTENTS ........ x
TABLE OF AUTHORITIES ........ xiii
JURISDICTIONAL STATEMENT ........ 1
STATEMENT OF THE ISSUES IN MURCO'S APPEAL ........ 2
STATEMENT OF THE ISSUE IN INTERSTATE'S CROSS-APPEAL ........ 2
INTRODUCTION ........ 3
STATEMENT OF THE CASE ........ 5

A. Murco Sold Products that Contained Asbestos During the 1970s and Early 1980s. ........ 5

B. Interstate Issued an Excess Insurance Policy to Murco for a Policy Period During 1985-1986. ........ 6

1. Interstate's Policy Applies to Covered Occurrences Which Take Place During the Policy Period. ........ 6

2. Interstate's Policy Does Not Provide a Duty to Defend. ........ 7

C. This Case Concerns Insurance Coverage Claims Arising from Three Underlying Lawsuits Against Murco. ........ 9

1. Galier's Exposure to Murco's Asbestos Products Took Place in the 1970s. ........ 9

2. Murray's Exposure to Murco's Asbestos Products Ended by 1979. ........ 11

3. Smith's Exposure to Murco's Asbestos Products Ended Before 1983 ........ 12

D. After Murco's Primary Insurers Filed this Coverage Case, Berkshire Filed Crossclaims Against Interstate and Others. ........ 13

E. Interstate and Canal Moved for Summary Judgment. ........ 14

F. The District Court Granted Summary Judgment. ........ 16

G. The District Court Entered Judgment, and Interstate, Canal, and Murco Appealed. .....19

STANDARD OF REVIEW .....20

INTERSTATE'S ANSWERING BRIEF .....20

I. SUMMARY OF ARGUMENT .....20

II. ARGUMENT .....23

A. Interstate's Policy Language Requires Exposure to Murco's Asbestos Products During the Policy Period. .....23

1. The Policy Covers Occurrences During the Policy Period, and Defines "Occurrence" to Include Exposure to Conditions ..... 23

2. Murco Tries to Circumvent Interstate's Policy Language By Citing Generalizations Based on Different Policies ..... 26

3. Murco Seeks to Erase the Exposure Requirement From Interstate's Policy. ..... 28

4. Texas Law Applies the Exposure Trigger to Asbestos Bodily Injury Claims. ..... 29

5. *Azrock* Continues to Govern Insurance Coverage Claims Arising from Asbestos Bodily Injury Suits. ..... 33

6. Texas Law Rejects the Continuous Trigger Approach Raised by Murco. ..... 37

B. Uncontradicted Evidence Shows that Each Claimant's Exposure to Murco's Asbestos Products Ended Before Interstate's Policy Period. .....41

C. Murco's Motion for Leave to File a Crossclaim against Interstate was Untimely, and its Challenge to the Order Denying Leave is Moot. .....44

III. CONCLUSION AND PRAYER .....47

INTERSTATE'S CROSS-APPEAL OPENING BRIEF .....48

I. SUMMARY OF ARGUMENT .....48

II. ARGUMENT .....49

A. The Duty to Indemnify Requires Actual Coverage Based on Established Facts, Not Potential Coverage Based on Allegations. .....49

1. Interstate's Policy Does Not Provide a Duty to Defend, but Provides Payment of Defense Costs Incurred for Covered Claims. ........ 49

2. In Ruling that the Duty to Indemnify Defense Costs Arises from Allegations under the Eight-Corners Rule, the District Court Did Not Address Key Policy Wording. ........ 52

3. In Ruling that the Duty to Indemnify Defense Costs Arises from Allegations under the Eight-Corners Rule, the District Court Misread the *LGS Technologies* Decision. ........ 55

B. Interstate Cross-Appeals from a Judicial Declaration Set Out in the Judgment. ........ 59

III. CONCLUSION AND PRAYER ........ 60

CERTIFICATE OF SERVICE ........ 62

CERTIFICATE OF COMPLIANCE ........ 62

# TABLE OF AUTHORITIES

**CASES** **PAGE(S)**

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) .......... 20, 42-43

*Colony Ins. Co. v. Peachtree Const., Ltd.*,
647 F.3d 248 (5th Cir. 2011) .......... 5, 48, 52

*Don's Building Supply, Inc. v. OneBeacon Ins. Co.*,
267 S.W.3d 20 (Tex. 2008) .......... 3-4, 21-24, 26-27, 30, 33-36, 52

*Ducre v. Executive Offices of Halter Marine, Inc.*,
752 F.2d 976 (5th Cir. 1985) .......... 30

*Estate of Bradley ex rel. Sample v. Royal Surplus Lines Ins. Co.*,
647 F.3d 524 (5th Cir. 2011) .......... 20-21

*Gilbert Texas Const., L.P. v. Underwriters at Lloyd's London*,
327 S.W.3d 118 (Tex. 2010) .......... 41

*Great Am. Ins. Co. v. Employers Mut. Gas. Co.*,
18 F.4th 486 (5th Cir. 2021) .......... 55

*Guaranty National Ins. Co. v. Azrock Industries, Inc.*,
211 F.3d 239 (5th Cir. 2000) .......... 3-5, 16, 22-23, 25, 29, 31-41, 52

*Keene Corp. v. Ins. Co. of N. Am.*,
667 F.2d 1034 (D.C. Cir. 1981) .......... 38

*Lexington Ins. Co. v. ACE Am. Ins. Co.*,
No. Civ. No. H-12-0531, 2014 WL 3406512 (S.D. Tex. July 7, 2014) .......... 42

*LGS Technologies, Inc. v. United States Fire Ins. Co.*,
No. 2:07-CV-399-DF, 2010 WL 5646054 (E.D. Tex, Sept. 2, 2010) .......... 35

*LGS Technologies, LP v. U.S. Fire Ins. Co.*,
No. 2:07-CV-399, 2015 WL 5934689 (E.D. Tex. Aug. 14, 2015) .......... *passim*

*Little v. Liquid Air Corp.*,
37 F.3d 1069 (5th Cir. 1994) .......... 20

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986)....................44

*Matter of Riverstone Resort, LLC*,
122 F.4th 576 (5th Cir. 2024)....................60

*McCracken v. U.S. Fire Ins. Co.*,
802 F. Supp. 30 (W.D. Tex. 1992)....................50

*One Beacon Am. Ins. Co. v. Huntsman Polymers Corp.*,
276 P.3d 1156 (Utah App. 2012)....................4, 23, 32-33, 36-38

*Pilgrim Enters., Inc. v. Maryland Cas. Co.*,
24 S.W.3d 488 (Tex. App.—Houston [1st Dist.] 2000, no pet.)....................32, 36

*Porter v. American Optical Group*,
641 F.2d 1128 (5th Cir. 1981)....................30

*Scott v. Harris*,
550 U.S. 372 (2007)....................20

*Stonewall Ins. Co. v. Asbestos Claims Mgmt. Corp.*,
73 F.3d 1178 (2d Cir. 1995)....................38

*Trinity Universal Ins. Co. v. Cowan*,
945 S.W.2d 819 (Tex. 1997)....................52, 54

*U.S. v. Fletcher, ex rel. Fletcher*,
805 F.3d 596 (5th Cir. 2015)....................49, 60

**OTHER AUTHORITIES** **PAGE(S)**

Fed. R. Civ. P. 15(b)(2)....................14, 46

Fed. R. Civ. P. 54(b)....................17

Fed. R. Civ. P. 56(a)....................20

## JURISDICTIONAL STATEMENT

Interstate agrees that the District Court had jurisdiction over this case under 28 U.S.C. § 1332(a)(1) and that this Court has appellate jurisdiction from a final judgment under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES IN MURCO'S APPEAL

Interstate disagrees with Murco's Statement of Issues Presented, and submits that the issues in Murco's appeal, as concern Interstate, are:

1. Did the District Court properly apply the specific wording in Interstate's policy, which requires that injurious exposure to conditions must take place during Interstate's policy period for coverage to apply?

2. Did the District Court properly follow this Court's precedent adopted in previous insurance litigation applying similar policy language?

3. Was Murco aggrieved by the denial of its untimely request for leave to add claims against Interstate, where the parties stipulated to trying the relevant claims by consent with Murco as an intervenor?

## STATEMENT OF THE ISSUE IN INTERSTATE'S CROSS-APPEAL

1. Did the District Court err by ruling, and entering a judicial declaration, that a duty to indemnify defense costs under Interstate's policy is triggered by allegations pled in underlying lawsuits against Murco?

# INTRODUCTION

The District Court correctly ruled that Interstate's insurance policy provides coverage for bodily injury resulting from asbestos only if the claimant was exposed to Murco's asbestos products during Interstate's policy period. ROA.2895, 2987, 2899, 3732-36. Undisputed evidence shows that, in the claims at issue, each claimant's exposure to Murco's asbestos products ended before Interstate's policy period began. ROA.2932, 2962-64, 2976-78, 2985-87, 3013, 3047, 3153-54. The District Court properly granted summary judgment for Interstate in this case.

The District Court's ruling follows this Court's decision in *Guaranty National Ins. Co. v. Azrock Industries, Inc.*, 211 F.3d 239, 248-52 (5th Cir. 2000), *overruled on other grounds*, *OneBeacon Ins. Co. v. Don's Building Supply, Inc.*, 553 F.3d 901, 903 (5th Cir. 2008); *see* ROA.3735-37. Addressing asbestos bodily injury claims under similar policy language, the Fifth Circuit held in *Azrock* that an "occurrence" triggering coverage takes place only during the time period in which a claimant was exposed to the insured's products containing asbestos. *Azrock*, 211 F.3d at 248-52.

Contrary to Murco's argument, *Don's Building Supply* does not "undercut" *Azrock* on this issue. *See Don's Building Supply, Inc. v. OneBeacon Ins. Co.*, 267 S.W.3d 20 (Tex. 2008). Rather, *Don's Building Supply* addressed different issues under different policy language; the Texas Supreme Court explained that its ruling

did not address the Fifth Circuit's holding in *Azrock* that the exposure trigger applies to asbestos bodily injury claims. *Don's Building Supply*, 267 S.W.3d at 28.

In this case, the District Court recognized that *Don's Building Supply* is distinguishable, and applied the exposure trigger of coverage the Fifth Circuit adopted in *Azrock*. ROA.3736. Other courts agree that *Azrock* continues to govern trigger of coverage for asbestos bodily injury claims after *Don's Building Supply* was decided. *See LGS Technologies, LP v. U.S. Fire Ins. Co.*, No. 2:07-CV-399, 2015 WL 5934689, at *3, 8 (E.D. Tex. Aug. 14, 2015), *Magistrate's report & recommendation adopted*, No. 2:07-cv-00399, 2015 WL 5934690 (E.D. Tex. Oct. 12, 2015); *One Beacon Am. Ins. Co. v. Huntsman Polymers Corp.*, 276 P.3d 1156, 1165, 1172 (Utah App. 2012) (applying Texas law).

For these reasons, the Court should affirm the District Court's trigger of coverage ruling and its grant of summary judgment for Interstate.

In its summary judgment orders, however, the District Court also ruled that the duty to *indemnify* is determined, in part, by allegations pled in underlying suits against Murco. ROA.3738-39, *modified* at ROA.3785-86. Although the District Court granted summary judgment for Interstate under that legal standard, the Court included that ruling as a judicial declaration in the final judgment. ROA.3805, ¶ 1.

That ruling conflicts with a uniform line of Texas cases holding that an insurer's duty to indemnify must be determined by actual facts proved, not by mere

allegations. *Colony Ins. Co. v. Peachtree Const., Ltd.*, 647 F.3d 248, 253 (5th Cir. 2011) ("[U]nlike the duty to defend, which turns on the pleadings, the duty to indemnify is triggered by the actual facts establishing liability in the underlying suit[.]"); *Azrock*, 211 F.3d at 252 ("[T]he duty to indemnify must be determined on the actual facts as established at trial.").

Interstate's policy does not provide a duty to defend. ROA.2900, ¶ D. Rather, the policy provides a duty to indemnify defense costs incurred for covered claims. ROA.2897, 2899. As with any indemnity claim, the obligation to indemnify defense expenses must be established by actual facts proved, not allegations pled against the insured. *LGS Technologies*, 2015 WL 5934689, at *4 n.24. The District Court's declaration that allegations create a duty to indemnify defense costs is legally incorrect and should be reversed.

## STATEMENT OF THE CASE

### A. Murco Sold Products that Contained Asbestos During the 1970s and Early 1980s.

Murco is a Texas-based corporation that sells wall products, such as drywall and wall joint compound. *See* ECF No. 50, p. 5; ROA.1123, ¶ 1. Before 1978, Murco's wall joint compound contained asbestos. ROA.3109. Murco stopped selling wall joint compound containing asbestos in 1978, although it sold certain other products that contained asbestos during the early 1980s. ROA.3109.

Various other insurers issued primary and excess policies to Murco during the years that Murco sold asbestos products. For example, the original plaintiffs in this case, ACE American Insurance Company and ACE Property and Casualty Insurance Company (collectively, "ACE"), issued primary policies to Murco for policy periods between 1976 and 1981. ROA.788-89. Defendant Berkshire Hathaway Specialty Insurance Company, fka Stonewall Insurance Company ("Berkshire"), issued excess policies to Murco for policy periods between 1981 and 1983. ROA.885-86, ¶ 2.

### B. Interstate Issued an Excess Insurance Policy to Murco for a Policy Period During 1985-1986.

Interstate later issued excess policy No. 55C-1036461 (the "Policy") to Murco for a one-year policy period that began in June 1985. ROA.2895. Unlike a primary policy, Interstate's excess policy does not provide a duty to defend Murco, and coverage does not apply until after the underlying limit set out in the excess policy has been exhausted. ROA.2900 (¶ D), 2901 (¶ F).

#### 1. Interstate's Policy Applies to Covered Occurrences Which Take Place During the Policy Period.

Interstate's Policy requires that the "occurrence" must take place during the 1985-86 policy period, and defines "occurrence" in part as exposure to conditions. ROA.2897 (Section I. Coverage); ROA.2899 (definition of "occurrence").

The insuring agreement in Interstate's Policy provides coverage, subject to the Policy's other terms and conditions, for "personal injury, property damage, or

advertising liability caused by or arising out of an occurrence which takes place during the policy period." ROA.2897. The insuring agreement states:

> The company agrees to pay on behalf of the insured for all sums which the insured shall become obligated to pay as damages, direct or consequential, and expenses, all as hereinafter defined as included within the term ultimate net loss, by reason of liability
>
> (a) imposed upon the insured by law …
>
> because of *personal injury*, property damage, or advertising liability *caused by or arising out of an occurrence which takes place during the policy period* anywhere in the world.

ROA.2897 (Section I. Coverage) (emphasis added).

The Interstate Policy defines "occurrence" as follows: "'Occurrence' means injurious exposure to conditions, which results in personal injury, property damage or advertising injury or damage neither expected nor intended from the standpoint of the insured…." ROA.2899.

Thus, Interstate's Policy limits coverage to injury caused by an "occurrence" that takes place during the 1985-86 policy period. And the Policy defines "occurrence" to mean "injurious exposure to conditions, which results in [unexpected] personal injury…." ROA.2897, 2899.

**2. Interstate's Policy Does Not Provide a Duty to Defend.**

Interstate's Policy expressly provides that Interstate does not have a duty to defend. The Policy states: "The Company, *although without obligation to do so*,

shall have the right and be given the opportunity to associate with the insured or its underlying insurers, or both, in the defense and control of any claim, suit, or proceeding which involves or appears reasonably likely to involve the company…." ROA.2900, ¶ D (emphasis added). While Interstate has the *option* to defend claims or suits, it does not have an *obligation* to defend.

Instead, the Policy states that the duty to indemnify includes payment of defense expenses incurred for covered claims. ROA.2897. The insuring agreement promises to pay "damages and expenses" included within the term "ultimate net loss" for claims involving personal injury "caused by or arising out of an occurrence which takes place during the policy period…." ROA.2897 (Section I. Coverage).

And the Policy defines "Ultimate net loss" as follows:

> Ultimate net loss means the total of the following sums arising *with respect to each occurrence to which this policy applies*:
>
> (a) all sums which the insured or any organization as his insurer, or both, become legally obligated to pay as damages, whether by reason of adjudication or settlement, because of personal injury, property damage or advertising liability; and
>
> (b) all expenses incurred by the insured or any organization as his insurer, or both, in the investigation, negotiation, settlement and defense of any claim or suit seeking such damages….

ROA.2899 (emphasis added).

Under this wording, after the underlying policy limit is exhausted, Interstate's excess policy provides for payment of defense costs as part of the duty to indemnify "ultimate net loss" only for claims that are covered by the Policy.

### C. This Case Concerns Insurance Coverage Claims Arising from Three Underlying Lawsuits Against Murco.

Murco has been sued in various lawsuits, in which claimants alleged they were exposed to Murco's asbestos products. *Compare* ROA.1123 (¶ 1), *with* ROA.888 (¶ 1). This coverage case involves Berkshire's contribution claims against Interstate and others, arising from three underlying suits against Murco: the *Galier*, *Murray*, and *Smith* actions. *See* ROA.889-91, ¶¶ 13-19. Uncontradicted evidence shows that, in those three suits, each claimant's exposure to Murco's asbestos products ended years before Interstate's policy period began in June 1985. ROA.2890 (¶ 11), 2892, (¶¶ 16, 18), 2932, 2962-64, 2976-78, 2985-86, 3013, 3047, 3084, 3153-54.

#### 1. Galier's Exposure to Murco's Asbestos Products Took Place in the 1970s.

In 2014 or 2015, Murco provided Interstate with notice of a lawsuit titled *Michael Galier v. Murco Wall Products, Inc.*, Oklahoma County, Oklahoma, Case No. CJ-2012-06920. ROA.2889, ¶ 8. The primary insurer, ACE, defended Murco in the *Galier* case. ROA.798, ¶¶ 82-83.

The *Galier* action went to trial, after which judgment was entered against Murco in 2015. ROA.2890, ¶ 5. When the plaintiff threatened to execute on the

judgment, Interstate joined with other primary and excess insurers to fund the premium for a supersedeas bond, to stay execution pending appeal. ROA.2888, ¶ 5. Interstate's agreement to fund a portion of the appeal bond was subject to a complete reservation of rights, which included a reservation of the right to rely on the Policy's insuring provisions and "occurrence" definition. ROA.2888-91, ¶¶ 5, 13.

Murco appealed the judgment in *Galier*. Murco filed a Petition in Error in the Oklahoma Supreme Court, which included Murco's Summary of the Case as an exhibit. ROA.2924-33. Murco's summary explained that the plaintiff, Michael Galier, testified at trial that his exposure to Murco's asbestos products involved "inhaling asbestos during sporadic exposure in the 1970s as a child for a few years when he was playing at his father's home-construction sites…." ROA.2932.

Murco eventually appealed the 2015 *Galier* judgment to the United States Supreme Court, which granted *certiorari* and remanded the case to the State courts. ROA.3008. While Murco's appeal was pending, Interstate continued to reserve its rights as settlement discussions took place. ROA.2890 (¶ 12), 2936-37. Interstate agreed that, because it had funded a portion of the appeal bond securing $137,343.17 of the judgment, as an accommodation to Murco and subject to its reservation of rights, Interstate would contribute that amount if the judgment against Murco was affirmed. ROA.2891 (¶ 13), 2939, 2941. But Interstate noted there had been no showing that its Policy covered the *Galier* claims, and Interstate emphasized that

any payment was subject to Interstate's "full and unlimited reservation of rights." ROA.2939, 2941.

In October 2022, the Oklahoma Supreme Court affirmed the judgment against Murco in the *Galier* case, stating in its opinion that "Michael Galier was exposed to asbestos in Oklahoma in the 1970s." ROA.3013. The *Galier* opinion confirmed that the plaintiff's exposure to Murco's asbestos products had taken place before Interstate's 1985-86 policy period. ROA.3013; *see generally* ROA.3010, 3019. Although Interstate did not owe coverage for the claim, Interstate honored its prior agreement to pay $137,343.17 of the *Galier* judgment, subject to Interstate's reservation of rights. ROA.2891 (¶¶ 13-14), 2941. Interstate declined to contribute additional amounts to the judgment. ROA.2939, 2941. Murco's other insurers paid the remaining amount of the *Galier* judgment. ECF No. 50, p. 10.

### 2. Murray's Exposure to Murco's Asbestos Products Ended by 1979.

Murco was also sued in a lawsuit titled *Schlageter, et al. v. Georgia-Pacific, LLC, et al.*, Canadian County, Oklahoma, Cause No. CJ-2014-287. The *Murray* action was filed by Pamela Sue Schlageter, as the representative of the estate of her father, William Murray. ROA.2943-64. The petition pled that Mr. Murray "was exposed to airborne asbestos fibers in the course and scope of his work," and alleged that his exposure to Murco's asbestos products ended by 1979. ROA.2962-64. Ms.

Schlageter later executed a declaration in that case, testifying that her father's exposure to Murco's asbestos products ended by 1979. ROA.2966, 2976-78.

ACE, Berkshire, and other insurers paid Murco's defense expenses for the *Murray* case, and paid to settle the claim against Murco. ROA.891, ¶ 17. Berkshire asked Interstate to pay a share of the payments it had made. ROA.891 (¶ 18), 2892-93. Interstate declined to contribute to the defense costs and settlement payment made to resolve the *Murray* case, because the claim is not covered by its Policy. ROA.2892-93, ¶¶ 17-20. Among other reasons, Interstate pointed out that Mr. Murray's exposure to Murco's asbestos products took place, and ended, before Interstate's Policy was issued in 1985. ROA.2892, ¶ 17.

**3. Smith's Exposure to Murco's Asbestos Products Ended Before 1983.**

In 2021, Murco asked Interstate to participate in a settlement of a lawsuit titled *Smith, et al., v. Ace Hardware Corp., et al.*, Harris County, Texas, Cause No. 2016-60174. ROA.2892-93, ¶¶ 18-20.

The petition in *Smith* pled that Randall Smith was exposed to Murco's asbestos products while he installed sheetrock and sanded materials containing asbestos, that he "had inhaled great quantities of asbestos fibers" in doing that work, and that his exposure to Murco's asbestos products took place over ten years ending in 1983. ROA.2985-87. Despite those allegations, Murco's defense counsel

reported to Murco that evidence showed the plaintiff's actual exposure to Murco's asbestos products ended in the late 1970s. ROA.3047, 3153-54.

Other insurers paid Murco's defense costs and a settlement payment made to resolve the *Smith* action. ROA.891, ¶ 17. Interstate declined to contribute to those payments because, among other reasons, Mr. Smith's exposure to Murco's asbestos products ended before Interstate's policy period began. ROA.2892-93, ¶¶ 18-20.

### D. After Murco's Primary Insurers Filed this Coverage Case, Berkshire Filed Crossclaims Against Interstate and Others.

The original plaintiffs in this action, two ACE companies, filed their complaint in December 2022, seeking a declaration that their primary policy limits would be exhausted by ACE's contribution to funding the *Galier* judgment and the settlements in *Smith* and *Murray*.[1] ROA.791-98. All claims in this case involving ACE have been settled. ROA.1375.

---

[1] More specifically, ACE alleged that Murco had devised a scheme "to manipulate its insurance policies" and prevent ACE from exhausting its primary policy limits "by demanding that ACE … defend asbestos bodily injury claims and then demanding that an excess insurer [Berkshire] indemnify the judgments or settlements for the same asbestos bodily injury claims" after ACE defended Murco. ROA.786, ¶ 8. ACE's primary policies contained a duty to defend, while Murco's excess policies do not provide a duty to defend. *See, e.g.,* ROA.2900, ¶ D. ACE alleged that Murco improperly sought to require ACE to continue defending Murco "for an infinite amount of time," and ACE filed this case to seek a declaration that pending settlements would exhaust ACE's 1976-81 primary policy limits and terminate its duty to defend. ROA.786, ¶¶ 1-12.

The District Court entered a scheduling order in April 2023, which set a deadline of June 16, 2023 for the parties to amend pleadings. ROA.418.

When Berkshire answered ACE's complaint in June 2023, Berkshire filed crossclaims against Interstate, Canal, and Murco. ROA.887-95. In its crossclaim, Berkshire sought contribution from Interstate and Canal for a portion of the defense and indemnity payments Berkshire had paid for the *Smith* and *Murray* cases. ROA.889-92, ¶¶ 13-20. Berkshire sought contribution from Interstate for amounts Berkshire had paid for the *Galier* judgment. ROA.895, ¶ 41. Berkshire also asserted declaratory relief claims against Interstate and Canal, seeking declarations regarding the trigger of coverage under Interstate's Policy and the application of Interstate's underlying limit. ROA.893 (¶¶ 26, 32), 894 (¶ 35).[2]

**E. Interstate and Canal Moved for Summary Judgment.**

Before the scheduled trial date, the case was reassigned to a different District Judge. ROA.2637. The original trial date was vacated, and the District Court

---

[2] Murco did not assert a crossclaim against Interstate at that time. Instead, six months after the deadline to amend the pleadings, Murco sought leave to add crossclaims for declaratory relief against Interstate and Canal. ROA.1351-57. When Murco sought to add those crossclaims, only two months remained before the discovery cutoff, and five months remained before the scheduled trial date. *Compare* ROA.1320 *and* 1323, *with* ROA.1351-57. The District Court denied Murco's request, noting that the deadline to amend pleadings had long since expired. ROA.1382. Nevertheless, the remaining parties later stipulated to the resolution of the trigger issue as to Murco by consent, under Fed. R. Civ. P. 15(b)(2). ROA.2741, 2743-44. The District Court approved the parties' stipulation. ROA.2748.

directed the parties to mediate and to submit a joint status report after the mediation was concluded. ROA.2691.

After ACE and other insurers settled or were dismissed from the action, the remaining parties were Murco, Berkshire, Interstate, and Canal, and the remaining issues included Berkshire's contribution and declaratory relief claims against Interstate and Canal. ROA.2743. The four remaining parties filed a joint submission asking the District Court to hear summary judgment motions by Interstate and Canal concerning the trigger issue. ROA.2743-45. The joint submission set out the parties' view that "a ruling by the Court on the Trigger Issue would either resolve all claims between Interstate and Canal, on one hand, and Berkshire and Murco on the other hand, or would significantly narrow the issues between these Remaining Parties and likely enable them to settle any remaining issues." ROA.2743.[3]

[3] Inexplicably, Murco now suggests this case did not involve "the substantive applicability" of Interstate's Policy to the underlying claims but raised only "timing questions about whether the disputed asbestos claims triggered" coverage under its policy. ECF No. 50, p. 5. That is incorrect. Interstate raised other coverage requirements under its Policy in the District Court. In fact, before filing the summary judgment motion at issue on this appeal, Interstate had submitted an earlier motion addressing the trigger issue, the application of the underlying limit in Interstate's Policy, and the application of an exclusion in the Policy. ROA.1589-91. The District Court denied that motion without prejudice. ROA.2740.

However, in light of the parties' case management discussions and renewed summary judgment motions on the trigger issue, it was not necessary to reach the other issues raised in the District Court. Those issues are not presented in this appeal.

The District Court set a schedule for Interstate and Canal to file summary judgment motions addressing the trigger issue. ROA.2748. The District Court later directed the parties to propose a realignment of the parties, because the original plaintiffs and various defendants had been dismissed. ROA.3712. As the parties jointly proposed, the District Court realigned the parties with Berkshire as the plaintiff, Interstate and Canal as defendants, and Murco as an intervenor. ROA.3713-18, 3723-24.

The District Court then ruled on Interstate and Canal's renewed motions for summary judgment. ROA.3725-42, 3785-87.

### F. The District Court Granted Summary Judgment.

The District Court granted summary judgment for Interstate, ruling that its policy wording provides that coverage exists for asbestos bodily injury claims only if the claimants were exposed to Murco's asbestos products during Interstate's policy period. ROA.3736, 3741-42, 3785-86. The District Court followed this Court's trigger of coverage decision in *Azrock*, while finding that Interstate's policy wording differs slightly from the policy language in *Azrock*, and "do[es] not require the injury to take place during the policy period – just the exposure." ROA.3736.

In its initial summary judgment order, the District Court concluded that "mere allegations of exposure during the policy periods trigger the duty to indemnify." ROA.3741. Under that standard, the District Court granted summary judgment for

Interstate and Canal as to the *Murray* and *Smith* actions, because the pleadings in those cases alleged that the plaintiffs' exposure ended before Interstate and Canal's policy periods began. ROA.3741-42.

By contrast, the District Court initially denied summary judgment for Interstate as to the *Galier* claim, concluding that "the *Galier* petition, while vague, does allege that the decedent was exposed to Murco's asbestos-containing products into the 'late 1980s.'" ROA.3742.

After the District Court issued the summary judgment ruling, the parties submitted a joint status report concerning issues remaining in the case. ROA.3745-49. In that joint submission, Interstate advised that it planned to submit a Rule 54(b) motion asking the Court to reconsider its ruling that allegations in an underlying lawsuit can trigger a duty to indemnify liability imposed in a judgment. ROA.3746-48. The joint status report explained that the Parties had met and conferred regarding Interstate's planned motion for reconsideration, and stated that Berkshire and Murco did not oppose Interstate's request for reconsideration of the issue whether allegations can trigger a duty to indemnify liability imposed in an underlying judgment, and did not oppose Interstate's request for a ruling that evidence of actual facts is required to establish a duty to indemnify for liability imposed in a judgment. ROA.3743. Canal supported Interstate's contentions on those points. *Id.*

Interstate then moved for reconsideration, contending it is entitled to summary judgment as to the *Galier* claim, because (1) Berkshire's contribution claim regarding the *Galier* case concerned only amounts it paid for the judgment, (2) proof of actual facts is required to establish a duty to indemnify liability imposed by a judgment, and (3) it was determined in the *Galier* case that the plaintiff's exposure to Murco's asbestos products ended before Interstate's policy period. ROA.3756-59, 3762-75. Berkshire and Murco advised the Court that they did not oppose Interstate's request for those rulings. ROA.3747, 3779, 3783.

The District Court granted Interstate's motion for reconsideration and, on reconsideration, granted summary judgment for Interstate on Berkshire's contribution claims for the *Galier* action. ROA.3785-87. In that order, the District Court ruled that Interstate's duty to indemnify for liability imposed on Murco in a judgment or settlement must be determined based on the actual facts established in an underlying lawsuit. ROA.3785-86. Because the facts established in *Galier* showed that the plaintiff was exposed to Murco's asbestos products only in the 1970s, and because Berkshire sought contribution with respect to the judgment in *Galier* (but not defense costs), the District Court granted summary judgment that Interstate "has no duty to pay contribution to Berkshire for amounts Berkshire paid for the judgment in the *Galier* action." ROA.3786.

In the reconsideration order, the District Court repeated its earlier ruling that Interstate's obligation to indemnify Murco for defense costs incurred in an underlying lawsuit is determined based on the plaintiff's allegations in its pleadings, not the facts proved. ROA.3785. The District Court's ruling on reconsideration did not change the summary judgment for Interstate concerning the *Murray* and *Smith* actions. Although Berkshire sought contribution for settlement payments and defense costs incurred in those suits, both the allegations and the facts established in those cases confirmed that the claimants' exposure to Murco's asbestos products had ended before Interstate's policy period. ROA.2932, 2962-64, 2976-78, 2985-87, 3013, 3047, 3153-54.

### G. The District Court Entered Judgment, and Interstate, Canal, and Murco Appealed.

The District Court entered a final judgment, which incorporated the rulings granting summary judgment for Interstate and Canal as to Berkshire's contribution claims. ROA.3804-06. In addition, the judgment set out judicial declarations, including a declaration that Interstate and Canal's duty to indemnify defense costs is determined based on mere allegations pled against Murco. ROA.3805, ¶ 1.

Murco, Canal, and Interstate timely appealed from the final judgment. ROA.3807, 3810, 3812. After these parties filed notices of appeal, they stipulated to realign the parties, designating Murco as the appellant and Interstate and Canal as appellees/cross-appellants. ECF No. 40.

## STANDARD OF REVIEW

Summary judgment is proper in a case in which there is no genuine dispute of material fact. Fed. R. Civ. P. 56(a); *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A defendant who seeks summary judgment on a plaintiff's claim or a crossclaim can demonstrate the absence of a genuine dispute of material fact by either (1) submitting evidence that negates the existence of a material element of the plaintiff's claim or (2) showing there is no evidence to support an essential element of the plaintiff's claim. *Celotex Corp.*, 477 U.S. at 322-23; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). This Court reviews summary judgment orders *de novo*. *Estate of Bradley ex rel. Sample v. Royal Surplus Lines Ins. Co.*, 647 F.3d 524, 528 (5th Cir. 2011).

## INTERSTATE'S ANSWERING BRIEF

### I. SUMMARY OF ARGUMENT

The Court should affirm the District Court's grant of summary judgment for Interstate with respect to the *Smith*, *Murray*, and *Galier* actions.

In insurance parlance, "trigger of coverage" refers to that which must take place during the policy period for a given policy to provide coverage. For coverage to exist under Interstate's policy language, the claimant must have been exposed to Murco's asbestos products during the policy period. ROA.3732-37. The Policy provides coverage for injury resulting from "an occurrence which takes place during

the policy period," and defines "occurrence" to include harmful exposure. ROA. 2897, 2899. Under this policy wording, the District Court correctly found that "[t]he exposure itself must occur during the policy period to trigger coverage." ROA.3734.

Undisputed evidence shows that the claimants in the three underlying asbestos suits against Murco were not exposed to Murco's asbestos products during Interstate's 1985-86 policy period. ROA.2890 (¶ 11), 2892 (¶¶ 16, 18), 2932, 2962-64, 2976-78, 2985-87, 3013, 3047, 3084, 3153-54. Pleadings and evidence from the *Galier*, *Murray*, and *Smith* actions confirm that the claimants' exposure to Murco's products ended by 1983 or earlier. *Id.*

Accordingly, Interstate is entitled to summary judgment that its Policy does not provide coverage, or owe contribution, for amounts that other insurers paid to defend and resolve the *Galier*, *Murray*, and *Smith* actions under policies issued for earlier periods.

Murco tries to avoid this result by asserting that exposure during the policy period is not required. First, Murco argues that coverage under liability policies is "generally" understood to be triggered when bodily injury takes place, citing *Don's Building Supply*, 267 S.W.3d at 30. *See* ECF No. 50, p. 19. But that case involved different issues and addressed different policy language, which expressly applied to "'property damage' … during the policy period." *Don's Building Supply*, 267 S.W.3d at 30. Moreover, *Don's Building Supply* held there is no universal trigger

rule and explained that trigger of coverage must be determined by the policy language in each case. *Id.* In this case, the policy language applies to occurrences during the policy period, and centrally defines "occurrence" to include exposure to harmful conditions. ROA.2897, 2899, 3735-36.

Murco also argues that the definition of "occurrence" contains two "prongs," exposure and resulting injury, and asserts that injury must take place during the policy period to trigger coverage. ECF No. 50, p. 23. Yet, while Murco claims the District Court ignored the "injury prong" in the occurrence definition, Murco disregards the "exposure prong." Murco's misdirection cannot eliminate the Policy's requirement that the exposure must take place during the policy period.

Addressing similar policy language, the Fifth Circuit has held that under Texas law coverage is triggered for asbestos bodily injury claims only under the policies in effect while the claimant was exposed to the insured's asbestos products. *Azrock*, 211 F.3d at 244-45, 250-52. Although Murco claims *Don's Building Supply* supersedes *Azrock* (ECF No. 50, p. 18), the Texas Supreme Court made clear in *Don's Building Supply* that its holding did not address the trigger of coverage for bodily injury claims. *Don's Building Supply*, 267 S.W.3d at 28. Later decisions have continued to hold that the Fifth Circuit's decision in *Azrock* continues to govern the trigger of coverage for asbestos bodily injury claims under Texas law after *Don's*

*Building Supply*. *LGS Technologies*, 2015 WL 5934689, at *3, 8; *Huntsman*, 276 P.3d at 1165, 1172.

Finally, Murco tries to transmogrify the exposure trigger rule into a continuous trigger result, by arguing that asbestos victims are continuously "exposed" to asbestos in their lungs after their exposure to Murco's asbestos products has ended. ECF No. 50, pp. 25-26. In *Azrock*, however, the Fifth Circuit expressly rejected the argument Murco now asserts. *See Azrock*, 211 F.3d at 244-45 & n.18, 248-50. *Azrock* rejected as unreasonable the insured's argument that coverage for bodily injury is continuously triggered by asbestos in a claimant's lungs after the claimant is no longer exposed to an insured's asbestos products. *Id.* at 244, 248-49.

In short, Murco cannot erase the Policy's requirement that for coverage to exist the claimant must be exposed to Murco's asbestos products during Interstate's policy period. The Court should affirm the summary judgment for Interstate.

# II. ARGUMENT

## A. Interstate's Policy Language Requires Exposure to Murco's Asbestos Products During the Policy Period.

### 1. The Policy Covers Occurrences During the Policy Period, and Defines "Occurrence" to Include Exposure to Conditions.

The Texas Supreme Court holds that insurance coverage questions must be decided based on the specific policy language at issue in each case. *Don's Building*

*Supply*, 267 S.W.3d at 30. The Court in *Don's Building Supply* declined to adopt a "universally applicable 'rule'" for trigger of coverage, and noted that trigger determinations "should be driven by the contract language" at issue in each case, which "obviously may vary from policy to policy." *Id.*

The District Court followed that principle in this case and correctly ruled that Interstate's policy language provides coverage for asbestos bodily injury claims only if the claimant was exposed to Murco's asbestos products during the policy period. ROA.3736.

Interstate's insuring agreement states that coverage applies to "personal injury, property damage, or advertising liability *caused by or arising out of an occurrence* which takes place during the policy period." ROA.2897, 3736 (emphasis added). This wording distinguishes between the causal occurrence and the resulting injury caused by that occurrence. ROA.2897.

The Policy defines "occurrence" as the "injurious exposure to conditions, which results in personal injury, property damage or advertising injury or damage neither expected nor intended from the standpoint of the insured…." ROA.2899. That is, "occurrence" is defined as the exposure to conditions, and the definition adds the qualification that resulting injury must be unexpected. ROA.2897, 3734. The Policies' insuring agreement states that coverage applies only to injury due to "an occurrence which takes place during the policy period." ROA.2897, 3734-36.

Under this policy language, coverage applies only if a claimant's exposure to Murco's asbestos products took place during Interstate's policy period. *See* ROA.3736.

The District Court held that Interstate's Policy requires only exposure during the policy period. ROA.3736. Noting a difference between the policy language in this case and the policy addressed in *Azrock*, the District Court concluded that "the Canal and Interstate policies do not require the injury to take place during the policy period – just the exposure." ROA.3736. That is because these policies require that the occurrence must take place during the policy period, and the policies define "occurrence" as the injurious exposure, while "[t]he words "'which causes personal injury' form a relative clause that qualifies 'exposure.'" ROA.3734, 3736. The Court "hasten[ed] to add" that this interpretation "favors coverage" more than requiring both the exposure and resulting injury during the policy period. ROA.3737. Nevertheless, the requirement that the exposure must take place during Interstate's policy period precludes coverage for the *Galier*, *Murray*, and *Smith* claims at issue.[4]

[4] Interstate believes its policy language requires both exposure and resulting personal injury during the policy period to trigger coverage. However, the requirement that exposure must take place during the policy period warrants summary judgment for Interstate, and it is not necessary to address whether personal injury during the policy period is also required.

In short, under Interstate's Policy "occurrence" is defined in part as the causal exposure. ROA.3734-35. And the Policy requires that the occurrence must take place during the policy period. ROA.2897, 3733.

**2. Murco Tries to Circumvent Interstate's Policy Language By Citing Generalizations Based on Different Policies.**

Murco raises several different arguments in seeking to avoid the requirement that exposure to its asbestos products must take place during the policy period. First, Murco acknowledges the rule that insurance coverage questions must be decided based on the specific policy language in each case. ECF No. 50, p. 16 (citing *Don's Building Supply*, 267 S.W.3d at 30). And Murco notes that Interstate's Policy applies to "an occurrence which takes place during the policy period." ECF No. 50, p. 19. Murco then ignores Interstate's surrounding policy language and relies on generalizations, asserting that "[a]n "occurrence is *ordinarily* understood to happen on 'the date of actual injury.'" *Id.* (emphasis added).

For that assertion, Murco cites *Don's Building Supply*, 267 S.W.3d at 30, and two insurance treatises discussed in that case. ECF No. 50, p. 19. But *Don's Building Supply* addressed different policy wording, which provided coverage where "'bodily injury' or 'property damage' occurs during the policy period." *Don's Building Supply*, 267 S.W.3d at 24. And the cited treatise states that "the time of the occurrence … is *generally* not considered to be the time the wrongful act was committed but the time when the complaining party was actually damaged…." *See*

ECF No. 50, p. 19 (quoting 7A John Alan Appleman, Insurance Law and Practice § 4491.01 (Walter F. Berdal ed., 1979) (emphasis added)). Based on such generalization, Murco argues that Interstate's Policy is triggered as long as injury exists during Interstate's policy period, whether or not the claimant's exposure to Murco's asbestos products took place during the policy period. *See* ECF No. 50, pp. 19-25.

But generalities do not control here; Interstate's policy language governs. *See Don's Building Supply*, 267 S.W.3d at 30. Interstate's policy wording requires that the causal occurrence must take place during the policy period. ROA.2897, 3735-36. And, as the District Court found, the term "occurrence" in the Policy is "defined centrally as 'exposure'…." ROA.3734. Accordingly, "[t]he exposure itself must occur during the policy period to trigger coverage." *Id.* Murco cannot write this requirement out of Interstate's Policy by pointing to generalizations based on different language in other policies.

Under Interstate's specific policy wording, coverage applies for asbestos bodily injury claims against Murco only if the claimant was exposed to Murco's asbestos products during the 1985-86 policy period. ROA.3734-36. The Policy does not provide coverage where the exposure to Murco's asbestos products ended before Interstate's policy period began in 1985. ROA.3732-37.

### 3. Murco Seeks to Erase the Exposure Requirement From Interstate's Policy.

In challenging the ruling that Interstate's Policy is triggered by exposure during the policy period, Murco argues that the District Court improperly deleted the term "personal injury" from the definition of "occurrence." ECF No. 50, pp. 23-24. Murco asserts that "occurrence" is defined to include two prongs – (1) exposure and (2) resulting injury – and argues that both prongs must take place to comprise an occurrence. ECF No. 50, p. 23.

But Murco then contradicts itself. After arguing that the occurrence definition states two requirements, Murco claims that an occurrence exists – and coverage is triggered – where injury alone takes place during the policy period, without exposure during the policy period. ECF No. 50, p. 24. Murco thus tries to write the requirement of exposure during the policy period out of the Policy.

Murco's "two prong" argument ignores that Interstate's Policy requires the covered "occurrence" must takes place during the policy period. ROA.2897. If the causal exposure and resulting injury are both required to comprise an "occurrence," as Murco asserts, then the exposure and resulting injury must both happen during Interstate's policy period for the occurrence to take place during the policy period. While Murco argues that the District Court improperly ignored the "injury prong" in the occurrence definition, Murco disregards the "exposure prong."

Under Murco's argument, Interstate's Policy would provide coverage simply for "personal injury, property damage, or advertising liability … which takes place during the policy period." *See* ECF No. 50, p. 23-24. But Interstate's policy language is not susceptible to that interpretation. When the complete policy wording is included in place of the ellipsis in the first sentence of this paragraph, the Policy covers personal injury "*caused by or arising out of an occurrence* which takes place during the policy period." ROA.2897 (emphasis added). Murco's argument would effectively remove these italicized words from the Policy. Yet Murco concedes that the rules of contract interpretation include "the core principle rejecting readings that nullify words in a policy." ECF No. 50, p. 24 (citing *Great Am. Ins. Co. v. Employers Mut. Gas. Co.*, 18 F.4th 486, 490 (5th Cir. 2021) (holding that courts should interpret contracts to avoid rendering contract terms inoperative or meaningless)). Murco cannot erase the exposure requirement from the Policy.

### 4. Texas Law Applies the Exposure Trigger to Asbestos Bodily Injury Claims.

Murco argues that Interstate's policy is triggered by personal injury during the policy period, regardless of when a claimant was exposed to Murco's asbestos products. Even if that were correct, Texas law applies the exposure trigger rule to asbestos bodily injury claims. *Azrock*, 211 F.3d at 244-45, 250-52.

Most cases discussing the trigger issue have addressed policies providing that coverage is triggered when injury or damage takes place during an insurer's policy

period. For example, the policy in *Don's Building Supply* stated that coverage applies if "'bodily injury' or 'property damage' is caused by an 'occurrence' … and [t]he *'bodily injury' or 'property damage' occurs during the policy period*." *Don's Building Supply*, 267 S.W.3d at 24 (emphasis added). Under that wording, in a case addressing property damage claims, the Court held that coverage was triggered by property damage during the policy period. *Id.* at 24-28.

Other cases have addressed bodily injury claims under policy language specifying that coverage is triggered by injury during the policy period. In *Ducre v. Executive Offices of Halter Marine, Inc.*, 752 F.2d 976, 991-92 (5th Cir. 1985) (applying Louisiana law), the Fifth Circuit applied an "occurrence" definition that included "exposure to conditions *which results during the policy period in injury* to persons…." In *Porter v. American Optical Group*, 641 F.2d 1128 (5th Cir. 1981) (applying Louisiana law), *cert. denied* 454 U.S. 1109, 1143 (1981), certain policies at issue defined "occurrence" to include "exposure to conditions which unexpectedly *caused injury … during the policy period*," and other policies defined "bodily injury" to mean injury "which occurs during the policy period." (emphasis added).

In those cases, the Fifth Circuit held that bodily injury takes place – and coverage is triggered – only where the claimant is exposed to the insured's products containing asbestos during the insurer's policy period. *Ducre*, 752 F.2d at 992-94; *Porter*, 641 F.2d at 1145.

*Azrock* addressed different policy language, which was closer to the wording at issue here. The policy in *Azrock* provided insurance for personal injury "caused by an occurrence during the policy period" and defined "occurrence" as "an accident, or a happening or event, or a continuous or repeated exposure to conditions which unexpectedly or unintentionally results in personal injury…." *Azrock,* 211 F.3d at 244. Under that wording, *Azrock* held that "actual 'injury,' not merely the negligent act or omission that causes the injury, must happen during the policy period." *Id.* Thus, *Azrock* held that coverage is triggered when the exposure and resulting injury happen during an insurer's policy period. *Id.*; *see* ROA.3737 (The District Court noted that, under the policy in *Azrock*, "the occurrence *and* injury had to occur during the policy period[.]").

In *Azrock*, the Fifth Circuit considered when bodily injury takes place so as to trigger coverage under Texas law. *Azrock* held that, for asbestos bodily injury claims, "we define 'injury' as the subclinical tissue damage that occurs on inhalation of asbestos fibers." *Azrock*, 211 F.3d at 244. *Azrock* also held that coverage is triggered for asbestos bodily injury claims only under policies in effect while the claimant was exposed to the insured's asbestos products. *Id.* at 244-45, 250-52. The *Azrock* Court remanded the case to the District Court to determine (in addressing the duty to defend) which underlying claims involved allegations of "(a) exposure to Azrock's asbestos-containing products during [the policy period] and (b) bodily

injury caused by that exposure…." *Id.* at 252. Under the exposure trigger of coverage adopted in *Azrock*, policies in effect before the exposure to asbestos began, or after the exposure ended, do not provide coverage. *Id.* at 248-52.

Other courts also apply the exposure trigger to bodily injury claims under Texas law. The Houston Court of Appeals later addressed trigger of coverage for bodily injuries resulting from long-term exposure to the toxic chemical PCE and other hazardous materials released from an insured's facilities. *Pilgrim Enters., Inc. v. Maryland Cas. Co.*, 24 S.W.3d 488, 490-91, 496-98 (Tex. App.—Houston [1st Dist.] 2000, no pet.). The court noted that the Fifth Circuit applied the exposure trigger of coverage to asbestos bodily injury claims in *Azrock*, such that "coverage is triggered in any policy period in which exposure to the cause of harm occurred." *Id.* at 496. Citing *Azrock*, *Pilgrim* held that exposure is the appropriate trigger of coverage for bodily injury resulting from ongoing exposure to harmful materials. *Id.* at 497.

Other courts have also followed *Azrock* in adopting the exposure trigger under Texas law. *See LGS Technologies*, 2015 WL 5934689, at *3, 8; *Huntsman*, 276 P.3d at 1165, 1172.

Thus, where policies provide that coverage is triggered by bodily injury during the policy period, Texas law applies the exposure trigger rule. And that result is compelled here because Interstate's policy language provides that coverage is

triggered by an *occurrence* (defined as exposure to conditions) during the policy period. ROA.2897, 2899, 3735. As the District Court concluded, in this case "we arrive at the same trigger rule as *Azrock*, but with the slight nuances discussed above." ROA.3737.

Interstate's policy language and this Court's *Azrock* decision preclude Murco's argument. Coverage for asbestos bodily injury claims against Murco is triggered only if a claimant is exposed to Murco's asbestos products during Interstate's policy period. ROA.3735-36; *Azrock*, 211 F.3d at 250-52.

### 5. *Azrock* Continues to Govern Insurance Coverage Claims Arising from Asbestos Bodily Injury Suits.

Murco argues that *Don's Building Supply* "undercuts" the exposure trigger adopted in *Azrock*. ECF No. 50, p. 18. That is incorrect. The Texas Supreme Court made clear in *Don's Building Supply* that its holding did not address the trigger of coverage for bodily injury claims. *Don's Building Supply*, 267 S.W.3d at 28. Moreover, *Don's Building Supply* addressed different policy language. *Id.*

After *Don's Building Supply* was decided, later decisions have continued to hold that the Fifth Circuit's decision in *Azrock* governs the trigger of coverage for asbestos bodily injury claims under Texas law. *LGS Technologies*, 2015 WL 5934689, at *3, 8; *Huntsman*, 276 P.3d at 1165, 1172.

In *Azrock*, the Court addressed asbestos bodily injury claims, and also discussed property damage claims involving asbestos. *Azrock*, 211 F.3d at 244.

While *Azrock* adopted the exposure trigger for bodily injury claims, the court applied a different trigger rule for property damage, ruling that such coverage applies when property damage becomes apparent. *Id.* at 248.

Addressing different policy language, the Texas Supreme Court reached a different conclusion on the trigger of coverage for property damage claims. *Don's Building Supply*, 267 S.W.3d at 22-24. The Texas Supreme Court addressed the issue in *Don's Building Supply* after the Fifth Circuit certified the question of when property damage takes place for purposes of triggering coverage. *Id.* The Fifth Circuit did not certify any questions regarding bodily injury claims to the Texas Supreme Court, and the Supreme Court did not address the trigger of coverage for bodily injury claims. *See id.* at 22-23.

The policy in *Don's Building Supply* provided coverage where "'property damage' occurs during the policy period." *Id.* Emphasizing that its holding was based on that specific policy language, the Supreme Court held that coverage for property damage claims would be triggered when property damage in fact takes place. *Id.* at 29-30. In that ruling, the Court stated: "Again, the policy provides coverage if the 'property damage' occurs during the policy period." *Id.*

Moreover, in *Don's Building Supply*, the Court explained that its ruling did not address the Fifth Circuit's holding in *Azrock* that the exposure trigger applies to bodily injury claims. *Don's Building Supply*, 267 S.W.3d at 28 ("[W]e do not

explore today … when coverage is triggered on bodily injury claims….”). Rather, the Texas Supreme Court noted the Fifth Circuit's conclusion in *Azrock* that the “rules for coverage of personal injury and property damage claims are different.” *Id.* at 28 n.32. And the Supreme Court stated that “[w]e express no opinion on whether the coverage rule for determining if a claim occurred during the term of the … policy is the same for bodily injury or property damage claims.” *Id.* The Court further clarified that it expressed “no opinion as to when a claim for ‘bodily injury,’ ‘personal injury,’ or ‘advertising injury’ occurs under the policy, or whether the rules for determining coverage for these claims are different from the rule we adopt today for property damage claims under the policy.” *Id.* at 31 n.43.

Later Texas federal decisions, decided after *Don's Building Supply*, held that *Azrock* governs the application of the exposure trigger for asbestos bodily injury claims under Texas law. *See LGS Technologies, Inc. v. United States Fire Ins. Co*., No. 2:07-CV-399-DF, 2010 WL 5646054, at *7-9 (E.D. Tex, Sept. 2, 2010) (noting that under “occurrence” policies “the injury-in-fact is the exposure to asbestos” in the insured's products), *vacated and remanded on other grounds*, *Longhorn Gasket & Supply Co. v. United States Fire Ins. Co*., 698 Fed. App'x 774 (5th Cir. 2017); *LGS Technologies*, 2015 WL 5934689, at *3, 8 (holding on remand that “occurrence” policies were triggered only during the time that claimants were exposed to the insured's gaskets containing asbestos).

A Utah appellate decision, applying Texas law, also followed *Azrock* and held that Texas law applies the exposure trigger with respect to asbestos bodily injury claims. *Huntsman*, 276 P.3d at 1165, 1172. Citing *Azrock*, *Huntsman* explained that under the exposure trigger "the coverage provided by a CGL [liability] insurance policy is triggered only during policy periods in which the exposure to asbestos occurred." *Id.* at 1162. *Huntsman* held that Texas law applied and that "Texas law requires application of the exposure trigger theory in this case." *Id.* at 1165.

*Huntsman* also noted that "to the extent that the *Azrock* and *Pilgrim* decisions apply the exposure trigger theory to bodily injury cases, those decisions likely remain unaffected by *Don's Building Supply*. Because the *Don's Building Supply* decision rejected the exposure trigger theory only in cases involving property damage claims, it has not overruled precedent applying the exposure trigger theory to progressive disease bodily injury cases under Texas law." *Huntsman*, 276 P.3d at 1173. *Huntsman* added that, due to the distinction between property damage cases and progressive disease cases, "[t]here is good reason for the Texas Supreme Court to emphasize that its decision in *Don's Building Supply* did not reach the issue of which trigger theory it would apply in bodily injury cases." *Id.*

The exposure trigger rule adopted in *Azrock* governs trigger of coverage for asbestos bodily injury claims under Texas law.

### 6. Texas Law Rejects the Continuous Trigger Approach Raised by Murco.

Without saying as much, Murco invites this Court to apply a "continuous trigger" approach to asbestos bodily injury claims. ECF No. 50, pp. 23-26. Murco argues that its policies are subject to an "injury-in-fact" trigger with respect to bodily injury claims, and asserts that all policies should be triggered throughout the period between the claimants' exposure to Murco's asbestos products until their subsequent diagnosis or death. *Id.*

However, Interstate's Policy requires that coverage is triggered only if a claimant was exposed to Murco's asbestos products during the policy period, and the policy language is not susceptible to a continuous trigger result.

Moreover, the Fifth Circuit expressly rejected the continuous trigger approach under Texas law. *Azrock*, 211 F.3d at 248-49. *Azrock* found that the continuous trigger approach is "an unreasonable construction of the policy terms" and concluded that "[n]o Texas court has ever adopted or implicitly endorsed the continuous trigger theory." *Id.* Similarly, in applying Texas law to asbestos bodily injury claims, *Huntsman* explained that "'no Texas court has specifically adopted

the continuous trigger theory ... and only the exposure theory has been adopted with respect to ... bodily injury claims.'" *Huntsman*, 276 P.3d at 1173-74.[5]

Murco also tries to conflate the exposure trigger rule with the continuous trigger theory by arguing that asbestos victims are "exposed" to asbestos in their lungs after their exposure to Murco's asbestos products has ended. ECF No. 50, pp. 25-26. Murco asserts that a person "is continuously 'exposed' to the [asbestos] fibers that remain lodged in their body…." *Id.* at 27. By suggesting that coverage can be triggered by so-called "exposure in residence" to asbestos fibers in a claimant's lungs, Murco seeks to transform the exposure trigger rule into a continuous trigger result.

In *Azrock*, however, the Fifth Circuit rejected the exposure in residence argument that Murco now asserts. *See Azrock*, 211 F.3d at 244-45 & n.18, 248-50.

[5] In the District Court, Berkshire cited a Second Circuit case that found policies could be triggered from the time of exposure until "the date of the claim or death." ROA.3471-72 (citing *Stonewall Ins. Co. v. Asbestos Claims Mgmt. Corp.*, 73 F.3d 1178 (2d Cir. 1995)). In *Stonewall*, the Second Circuit cited *Keene Corp. v. Ins. Co. of N. Am.*, 667 F.2d 1034 (D.C. Cir. 1981), in speculating that, under New York and Texas law, courts would adopt the continuous trigger approach in claims involving a "progressive bodily disease." *Stonewall*, 73 F.3d at 1196-97. However, five years after the Second Circuit issued *Stonewall*, the Fifth Circuit rejected that continuous trigger approach as unreasonable. *Azrock*, 211 F.3d at 248-49. No Texas court has followed or cited the *Stonewall* decision on this issue. Although *Azrock* did not discuss the *Stonewall* opinion, the Fifth Circuit expressly rejected the two District Court cases the Second Circuit had cited in *Stonewall* for its incorrect *Erie* guess on Texas law. *See Azrock*, 211 F.3d at 249.

*Azrock* noted that the continuous trigger approach is sometimes referred to as the "triple trigger" theory, because that approach triggers policies in effect during "(1) inhalation exposure, (2) 'exposure in residence,' and (3) manifestation" of disease. *Id.* at 245 & n.18 (citing *Keene*, 667 F.2d at 1047). The Fifth Circuit explained in *Azrock* that "inhalation exposure" refers to the claimant's exposure to an insured's products and the contemporaneous inhalation of asbestos fibers from those products. *Azrock*, 211 F.3d at 244-45, 250. By contrast, the Fifth Circuit observed that under the continuous trigger theory, "'exposure in residence' is the period between the initial injurious exposure and the time when the injury manifests itself…." *Id.* at 245.

In adopting the exposure trigger rule, the Fifth Circuit specifically held that coverage is triggered only during the period of a claimant's exposure to the insured's products and inhalation of asbestos fibers from such products. *Id.* at 244-45, 250. In remanding the case for a determination of which policies were triggered, *Azrock* instructed the District Court to consider when each claimant was exposed to inhalation of asbestos fibers from the insured's asbestos products, based on dates of employment involving work with the insured's products. *Id.* at 244. *Azrock* precludes Murco's argument that the exposure trigger includes policy periods while

asbestos fibers remain in a claimant's lungs, after the claimants' exposure to Murco's asbestos products had ended. *Azrock*, 211 F.3d at 244-45, 248-50.[6]

Finally, in arguing that coverage is triggered under policies in effect after the claimants' exposure to Murco's asbestos products ended, Murco argues that where a policy's text may be subject to two reasonable interpretations, the insured's interpretation prevails. ECF No. 50, pp. 16-17. The Fifth Circuit noted the same rule in *Azrock*, 211 F.3d at 243-44. However, the Fifth Circuit also held that courts are "not required blindly to adopt the interpretation proffered by the insured, especially if we perceive such an interpretation to be an unreasonable construction of the policy terms or to be unsupported in law." *Id.* at 248. *Azrock* rejected as unreasonable the insured's argument that coverage for bodily injury cases is continuously triggered by so-called "exposure in residence" after the claimant is no

[6] In arguing that "exposure to asbestos continues internally" within a claimant's lungs after the exposure to Murco's products ended, Murco cited deposition testimony from Interstate's corporate representative. *See, e.g.*, ECF No. 50, p. 7. However, Murco ignored that Interstate's witness explained Interstate's understanding that the Policy requires that the occurrence (defined as exposure to conditions) must take place during the policy period, that injury must take place during the policy period, and that under Texas law "the exposure trigger means when the person is exposed to the harmful product, in this case to the asbestos-containing product. That's my understanding of when the injury occurs." ROA.3428 (107:1-9), 3432 (123:7-12), 3440 (155:10-24, 156:1-7), 3441 (157:13-158:25), 3442 (162:14-17).

In any event, the Fifth Circuit's holding in *Azrock* defeats Murco's argument that the exposure trigger includes policy periods in which asbestos fibers remain after the exposure to Murco's products ended. *Azrock*, 211 F.3d at 243, 248-49.

longer exposed to an insured's asbestos products. *Id.* at 244, 248-49. Consistent with *Azrock*, in this case the District Court correctly found that Murco's exposure in residence argument seeks to "stretch the words of the policy past the point of normal speech." ROA.3734.

In short, Interstate's policy language and Texas law provide that, to trigger coverage for asbestos bodily injury, the claimants must have been exposed to Murco's asbestos products during Interstate's policy period. ROA.2897, 2899; *Azrock*, 211 F.3d at 244-45, 248-50.

**B. Uncontradicted Evidence Shows that Each Claimant's Exposure to Murco's Asbestos Products Ended Before Interstate's Policy Period.**

The District Court properly granted summary judgment for Interstate regarding Berkshire's contribution claims arising from the *Murray*, *Smith*, and *Galier* actions. Uncontradicted evidence shows that each claimant's exposure to Murco's asbestos products ended before Interstate's policy period began in June 1985. ROA.2890 (¶ 11), 2892 (¶¶ 16, 18), 2932, 2962-64, 2976-78, 2985-86, 3013, 3047, 3084, 3153-54.

Texas law requires that a party seeking to recover under an insurance policy bears the burden of proving that the insurer's policy covers the loss at issue. *Gilbert Texas Const., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 124 (Tex. 2010). Specifically, where an insurer seeks contribution from another insurer for amounts paid to settle or defend a claim, the insurer seeking recovery bears the

burden of proving that the defendant insurer's policy was obligated to pay the claim. *See Lexington Ins. Co. v. ACE Am. Ins. Co.*, No. H-12-0531, 2014 WL 3406512, at *10 (S.D. Tex. July 7, 2014) (citing *Mid-Continent Ins. Co. v. Liberty Mut. Ins. Co.*, 236 S.W.3d 765, 772 (Tex. 2007).

Interstate met its initial burden of proof on summary judgment by presenting evidence showing that the *Smith*, *Murray*, and *Galier* plaintiffs' exposure to Murco's asbestos products ended before Interstate's policy period began. *See Celotex Corp*., 477 U.S. at 322-23.

Specifically, with its summary judgment motion, Interstate presented the petition from the *Murray* case, which alleged that Mr. Murray's exposure to Murco's asbestos products ended by 1979. ROA.2962-63. Interstate also presented evidence from that case, which confirmed the claimant's exposure to Murco's asbestos products ended by 1979. ROA.2976-78.

Interstate's motion presented the petition filed in the *Smith* action, which alleged that Mr. Smith's exposure to asbestos ended by 1983. ROA.2980, 2985-86. In addition, evidence from that case showed that Mr. Smith's actual exposure to Murco's asbestos products ended in the late 1970s. ROA.3047, 3153-54.

Thus, the plaintiffs' allegations and the evidence in *Smith* and *Murray* showed that the plaintiffs' exposure to Murco's asbestos products ended before Interstate's policy period began in 1985. ROA.2962-63, 2976-78, 2985-86, 3047, 3153-54.

Interstate is entitled to summary judgment as to the *Smith* and *Murray* actions even under the District Court's ruling that indemnity for defense costs depends on the plaintiffs' allegations. There were no allegations or evidence in those cases that the plaintiffs were exposed to Murco's asbestos products during Interstate's policy period. *Id.*

As set out in the District Court's order on reconsideration, Berkshire did not seek defense costs from Interstate for the *Galier* action. ROA.3786. Berkshire sought to recover a portion of the amount it had paid for the *Galier* judgment. *Id.* With its summary judgment motion, Interstate submitted Mr. Galier's contentions at trial, and the Court's findings, that Mr. Galier was exposed to Murco's asbestos products "in the 1970s." ROA.2932, 3013, 3084. The moving papers showed there was no evidence that Mr. Galier was exposed to Murco's asbestos products during Interstate's policy period. *Id.*

Accordingly, the burden on summary judgment shifted to the non-moving parties. *Celotex Corp.*, 477 U.S. at 322-23. However, Berkshire and Murco provided no evidence that any claimant was exposed to Murco's asbestos products during Interstate's 1985-86 policy period.

Instead, Berkshire argued that Mr. Murray "may" have been exposed to Murco's asbestos products in the 1980s. ROA.3475. But Berkshire provided no evidence of exposure during Interstate's policy period, and Berkshire's designee

admitted in deposition that it would require speculation to conclude that exposure took place during Interstate's policy period. ROA.3044 (90:8-91:1). Such unsupported speculation about what "may" have happened is inadequate to prevent summary judgment. "[T]he nonmoving party must come forward with 'specific facts showing that there is *a genuine issue for trial*.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis in original) (quoting Fed. R. Civ. P. 56(e)).

The undisputed evidence established that summary judgment for Interstate was proper.

### C. Murco's Motion for Leave to File a Crossclaim against Interstate was Untimely, and its Challenge to the Order Denying Leave is Moot.

Finally, Murco argues that the District Court erred by denying Murco's untimely motion for leave to allege declaratory relief claims against Interstate. ECF No. 50, pp. 2, 29-32. Murco's argument is moot, however. The parties agreed to try the issue by consent, and Murco was not aggrieved by the order denying leave to amend.

In its motion requesting leave to plead crossclaims against Interstate, Murco observed that Berkshire had raised contribution claims against Interstate, and Murco stated that Berkshire sought rulings concerning (1) the trigger of coverage under Interstate's Policy and (2) the application of the underlying limit in Interstate's

Policy. ROA.1355. Murco requested leave to plead declaratory relief claims regarding those two issues Berkshire had raised. ROA.1356, 1359-67.

The District Court denied Murco's motion, noting that the deadline for adding claims had passed six months earlier. ROA.1382-83.[7] In any event, later developments in the case show that Murco was not aggrieved by the order declining leave to amend.

The scheduled trial date was later vacated after the case was reassigned to a different District Judge. ROA.2637, 2691. As part of case management discussions after the case was reassigned, the parties submitted a joint status report in July 2024. ROA.2743-45. In that report, the parties jointly asked the District Court to hear and decide Canal and Interstate's planned summary judgment motions regarding the trigger issue. *Id.* The parties stated that a ruling on those motions "would either resolve all claims between Interstate and Canal, on one hand, and Berkshire and Murco on the other hand, or would significantly narrow the issues between these Remaining Parties and likely enable them to settle any remaining issues." ROA.2743.

---

[7] The District Court acted within its discretion in denying leave to add new claims. Murco waited to file its motion six months after the deadline to amend pleadings had passed, and Murco misstated a scheduling order in seeking to explain its delay. ROA.1382-83. Further, Interstate would have been prejudiced by an amendment at that time. When the District Court denied Murco's motion for leave to amend, only two months remained until the discovery cutoff, and five months remained before the scheduled trial date. *Compare* ROA.1320 *and* 1323, *with* ROA.1351-57.

In that joint statement, the parties agreed with Murco's request to file a brief on the trigger issue in response to the summary judgment motions. The parties stipulated to the resolution of those issues as to Murco by consent, as contemplated by Federal Rule 15(b)(2), although Murco did not have a crossclaim against Interstate on file. ROA.2743-44.

Subsequently, after the original plaintiffs in the case had settled, and Berkshire and Murco dismissed their claims against each other, the parties filed a joint motion to re-align the parties. ROA.3713. The joint motion asked the District Court to realign the parties with Berkshire as the plaintiff on its claims against defendants Canal and Interstate, and with Murco as "an Intervenor with respect to Berkshire's claims against Canal and Interstate." ROA.3715, ¶ 14. The parties, including Murco, agreed it was appropriate to realign Murco as an intervenor for purposes of addressing the legal issues raised in Canal and Interstate's summary judgment motions. ROA.3716-17, ¶¶ 15-19. The District Court granted that motion. ROA.3720-21.

Accordingly, both Murco's motion for leave to amend and its challenge to the denial of that motion are moot. Murco has already been added as a party to the case (as an intervenor) for purposes of the issues raised in this appeal, and the parties stipulated to the resolution of these issues by consent under Fed. R. Civ. P. 15(b)(2). ROA.2743-44, 3715, 3720-21.

This case also involved other issues that were not presented in Canal and Interstate's summary judgment motions at issue in this appeal. However, the parties stipulated that they would dismiss (without prejudice) any other claims that are not resolved by those motions. ROA.2745. And it is not necessary to address those other issues in this case, because they are raised in a separate action in the District Court. *See* ECF No. 50, p. 9 n.2.

In short, there is no basis for Murco's challenge to the order denying leave to amend, and the issue is moot. Murco was not aggrieved by that order.

## III. CONCLUSION AND PRAYER

Interstate's policy provides coverage only if the claimant was exposed to Murco's asbestos products during the 1985-86 policy period. The record shows that Smith, Murray, and Galier's exposure to Murco's asbestos products ended before the policy period began. Interstate respectfully asks the Court to affirm the District Court's grant of summary judgment for Interstate and to deny Murco's appeal. Interstate also requests such further relief to which it may be justly entitled.

**<u>INTERSTATE'S CROSS-APPEAL OPENING BRIEF</u>**

## I. SUMMARY OF ARGUMENT

The Court should reverse the District Court's judicial declaration that Interstate can owe a duty to indemnify for defense costs based on allegations pled in an underlying lawsuit, and should direct the District Court to modify the judgment to state that a duty to indemnify defense costs under Interstate's Policy must be established by actual facts proving coverage. *See* ROA.3805, ¶ 1.

The Policy expressly provides that Interstate does not have a duty to defend. ROA.2900. Rather, the Policy provides that the duty to indemnify includes payment of defense expenses incurred for covered occurrences. ROA.2897, 2899.

Under Texas law, while the duty to defend arises based on a plaintiff's allegations against the insured, the duty to indemnify must be triggered by the actual facts establishing liability in the underlying suit. *Colony Ins. Co. v. Peachtree Const., Ltd.*, 647 F.3d 248, 253 (5th Cir. 2011). Where an excess policy does not provide a duty to defend, but provides indemnity for defense costs incurred due to covered claims, the question whether the insurer owes a duty to indemnify for the insured's defense costs must be determined based on facts established by the evidence in the underlying case. *LGS Technologies*, 2015 WL 5934689, at *4 n.24.

In this case, the District Court found that the question whether Interstate has a duty to indemnify Murco's defense expenses is determined by the allegations pled

against Murco. ROA.3785. Interstate respectfully submits that this ruling is incorrect and should be reversed. The District Court's ruling did not address key policy language, and it is based on a misreading of *LGS Technologies*. This Court should direct the District Court to modify the judgment to provide that Interstate's duty to indemnify defense costs must be shown by established facts, not allegations.

Murco suggests that Interstate lacks "valid grounds to cross-appeal." ECF No. 50, p. 13 n.4. However, a prevailing party has grounds to appeal a favorable judgment where the judgment contains prejudicial language adverse to the prevailing party or where collateral estoppel may harm that party in future proceedings. *U.S. v. Fletcher, ex rel. Fletcher*, 805 F.3d 596, 602 (5th Cir. 2015). Those circumstances exist here. The District Court's adverse judicial declaration regarding the standard governing Interstate's duty to indemnify defense costs, set out in the judgment, would harm Interstate in future proceedings. *See* ROA.3805, ¶ 1. Interstate thus has grounds to cross-appeal on that issue.

## II. ARGUMENT

### A. The Duty to Indemnify Requires Actual Coverage Based on Established Facts, Not Potential Coverage Based on Allegations.

#### 1. Interstate's Policy Does Not Provide a Duty to Defend, but Provides Payment of Defense Costs Incurred for Covered Claims.

Interstate's Policy expressly provides that Interstate does not have a duty to defend. The Policy states: "The Company, *although without obligation to do so*, shall have the right and be given the opportunity to associate with the insured or its

underlying insurers, or both, in the defense and control of any claim, suit, or proceeding which involves or appears reasonably likely to involve the company…." ROA.2900, ¶ D (emphasis added). While Interstate has the *option* to defend claims or suits, it does not have an *obligation* to defend. Where a policy provides that the insurer does not have a duty to defend the insured, no duty to defend can be imposed. *McCracken v. U.S. Fire Ins. Co.*, 802 F. Supp. 30, 36 (W.D. Tex. 1992).

Instead, Interstate's Policy provides that the duty to indemnify includes payment of defense expenses incurred for covered occurrences. The Policy's insuring agreement provides for payment of "damages and expenses" included within the term "ultimate net loss" for claims involving personal injury "caused by or arising out of an occurrence which takes place during the policy period…." ROA.2897 (Section I. Coverage).

And the Policy defines "Ultimate net loss" as follows:

> "Ultimate net loss means the total of the following sums arising *with respect to each occurrence to which this policy applies*:
>
> (a) all sums which the insured or any organization as his insurer, or both, become legally obligated to pay as damages, whether by reason of adjudication or settlement, because of personal injury, property damage or advertising liability; and
>
> (b) all expenses incurred by the insured or any organization as his insurer, or both, in the investigation, negotiation, settlement and defense of any claim or suit seeking such damages….

ROA.2899 (emphasis added).

As this definition states, the Policy provides for payment of amounts listed under paragraphs (a) and (b) of the "ultimate net loss" definition only with respect to costs arising from occurrences "to which this policy applies." The Policy applies only to occurrences that are covered under the policy wording. Thus, subject to the Policy's other coverage requirements, Interstate's excess Policy provides for payment of defense costs as part of the duty to indemnify "ultimate net loss" for claims that are covered by the Policy.

This policy wording does not create a duty to defend under Texas law. Instead, the duty to indemnify "ultimate net loss" may include paying defense costs for covered claims. *LGS Technologies*, 2015 WL 5934689, at *4 n.24. The Court in *LGS Technologies* explained the difference between a duty to defend and a duty to pay indemnity for defense costs incurred in a covered claim. The Court stated that a duty to defend may arise based on allegations in the underlying pleadings, "whereas the indemnification of defense costs requires the insured to incur the defense costs and then claim reimbursement from the carrier *based upon the facts established*." *Id.* (emphasis added). *LGS Technologies* added that "[t]he duty to indemnify is triggered by the actual facts that establish liability in the underlying lawsuit." *Id.* (quoting *Azrock*, 211 F.3d at 243).

The distinction recognized in *LGS Technologies* – between the duty to defend potentially-covered claims and a duty to indemnify defense costs for actually-covered claims – follows from a long line of Texas cases recognizing the distinct requirements necessary to establish a duty to defend and a duty to indemnify. *See Colony Ins. Co.*, 647 F.3d at 253 ("[U]nlike the duty to defend, which turns on the pleadings, the duty to indemnify is triggered by the actual facts establishing liability in the underlying suit, and whether any damages caused by the insured and later proven at trial are covered by the terms of the policy."); *Azrock*, 211 F.3d at 252 ("Although the duty to defend is based on the allegations in the complaints, the duty to indemnify must be determined on the actual facts as established at trial."); *Don's Building Supply*, 267 S.W.3d at 31 & n.41 (the duty to defend "turns on the policy's terms and the plaintiffs allegations"; by contrast, the duty to indemnify "is not triggered by allegations but rather by proof at trial"); *Trinity Universal Ins. Co. v. Cowan*, 945 S.W.2d 819, 821 (Tex. 1997) ("The duty to indemnify is triggered by the actual facts establishing liability in the underlying suit.").

**2. In Ruling that the Duty to Indemnify Defense Costs Arises from Allegations under the Eight-Corners Rule, the District Court Did Not Address Key Policy Wording.**

In its initial summary judgment order, the District Court concluded that Interstate's duty to indemnify for judgments, settlement payments, and defense costs all depend on the allegations pled against Murco in underlying lawsuits. ROA.3740.

On reconsideration, the District Court agreed with Interstate that the duty to indemnify for judgments and settlement payments must be based on established facts, not allegations. ROA.3785-86.

However, on reconsideration the District Court ruled that Interstate's duty to indemnify defense costs under the Policy is based on allegations against Murco, under the "'eight-corners rule,' which refers to the four corners of the policy plus the four corners of the underlying pleadings." ROA.3739. Based on that ruling, the District Court included a judicial declaration in the judgment, stating that Interstate's duty to indemnify for defense fees and costs in lawsuits against Murco is triggered based on underlying plaintiffs' allegations against Murco. ROA.3805, ¶ 1.

Interstate respectfully submits that the District Court's legal ruling on the duty to indemnify defense costs is erroneous and should be reversed. In concluding that the duty to indemnify defense expenses is determined by a plaintiff's allegations, the District Court did not address the controlling language in Interstate's Policy.

The District Court's ruling appears to have been based on paragraph (b) of Interstate's ultimate net loss clause. (*See* the definition of "ultimate net loss" at ROA.2899.) The summary judgment order described paragraph (b) as referring to defense of "claims *seeking* damages for covered personal injuries." ROA.3738-39 (emphasis in original). The order concluded that the reference to claims seeking damages in paragraph (b) of the ultimate net loss clause means that a duty to

indemnify for defense costs exists if a plaintiff alleges facts that would bring a claim within coverage. *See id.*; ROA.3786 (order on reconsideration).

But that ruling did not consider the surrounding policy language. The Policy's insuring agreement provides for payment of "damages and expenses" included within the term "ultimate net loss" for claims involving personal injury "caused by or arising out of an occurrence which takes place during the policy period…" ROA.2897. And the first sentence of the ultimate net loss definition states that covered "[u]ltimate net loss means the total of the following sums arising *with respect to each occurrence to which this policy applies*…." ROA.2899 (emphasis added).

The insuring agreement, and the first sentence in the definition of "ultimate net loss," provide that the duty to indemnify for ultimate net loss applies only to amounts incurred due to covered occurrences. ROA.2897, 2899. Thus, paragraph (b) of the "ultimate net loss" definition encompasses costs of defending against suits that arise out of occurrences that are covered by the Policy. Under this wording, the Policy provides a duty to indemnify for defense costs incurred due to occurrences that are *actually* covered – not *potentially* covered.

The District Court read paragraph (b) of the "ultimate net loss" definition in isolation, without addressing the Policy's insuring agreement and the opening clause of the "ultimate net loss" definition. But the rules of contract interpretation require

that all the terms of a contract are read together, and require that each term and phrase in a contract is considered and given meaning. *Great Am. Ins. Co.*, 18 F.4th at 490. The ruling that Interstate's duty to indemnify defense costs can arise from mere allegations, under the eight corners rule, is contrary to the policy wording and conflicts with the rules of contract interpretation. That ruling would effectively impose a duty to defend on Interstate, although the Policy expressly provides that Interstate does not have a duty to defend. ROA.2900.

### 3. In Ruling that the Duty to Indemnify Defense Costs Arises from Allegations under the Eight-Corners Rule, the District Court Misread the *LGS Technologies* Decision.

Interstate respectfully submits that the District Court's ruling was also based on a misreading of the decision in *LGS Technologies*, 2015 WL 5934689.

The excess policy in that case provided a duty to defend in some circumstances, and a duty to pay indemnity for defense costs in other circumstances. *Id.* at *12-13. The Court in *LGS Technologies* found that the insurer did not have a duty to defend the underlying case against the insured, and addressed whether the insurer had a duty to pay indemnity for defense costs. *Id.* at *4 n.24. The *LGS Technologies* decision explained that the duty to defend is determined by allegations pled against the insured, while the duty to indemnify for defense costs "is triggered by the actual facts that establish liability in the underlying lawsuit." *Id.*

In this case, however, the District Court ruled that *LGS Technologies* supports the conclusion that the duty to indemnify defense costs is triggered by allegations rather than established facts. ROA.3740. The District Court concluded that although the decision in *LGS Technologies* referred to "facts actually established" in finding a duty to indemnify defense costs, "the 'facts' it pointed to were actually allegations in the underlying lawsuits." *Id.*

But that conclusion is incorrect. The ruling in *LGS Technologies* concerning the duty to indemnify was based on facts established by extensive evidence presented in an earlier proceeding in that coverage case, not by allegations pled in the underlying suits. *See LGS Technologies*, 2015 WL 5934689, at *3-4, 6, 9, 12-13 & nn.24-25. *LGS Technologies* held that a claim for indemnity coverage for defense costs requires proof of coverage based on actual facts. *Id.* at *12.

The *LGS Technologies* court detailed the case background. *Id.* at *3-6. The Court explained that on a prior summary judgment motion, an insurer (Trinity) contended it had paid approximately $2.58 million for multiple claims and argued that its policy limits were exhausted, but the Court found "Trinity had not tied claims to any specific occurrence or policy so as to show that any primary policy was exhausted." *Id.* at *3. The Court added that the insured, LGS, "had provided payment histories but had not correlated payments with occurrences." *Id.*

In that earlier proceeding, the *LGS Technologies* Court suggested that "in order to demonstrate exhaustion, LGS and/or Trinity must group claimants into occurrences by, for example, establishing which claimants were exposed to the [insured's asbestos-containing] gaskets at the same time and location, and then which policy or policies were triggered by such occurrence(s)." *Id.* The Court "gave LGS and Trinity a roadmap" to prove coverage for the underlying claims, and thus show exhaustion of primary policy limits, based on evidence establishing which claimants were actually exposed to asbestos in a given year and proving which claim payments were made for covered occurrences during each policy year at issue. *Id.* at *6.

The *LGS Technologies* opinion then discussed that, in response to the Court's earlier suggestion, the insurer Trinity had submitted evidence of actual facts showing which claimants were exposed to asbestos during each policy period. The Court stated: "Trinity attaches to its motion five spreadsheets summarizing voluminous documents to show settlement payments to claimants *and those claimants' work and exposure histories*, along with an affidavit from LGS' longtime asbestos defense counsel Marcus Carroll describing and authenticating the summaries." *Id.* at *4 (emphasis added). The *LGS Technologies* Court found that "Trinity's spreadsheets" provided summaries of voluminous business records authenticated by counsel, which were "offered as evidence of a material fact (when and where claimants

worked and were therefore exposed to asbestos and how much they received in settlement payments)." *Id.* at *4 n.25.

Thus, in considering the "facts actually established," the *LGS Technologies* Court referred to facts shown by voluminous evidence of the claimants' actual work histories and exposure histories that Trinity had compiled and summarized in the spreadsheets discussed in the opinion. *Id.* at *3-4, 6, 9, 12-13 & nn.24-25. *LGS Technologies* found that the insurer Trinity, in asserting a claim for contribution, had provided detailed evidence of facts showing the claimants' actual work histories and exposure histories. *Id.* at *6. In short, *LGS Technologies* ruled that an excess insurer's duty to indemnify for defense costs incurred in underlying claims must be shown based on evidence of actual facts. *Id.* at *4, 6, 12.

That *LGS Technologies* based its indemnity ruling on evidence of actual facts, rather than allegations, is further demonstrated by the Court's holding that the plaintiffs' vague allegations in the underlying suits would not have sufficed to create a duty to defend under the eight-corners rule. *See id.* at *11-12. Instead, the Court explained that it had evaluated the excess insurers' duty to indemnify defense costs based on facts established by the evidence that had previously been submitted. *Id.* at *12-13.

Thus, the *LGS Technologies* opinion addressed whether the excess insurer owed indemnity for defense costs "based on the facts established" in that case. In

this case, the District Court misapplied the *LGS Technologies* decision and incorrectly concluded that – where an excess insurer does not have a duty to defend – the insurer's duty to indemnify defense costs can be triggered by the allegations pled against the insured rather than the facts established. *See* ROA.3740.

The District Court's ruling in this case conflicts with established Texas law holding that the duty to indemnify must be shown based on actual facts proved by the evidence, not by the allegations pled against the insured.

**B. Interstate Cross-Appeals from a Judicial Declaration Set Out in the Judgment.**

Murco incorrectly suggests in a footnote that Interstate lacks "valid grounds to cross-appeal" the District Court's ruling on the standard controlling the duty to indemnify defense costs. ECF No. 50, p. 13 n.4. Murco ignores that Interstate's cross-appeal addresses a judicial declaration set out in the final judgment. *See* ROA.3805, ¶ 1.

The final judgment in this case is not simply a "take-nothing judgment." The judgment includes an adverse judicial declaration regarding the legal standard for determining when a duty to indemnify defense costs arises under Interstate's Policy. ROA.3805, ¶ 1. Although that ruling did not preclude summary judgment for Interstate in this case, the adverse judicial declaration may harm Interstate in other claims and proceedings, including Murco's claim to recover defense costs incurred

in other underlying suits, which Murco has raised in a pending, related coverage case involving different underlying lawsuits against Murco. *See* ECF No. 50, p. 13 n.4.

The Fifth Circuit has "recognized a handful of situations in which a party may be sufficiently aggrieved by a favorable judgment to appeal it, such as where *the judgment itself* contains prejudicial language on issues immaterial to the disposition of the case [or] where collateral estoppel may harm the party in future proceedings…." *Fletcher*, 805 F.3d at 602 (emphasis in original); *Matter of Riverstone Resort, LLC*, 122 F.4th 576, 582 (5th Cir. 2024). Those circumstances exist here. Interstate and Canal have grounds to cross-appeal the adverse judicial declaration – set out in the judgment – that the duty to indemnify defense costs is determined based on allegations pled against Murco rather than by facts proved. *See* ROA.3805, ¶ 1.

## III. CONCLUSION AND PRAYER

Texas law holds that an insurer's duty to indemnify must be shown by evidence and established facts, not pleadings and allegations. The District Court erred by applying the duty to defend standard to Interstate's duty to indemnify. Interstate respectfully asks the Court to reverse the District Court's ruling and judicial declaration that the duty to indemnify for defense costs under Interstate's Policy is determined by allegations pled against Murco in underlying lawsuits, and to direct the District Court to vacate the judicial declaration set out in Paragraph 1

of the judgment (ROA.3805, ¶ 1) and modify the judgment to provide that the duty to indemnify for defense costs under Interstate's Policy is determined based on the actual facts established in underlying lawsuits. Interstate also requests such further relief as to it which may be justly entitled.

Dated: January 14, 2026

Respectfully submitted,

*/s/ Joakim G. Soederbaum*

Jason E. Boatright
**DUANE MORRIS LLP**
200 Crescent Court, Suite 900
Dallas, TX 75201-1514
Telephone: (214) 257-7217
Fax: (214) 257-7201
JEBoatright@duanemorris.com

Roger C. Diseker
Joakim G. Soederbaum
**DUANE MORRIS LLP**
300 Throckmorton Street, Suite 1650
Fort Worth, TX 76102-2935
Telephone: (817) 704-1000
Fax: (817) 704-1001
RDiseker@duanemorris.com
JSoederbaum@duanemorris.com

**ATTORNEYS FOR DEFENDANT, APPELLEE, AND CROSS-APPELLANT INTERSTATE FIRE & CASUALTY COMPANY**

**CERTIFICATE OF SERVICE**

I hereby certify that on January 14, 2026, I served a true and correct copy of this Brief on all parties via the Court's electronic service system.

*/s/ Joakim Soederbaum*
Joakim G. Soederbaum

**CERTIFICATE OF COMPLIANCE**

This document complies with the type-volume limit of FED. R. APP. P. 32(a)(7)(B) because, excluding the parts of the document exempted by FED. R. APP. P. 32 (f), this document contains 13,716 words.

This document complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type-style requirements of FED. R. APP. P. 32(a)(6) because this document has been prepared in proportionally spaced typeface using MS Word 2010 in Times New Roman 14.

*/s/ Joakim Soederbaum*
Joakim G. Soederbaum